## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 16-cv-21575-FAM

ALEXANDRE DACCACHE, on behalf of
himself and all others similarly situated,

          Plaintiffs,

   v.

RAYMOND JAMES FINANCIAL, INC.
d/b/a RAYMOND JAMES, RAYMOND
JAMES & ASSOCIATES, INC., ARIEL
QUIROS, WILLIAM STENGER, and JOEL
BURSTEIN,

          Defendants.

---

### DEFENDANT ARIEL QUIROS'S MOTION TO DISMISS AND SUPPORTING

### MEMORANDUM OF LAW

Defendant Ariel Quiros ("Mr. Quiros"), by and through his undersigned attorneys, hereby respectfully requests that this Court pursuant, *inter alia*, to Federal Rules of Civil Procedure 8(a), 9(b), 12(b)(1) and 12(b)(6), enter an order dismissing Plaintiff Alexandre Daccache's ("Plaintiff") purported Class Action Complaint ("Complaint") (Dkt. 1) for the reasons more particularly set forth in the Memorandum in Support of this Motion.

## I.      INTRODUCTION

In an apparent rush to be the first to file a class action regarding the "Jay Peak" limited partnerships, Plaintiff offers a Complaint with profound flaws that cannot be fixed through amendment.  Plaintiff lacks standing to bring his claims for three independent reasons:  (i) he suffered no loss attributable to his investment; (ii) his claims could only be brought derivatively, not directly; and (iii) he only purchased one of the seven investments he seeks to put at issue.  Even if he had standing, the Complaint seeks to bring causes of action barred by law.  The core of these infirmities is a legally impermissible effort to re-cast claims for contractual breach as tort and RICO claims.

The case arises from a series of investments in limited partnerships created from 2006 through 2011 and offered to accredited investors seeking to obtain EB-5 visas.  The limited partnerships disclosed affiliations and allowed payments that could well have dissuaded some investors from wanting to invest in these particular EB-5 projects.  In particular, the Offering Memoranda and Partnership Agreements signed by each investor described:  (i) that affiliated entities would receive substantial payments for managing the development and constructing the projects, regardless of whether the investments turned out to be successful; (ii) that there may be significant transactions between and among the various affiliated partnerships and others; and (iii) that investors would have very limited recourse against the general partners or others (including Mr. Quiros) in the event that the projects were mismanaged.  In return, investors had the opportunity to make a potentially lucrative investment and to come and live in the United States.

Any claim against Mr. Quiros or others will have to wrestle with contractual language that broadly authorized potentially problematic conduct.  In this case, Plaintiff has presented a story dressed up with awful words that depends largely on supposition and innuendo.  The Complaint

seems drawn from investigations with which Plaintiff is not fully familiar and factual claims he does not fully understand.  In making his claims, Plaintiff utterly fails to do something he must:  he does not show how the alleged payments that he calls "looting" or routine use of margin loans run afoul of applicable contracts that seem to afford extensive discretion regarding the movement of funds and *require* payments to related parties for services.

Apart from failing to wrestle with applicable contractual language, the Complaint has numerous technical defects requiring its dismissal.  As to Mr. Quiros, Plaintiff brings four claims: two breach of fiduciary duty claims ("Aiding and Abetting Breach of Fiduciary Duty" and "Conspiracy to Commit Breach of Fiduciary Duty") and two RICO claims (18 U.S.C. § 1962(c) (racketeering activity through interstate commerce) and 1962(d) (conspiracy to commit RICO violations).  Each of these claims is barred by law.

First, as noted, Plaintiff lacks standing.  Second, all of the claims are barred by the independent tort doctrine.  Third, the Private Securities Litigation Reform Act ("PSLRA") bars the two RICO claims.  Fourth, Plaintiff has failed to plead any of his claims with particularity under Rule 9(b).  Many of the above defects cannot be repaired by amendment, and the Complaint therefore should be dismissed without leave to amend.

## II.    FACTUAL BACKGROUND

The following facts are based on the Complaint, as well as the Private Offering Memorandum and Limited Partnership Agreement for Jay Peak Penthouse Suites L.P. where necessary to correct Plaintiff's misstatements of, or failure to disclose, material terms of the Offering.[1]

---

[1] A court need not accept as true allegations that contradict matters properly subject to judicial

Plaintiff alleges that he invested in Jay Peak Penthouse Suites L.P., a Vermont Limited Partnership dated August 13, 2010, which raised $32.5 million from 65 investors through an EB-5 offering.  (Compl. ¶¶ 20, 99.)  The offering sought funds "to build a 55-unit penthouse suites hotel and an activities center, including a bar and restaurant."  (*Id*. at ¶ 32.)  Plaintiff admits that Mr. Quiros did not sit in a fiduciary relationship to Jay Peak Penthouse Suites L.P.  Rather, he admits that Jay Peak GP Services, a corporation, acted as general partner and fiduciary of Jay Peak Penthouse Suites L.P.  Plaintiff admits that Mr. Quiros was neither an officer nor a director of Jay Peak GP Services and that he did not manage any of the corporations serving as general partners for the other limited partnerships offering investments related to the Jay Peak resort.  (*Id*. at ¶¶ 20, *see also id*. at ¶19, 23, 25, 27.)  Nevertheless, through unspecified means, Plaintiff makes the conclusory claim that Mr. Quiros "controlled each of the Jay Peak general partners and limited partnerships."  (*Id*. at ¶ 12.)  Plaintiff admits Jay Peak Penthouse Suites L.P. is "complete" and that "the facilities are operating."  (*Id.* at ¶¶ 9, 32.)

Plaintiff alleges that Jay Peak Penthouse Suites L.P. was part of a scheme consisting of seven different partnerships that Plaintiff calls "Jay Peak Limited Partnerships."  (*See id*. at ¶¶ 15-33.)  While Plaintiff attempts to consolidate these investments into a unified whole, his own allegations make clear that they are, in fact, seven distinct investment vehicles issued over a long period of time, with distinct purposes and terms.  (*See id*. at ¶¶ 15-33.)

---

notice or by exhibit or are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.  *Wilson v. Henderson*, 2005 U.S. Dist. LEXIS 35505, at *4-5 (M.D. Fla. July 18, 2005) ("While courts must liberally construe and accept as true allegations of fact in the complaint and inferences reasonably deductive therefrom, they need not accept factual claims that are internally inconsistent; facts which run counter to facts of which the court can take judicial notice; conclusory allegations; unwarranted deductions; or mere legal conclusions asserted by a party.") . A Court may also consider documents referenced in the complaint or that are essential to the claims.  *Drew Estate Holding Co., LLC v. Fantasia Distrib., Inc.*, 2012 U.S. Dist. LEXIS 7910, at *10 (S.D. Fla. Jan. 24, 2012) (court may consider " documents central to or referenced in the complaint, and matters judicially noticed.").

In a variety of ways (all of them vague), Plaintiff alleges that Mr. Quiros "orchestrated" a scheme to "misuse" $200 million and "loot" $50 million in the seven investments.  (*See e.g.*, Compl. ¶¶ 1-5.)  Plaintiff also alleges that Mr. Stenger, Raymond James, and Mr. Burstein "enabled" this wrongdoing.  (*Id.* at ¶¶ 4, 6, 52.)  Among other things, Plaintiff claims the use of margin loans (rather than direct payments) was somehow nefarious.  (*Id.* at ¶¶ 6-7, 60, 73-74, 77-88, 90-92.)  Similarly, Plaintiff alleges that Mr. Quiros helped move funds between affiliated companies and that it violated applicable agreements.  (*Id.* at ¶¶ 6-7, 48-52, 85, 89.)

In making these allegations, Plaintiff makes passing reference to "offering materials consisting of a private placement memorandum, a business plan, and a limited partnership agreement."  (*Id.* at ¶ 44.)  Plaintiff claims only that "Stenger reviewed, was responsible for, and had authority over the contents of the offering documents . . . including the limited partnership agreements and the use of proceeds documents" for the investment he made in Jay Peak Penthouse Suites L.P.  (*Id.* at ¶¶ 46 and 76.)  There are no factual allegations contained in the Complaint alleging that Mr. Quiros was responsible for any of the offering materials and, indeed, this is not surprising since Mr. Quiros played no management role in Jay Peak Penthouse Suites L.P..  (*Id.* at ¶ 46, making conclusory claim that Mr. Quiros – at some unspecified time – "reviewed the contents of [the] offering documents . . . and understood that he had to abide by them".)

While claiming that the investments were misrepresented, Plaintiff scrupulously neglects to cite or quote from language in the documents governing his investments to show how Mr. Quiros's alleged actions violated the terms of the agreements.  The Limited Partnership Agreement (*See* Exh. C to the RJN) that governs Plaintiff's investments affords the General Partner almost plenary discretion in running the development:

**Section 5.01. Authority of General Partner.**

4

(a) Subject to the terms of this Agreement, the General Partner shall be further responsible for the overall management and control of the business assets and affairs of the Partnership, and the General Partner shall have the right, power, and authority, acting for and on behalf of and in the name of the Partnership, to: (i) execute and deliver on behalf of the Partnership any contract, agreement, or other instrument or document required or otherwise appropriate to acquire, construct, lease, operate, encumber, mortgage or refinance the Partnership Property (or any part thereof); (ii) convey Partnership Property by deed, mortgage, certificate, bill of sale, agreement, or otherwise, as appropriate.

Moreover, Plaintiff broadly waived his ability to bring claims against the various defendants for any actions done in good faith to advance the project:

### Section 5.05. Liability to Partnership and Limited Partner.

The General Partner, and its Affiliates, and their officers, directors, agents, employees, representatives, attorneys, accountants and other persons operating on its behalf shall not be liable, responsible, or accountable in damages or otherwise (including attorneys fees and expenses) to the Limited Partner or to the Partnership for any acts performed in good faith and within the scope of authority of the General Partner, or its Affiliates if any of the General Partner's duties have been contractually delegated to them, pursuant to this Agreement.

Finally, the Partnership Agreement *expressly authorizes* transactions between Jay Peak Penthouse Suites L.P. and affiliated Jay Peak companies, including payments for services:

### Section 5.07. Dealing with Affiliates: Fees.

The General Partner may, in the name and on behalf of the Partnership, enter into agreements or contracts for performance of services for the Partnership with an Affiliate of the General Partner, including without limitation services necessary to oversee construction of the Buildings and other improvements and for the leasing of the Penthouse Suites Hotel and the Mountain Learning Center Buildings, and the General Partner may obligate the Partnership to pay compensation for and on account of any such services; provided, however, such compensation shall be at costs to the Partnership not in excess of those disclosed in the Confidential Memorandum, but such limitation on costs shall not prevent the Resort Owner, if necessary, from advancing funds to complete the Project and being reimbursed with the grant of Resort Owner

5

> Interests. In addition, the General Partner shall pay the Resort Owner
> its development fees and pay whomever it hires to manage the Leases
> a fee equal to ten percent (10%) of the rent paid by the tenants, as
> further disclosed in the Confidential Memorandum.

The lengthy Complaint makes no mention of the plain language of the agreements.  Plaintiff makes no attempt to distinguish contractually authorized affiliated transactions from any "improper" transactions, or to show how the transactions it describes in the Complaint with pejorative terms like "looting" and "commingling" run afoul of language in the applicable agreements allowing Jay Peak Penthouse Suites L.P. to pay sums to affiliated companies, regardless of the ultimate success of the limited partnership investments.  (Compl., *passim*.)

## III.   PLAINTIFF LACKS STANDING TO BRING HIS CLAMS

### A.   <u>Plaintiff Has No Standing Because He Has Not And Cannot Allege Investment Injury</u>

Article III standing analysis requires a plaintiff to demonstrate that he has suffered an injury-in-fact.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) encompasses both challenges based on the court's lack of federal subject matter jurisdiction and challenges based on lack of standing.  *Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1352 (S.D. Fla. 2012) (*citing Stalley v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008)).

Relatedly, the four causes of action brought against Mr. Quiros each require an allegation of out-of-pocket loss.  The two breach of fiduciary duty claims require allegations of injury.  *Kipnis v. Bayerische Hypo-Und Vereinsbank*, AG, 2014 U.S. Dist. LEXIS 46092, at *17, n.3 (S.D. Fla. Apr. 3, 2014) (breach of fiduciary duty requires that the "breach of that duty … is the proximate cause of the plaintiff's damages.")(*quoting Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002)); *Sussman v. Weintraub*, 2007 U.S. Dist. LEXIS 20485, at *14 (S.D. Fla. Mar. 22, 2007).

Similarly, RICO requires allegations that the victim suffered an injury caused by racketeering activity.  That is, a civil claim for RICO requires more than allegations that a defendant acted in a manner proscribed by the RICO statute; rather, a plaintiff must allege that it suffered an economic loss that directly resulted from predicate acts committed by each defendant.  *Super Vision Int'l, Inc. v. Mega Int'l Commer. Bank Co.*, 534 F. Supp. 2d 1326, 1340 (S.D. Fla. 2008) (a civil claim for RICO requires that a plaintiff allege that he suffered injury).  Section 1964(c), which governs civil remedies in RICO actions brought by private parties, requires a plaintiff to plead facts sufficient to show proximate causation – *i.e.*, a "direct relation between the injury asserted and injurious conduct alleged."  *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992); *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to plaintiff's injuries."); *Pelletier v. Zweifel*, 921 F.2d 1465, 1497 (11th Cir. 1991) ("Private litigants can recover for racketeering injuries under 18 U.S.C. § 1964(c), but their injury must flow from the commission of the predicate acts. . . .  A plaintiff cannot allege merely that an act of racketeering occurred and that he lost money. . . .  If no injury flowed from a particular predicate act, no recovery lies for the commission of that act."); *Resolution Trust Corp. v. Keating*, 186 F.3d 1110, 1117 (9th  Cir. 1999) (RICO recovery "limited to those injuries flowing from predicate acts, and does not extend to all injuries caused by an enterprise which violates RICO.") (quotation omitted).  Moreover, Plaintiff must allege "a concrete financial injury to his business or property interest."  *Ingles v. Lake County*, 2005 U.S. Dist. LEXIS 36038, at *22 (M.D. Fla. Dec. 15, 2005).

Plaintiff only invested in Jay Peak Penthouse Suites L.P., a project which he admits is "complete" and that "the facilities are operating."  (Compl. at ¶¶  9 and 32.)  On these allegations, the most reasonable inference is that, as to Jay Peak Penthouse Suites L.P., investors suffered no

loss since they have received what they bargained for.  In fact, the Plaintiff has made no allegations that Jay Peak Penthouse Suites L.P. failed to construct any part of the penthouses and related facilities in the manner promised.  Moreover, even if their general allegations about commingling of assets were credible, there is no reason to assume that Plaintiff has not *benefited* from the supposed commingling, since the project in which he invested is up and running.  Plaintiff fails even to make any allegation that less money was used on the project than set forth in the offering documents.  The SEC has many things wrong in its analysis of the facts of this case, but *even the SEC has made clear its view that investors suffered no loss in Jay Peak Penthouse Suites L.P.*  (Exh. F to RJN.)

Plaintiff sets forth only formulaic and conclusory assertions of loss (*see e.g.*, "Mr Daccache . . . has been damaged as the result of Defendants' conduct herein").  Such empty recitations are unavailing.  Plaintiff never actually alleges that he lost any money of his investments as a result of Mr. Quiros's alleged wrongful actions.  Plaintiff fails to set forth any *facts* to indicate the nature of his purported business or financial losses or any *facts* to show how Mr. Quiros caused or played a role in any of those alleged losses by participating in a breach of duty or law.  Indeed, Plaintiff cannot make any such allegations with any specificity, because he has suffered no loss.  Accordingly, the Court should dismiss the Complaint for lack of standing.

### B.  Plaintiff Also Lacks Standing Because His Claims Are Derivative, Not Direct

Each of Plaintiff's claims depend on alleged breaches of duty by general partners to limited partners.  Under either Vermont[2] or Florida law, the result is the same:  any breach of duty would be to the limited partnership itself, not the individual limited partners.  That is, to the extent that Plaintiff's claims are legally cognizable, they would seek the same relief as other investors in Jay

---

[2] The Limited Partnership Agreement governing Plaintiff's investment has a Vermont choice of law provision.  For purposes of this motion, it does not appear that the law is materially different between Florida and Vermont.

Peak Penthouse Suites L.P.  *Lewis v. Seneff*, 654 F. Supp. 2d 1349, 1363-64 (M.D. Fla. 2009) (requiring a derivative action when "[t]he alleged harm asserted by the limited partners was suffered by all the pre-merger limited partners.  Again, under the separate and distinct injury test, the shareholder must suffer an injury that is separate and distinct from the other shareholders."); *Bovee v. Lyndonville Sav. Bank & Trust Co.*, 174 Vt. 507, 508-09 (Vt. 2002) (Same, under Vermont law, noting that "[a]ctions charging 'mismanagement which depress[es] the value of stock allege a wrong to the corporation; i.e., the stockholders collectively, to be enforced by a derivative action.").  When, as here, limited partners claim to be "damaged to the extent of their proportionate interest in the partnership and the alleged harm was suffered by all limited partners [the claims are] derivative rather than direct and [are] properly dismissed for lack of standing."  *Lewis*, 654 F. Supp. 2d at 1364; *see Falic v. Legg Mason Wood Walker, Inc.*, 347 F. Supp. 2d 1260, 1270 (S.D. Fla. 2004).[3]

C.   **Even If Plaintiff Could Allege Investment Injury And Even If His Claims Were Not Derivative In Nature, He Only Would Have Standing To Bring Claims On Behalf Of Investors In Jay Peak Penthouse Suites L.P.**

Our Supreme Court makes clear:  "we have repeatedly held that a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 156 (1982)(quotations omitted).  The law in the 11th Circuit holds that a class action plaintiff may only purport to bring claims on behalf of his own purchases or investments.  In *Toback v. GNC Holdings, Inc.*, 2013 U.S. Dist. LEXIS 131135 (S.D. Fla. Sept. 13, 2013), the plaintiff claimed that a dietary supplement called TriFlex Vitapack

---

[3]The result is no different because Plaintiff has brought "aiding and abetting" and "conspiracy" claims.  *See Chaul v. Abu-Ghazaleh*, 994 So.2d 465, 467 (Fla. Dist. Ct. App. 3d Dist.2008) (dismissing shareholders' direct claims for failure to bring them as derivative claims, and all other claims, including aiding and abetting claims).  Similarly, if the RICO claims did not fail for other reasons, they would fail because the claims depend on breaches of duty that are derivative in nature. *Harris v. Orange S.A.*, 2015 U.S. App. LEXIS 22905, at *12-13 (11th Cir. Dec. 30, 2015)(noting the general rule "that there is no shareholder standing to assert RICO claims where the harm is derivative of harm to the corporation.").

failed to deliver stated benefits.  He purported to bring a class action alleging similar failings across

the TriFlex product line.  The court rejected that claim, granting a motion to dismiss claims for

products other than TriFlex Vitapack.  *Id*. at *14-15 ("The law in the Eleventh Circuit is clear that at

least one named plaintiff must establish Article III standing for each class subclaim . . . Plaintiff

therefore cannot establish his Article III standing with respect to any product other than the Vitapak

. . . and cannot raise claims relating to those other products which he did not purchase…") (internal

citations omitted); *Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1392-94 (S.D. Fla. 2014) (Same,

holding that dismissal was proper and need not await class certification when plaintiff purchased

"substantially similar" (but not identical) product to others); *Garcia v. Clarins USA, Inc.*, 2014 U.S.

Dist. LEXIS 182426, at *8-10 (S.D. Fla. Sept. 4, 2014)  (Same); *Dapeer v. Neutrogena Corp.*, 95 F.

Supp. 3d 1366, 1372-73 (S.D. Fla. 2015) (Same).

        In this case, Plaintiff purports to bring this "action on behalf of a class of all investors in Jay

Peak limited partnerships."  (Compl. at ¶ 1.)  As described in the Complaint, however, what

Plaintiff calls the "Jay Peak Limited Partnerships" are, in fact, seven distinct investment vehicles

issued over a long period of time, with distinct purposes and terms.  (*See id*. at ¶¶ 15-33.)  Plaintiff

alleges that he invested in just one of these investments, Jay Peak Penthouse Suites L.P., a project

"to build a 55-unit penthouse suites hotel and an activities center, including a bar and restaurant."

(*Id*. at ¶ 32.)  Plaintiff alleges in his complaint that the "Partnerships were materially the same."  (*Id*.

at ¶ 33.)  In the first place, as explained above, supposed "substantial similarity" of claims will not

confer standing in the 11th Circuit.  *See e.g.*, *Garcia*, 43 F. Supp. at 1392-94.  In the second place,

this assertion is at odds with the alleged facts.  The limited partnerships have purposes as diverse as

"an indoor water park" (Jay Peak Hotel Suites Phase II L.P.) and a "biomedical research facility"

(Jay Peak Biomedical Research Park, L.P.).  (*See* ¶¶ 15-33.)  It is simply not true that the limited

10

partnerships included in the Complaint are the same or even similar in their intended or actual

purpose, or in their business structure.  Accordingly, to the extent that Plaintiff can establish

standing for any of his claims, he can only bring claims related to the one limited partnership in

which he invested:  Jay Peak Penthouse Suites L.P.  The Court should dismiss all other claims.

**IV.     The PSLRA Bars Plaintiffs RICO Claim**

Section 1964(c) of the RICO Act sets forth the civil remedy for RICO violations.  The

PSLRA amended that section to provide "No person may rely upon any conduct that would have

been actionable as fraud in the purchase or sale of securities to establish a violation of section

1962."  In this way, the PSLRA barred civil RICO claims relating to the purchase or sale of

securities.  *Adams v. Rothstein*, one of the cases to arise out of the Scott Rothstein's Ponzi scheme,

concluded that claims arising from the sale of unregistered limited partnership interests (very

similar to the securities in this case) cannot form the basis of a RICO claim after the PSLRA.  2012

U.S. Dist. LEXIS 64267, at *19 (S.D. Fla. May 8, 2012).

In this case, as in *Adams*, the partnership interests at issue are each inarguably "securities."

The interests are described as "securities" repeatedly in the Private Offering Memoranda that

accompanied the sale of the securities.  For instance, the Offering Memorandum for the investment

purchased by Plaintiff in Jay Peak Penthouse Suites L.P. describes the interests as securities dozens

of times, from beginning to end.  *See* Offering Memorandum, Table of Contents "THESE

*SECURITIES* ARE SUBJECT TO A HIGH DEGREE OF RISK – SEE "RISK FACTORS"

(emphasis added); *see also id.* at 12 (***SECURITIES* BEING OFFERED** – INVESTORS ARE

BEING OFFERED THE OPPORTUNITY TO PURCHASE A LIMITED PARTNERSHIP

INTEREST).  (See Exh. A to the RJN.)  Moreover, the limited partnership investments meet the

legal definition of "securities":

> Generally speaking ownership interests in corporations and limited partnerships are considered securities because the partners lack control, while ownership interests in general partnerships and joint ventures tend not to be securities because of the active role of the partners. *Affco Invs., LLC v. KPMG, LLP*, No. H-07-3379, 2008 U.S. Dist. LEXIS 94396, 2008 WL 5070053, at *5 (S.D. Tex. Nov. 20, 2008) (citing *SEC v. Merch. Capital*, LLC, 483 F.3d 747, 755-56 (11th Cir. 2007)) aff'd sub nom. *AFFCO Invs. 2001, L.L.C. v. Proskauer Rose, L.L.P.*, 625 F.3d 185, 189-90, 195 (5th Cir. 2010); *see also*, *e.g.*, Callison & Sullivan, *Partnership Law & Practice* § 31:3 (2011) ("Because limited partners are passive investors who have an expectation of profits derived solely from the efforts of general partners, the courts have almost uniformly held that limited partnership interests constitute securities.

*Adams*, 2012 U.S. Dist. LEXIS 64267 at *13.

It is irrelevant that Plaintiff calls predicate acts "mail and wire fraud" (Compl. ¶ 137), not "securities fraud"; the court in *Adams* rejected this very attempt to end-run the PSLRA.  2012 U.S. Dist. LEXIS 64267, at *11, 18-19 (rejecting "artful pleading" to "undermine the congressional intent behind" the PSLRA)(*citing Bald Eagle Area Sch. Dist. Keystone Fin. Inc.*, 189 F.3d 321, 330 (3d Cir. 1999)).  The PSLRA's exclusion is broadly construed – a mere connection to a securities transaction is enough.  *Id.* at *14-15.

Finally, "the PSLRA bar applies regardless of whether a plaintiff can or does plead a cause of action under the securities laws."  *Id.* at *15; *see also MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 280 (2d Cir. 2011) (PSLRA required dismissal of RICO claims regarding Madoff Ponzi scheme, even where plaintiff unable to actually state securities claim).  In *Adams,* the defendants were alleged to have "divert[ed] and misappropriate[ed] monies" invested in certain securities.  *Id.* at *11.  This case similarly involves allegations of improper movements and diversion of monies meant for investment through limited partnerships.  (Comp. ¶ 136 (alleging that "common purpose" of alleged RICO scheme was "to increase and maximize [defendants'] profits

12

by illegally diverting funds that they knew belonged to investors.")) Such claims connected to securities cannot form the basis of a RICO claim and must be dismissed without leave to amend.

## V.   THE INDEPENDENT TORT DOCTRINE BARS PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIMS

Both aiding and abetting breach of fiduciary duty and conspiracy to commit a breach of fiduciary duty require the existence of an underlying breach of fiduciary duty. *Pearlman v. Alexis*, 2009 U.S. Dist. LEXIS 88546, at *12-13 (S.D. Fla. Sept. 25, 2009) (aiding and abetting); *see Salkin v. Chira (In re Chira)*, 353 B.R. 693, 732 (Bankr. S.D. Fla. 2006) (conspiracy). In this case, Plaintiff alleges that breaches of fiduciary duty occurred when the respective general partners of the limited partnerships breached their obligations to investors such as Plaintiff. (Comp. ¶¶ 115, 131.) The independent tort doctrine bars this theory of recovery.

As the Florida Supreme Court instructs, in order to bring a valid tort claim – like breach of fiduciary duty – a party must demonstrate that the tort is *distinguishable from* or "*independent of any breach of contract claim*." *Tiara Condo. Ass'n v. Marsh & McLennan Cos.*, 110 So. 3d 399, 408 (Fla. 2013) (emphasis added); *see also Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.*, 208 F. Supp. 2d 1310, 1316 (S.D. Fla. 2002) ("breach of fiduciary duty will not lie where the claim of breach is dependent upon the existence of a contractual relationship between the parties …. This is true because the duty is owed only as a result of the existence of the contract."). "[E]conomic losses are 'disappointed economic expectations,' which are protected by contract law, rather than tort law." *Id.* at 401. Here, there is no injury or damage alleged besides economic loss arising from contractual claims against applicable partnerships for breach. The limited partnership securities interests purchased by Plaintiffs are contracts; governed by terms set forth in Private Offering Memoranda and Limited Partnership Agreements. *McCutcheon v. Kidder, Peabody & Co.* sets forth the application of the independent tort doctrine to securities claims:

13

> Applying the economic loss rule[4] to securities cases, courts have
> found that claims of breach of fiduciary duty and common law fraud
> are barred.  In *Interstate* [*Securities Corp. v. Hayes Corp.*], the
> plaintiff argued that Florida common law imposes a duty of good faith
> as well as a fiduciary duty upon securities brokers in their dealings
> with investors, and a failure to perform these duties results in an
> actionable claim against a broker independent from any contractual
> claims.  The Eleventh Circuit found otherwise, noting that the
> relationship which gives rise to the fiduciary duty between a broker
> and his client "does not arise unless the parties have entered into a
> contract involving the trade of securities." *Interstate*, 920 F.2d [769,]
> 777 [(11th Cir. 1991)].  Finding that "a claim for breach of fiduciary
> duty [] is dependent upon the existence of a contract," the Circuit
> Court determined that plaintiff's fiduciary duty claim should have
> been dismissed pursuant to the economic loss rule. *Id. See also*, *Kee v.
> National Reserve Life Ins. Co.*, 918 F.2d 1538 (11th Cir. 1990).

938 F. Supp. 820, 823 (S.D. Fla. 1996).[5]  Try as they might to sling mud at Mr. Quiros, the

Plaintiff's claims are unavoidably simple claims for contractual breach – *i.e.*, that the General

Partners did not use investment funds in the manner contractually required or did not seek

appropriate limited partner consent for transactions.  Even if Plaintiff could set forth a breach of

contract claim (and, indeed, the broadly exculpatory language in the offering documents suggests

---

[4] In *Tiara Condo. Ass'n, supra,* the Court limited the "economic loss rule" (barring tort claims for money damages arising out of contract) to cases involving product liability cases.  But as Judge Pariente, concurring, explained, "'fundamental contractual principles' already properly delineate the general boundary between contract law and tort law." *Id.* at 409.  The limitation of the economic loss rule "does not undermine Florida's contract law or provide for an expansion in viable tort claim." *Id.* at 408.  The reasoning set forth in *McCutcheon*, is rooted in common law principles of contract, and thus remains applicable here.

[5] A tort claim is invalid if the party cannot demonstrate that "the tort is independent of any breach of contract claim." *Tiara Condo. Ass'n., supra,* at 408-09 (*citing Lewis v. Guthartz*, 428 So. 2d 222, 224 (Fla. 1982) (holding that there must be a tort "distinguishable from or independent of [the] breach of contract" in order for a party to bring a valid claim in tort based on a breach in a contractual relationship); *Elec. Sec. Sys. Corp. v. S. Bell Tel. & Tel. Co.*, 482 So. 2d 518, 519 (Fla. 3d DCA 1986) ("[A] breach of contract, alone, cannot constitute a cause of action in tort . . . . It is only when the breach of contract is attended by some additional conduct which amounts to an independent tort that such breach can constitute negligence." (citations omitted)).  A breach of fiduciary duty claim "is independent if the plaintiff must prove facts separate and distinct from the breach of contract." *Rushing v. Wells Fargo Bank, N.A.*, 752 F. Supp. 2d 1254, 1264 (M.D. Fla. 2010) (internal quotations omitted).  Here, Plaintiff has not and cannot make this showing.  Any obligations to investors arose from agreements related to their investments in the limited partnerships.

they cannot), any remedy starts and stops with a contractual claim against the breaching partnership. The independent tort doctrine bars any tort claims.

## VI.    PLAINTIFF'S CONCLUSORY PLEADING FAILS TO SATISFY THE HEIGHTENED PLEADING STANDARDS OF RULE 9(b)

### A.    <u>Because Plaintiff's Claims Sound in Fraud, They Must be Pled with Particularity</u>

Beyond the multiple technical failures of the Complaint to set forth cognizable causes of action against Mr. Quiros set forth above, the Complaint also fails to set forth sufficient facts to support any of the purported causes of action.  To survive a motion to dismiss, a complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp v. Twombly*, 550 U.S. 554, 555 (2007).

Moreover, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed R. Civ. P. 9(b).  A complaint only "satisfies Rule 9(b) if it sets forth: (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Razi v. Razavi*, 2012 U.S. Dist. LEXIS 187072, at *14-15 (M.D. Fla. Dec. 13, 2012)*(citing Tello v. Dean Witter Reynolds, Inc.*, 494 F.3d 956, 972 (11th Cir. 2007)(citation omitted)).  In this way, Rule 9(b) "ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of [and] protects defendants from harm to their goodwill and reputation." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1277 (11th Cir. 2006) (citation omitted).

In this case, the Complaint is replete with allegations of fraud.  (Compl. ¶¶ 1, 3, 33, 39-52 (alleging "Fraudulent Scheme"), 64, 65, 96-97, 137-144 (alleging "fraud")).  The Complaint

15

obfuscates the legal basis for the fraud claims, particularly as to Mr. Quiros, but such claims appear to rest on two untenable theories: (i) that Mr. Quiros participated in misrepresenting investments in the limited partnerships; and (ii) that Mr. Quiros deceived investors by moving funds in a manner that was in violation of the terms of the offering documents. The Complaint does not sufficiently plead any actionable misrepresentations that could support a claim under either theory.

### B. The Breach Of Fiduciary Duty Claims Are Not Pled With Sufficient Particularity

Plaintiff's breach of fiduciary duty claims must be pled with particularity. *White v. Ams. Servicing Co.*, 461 Fed. Appx. 841, 843 (11th Cir. 2012); *Sussman*, 2007 U.S. Dist. LEXIS 20485, at *14-15 ("the facts supporting a claim for breach of fiduciary duty must be pled with particularity[, including] ... 'the facts which purportedly created the duty that was breached, so that the court could determine as a matter of law whether there was such a duty[.]'") Both of Plaintiff's breach of fiduciary duty claims against Mr. Quiros (*i.e.*, aiding and abetting and conspiracy) require pleading the existence of a fiduciary duty as well as *factual* allegations regarding the breach of those duties by the fiduciary (or the alleged aider or conspirator) resulting in damage. *Pearlman*, 2009 U.S. Dist. LEXIS 88546, at *12-13 (aiding and abetting a breach of fiduciary duty consists of the following elements: "(1) a fiduciary duty on the part of the wrongdoer; (2) a breach of fiduciary duty; (3) knowledge of the breach by the alleged aider and abettor; and (4) the aider and abettor's substantial assistance or encouragement of the wrongdoing."); *In re Chira*, 353 B.R. at 732 ("Civil conspiracy under Florida law requires a showing [of] concerted action to accomplish some unlawful purpose, or to accomplish some lawful purpose by unlawful means.")

For the reasons set forth above, Plaintiff cannot bring breach of fiduciary duty claims because he lacks standing and because the claims are barred by the economic loss rule and could only be brought derivatively. In addition, Plaintiff has not pled the elements of the alleged fraud-

based wrongdoing with sufficient particularity.  If we just look at Plaintiff's allegations regarding the investment he made in Jay Peak Penthouse Suite's LP, for instance, his sparse allegations fail to show the time, place, mechanism, or purpose for any improper transfers of money, self-dealing, or improper loans.[6]  Moreover, Plaintiff has failed to allege facts supporting an inference that Mr. Quiros knew that his actions were in breach of any supposed fiduciary duty owed by the general partners to Plaintiff; after all, Plaintiff makes no claim that Mr. Quiros personally made any statements that deceived investors.  Indeed, the Complaint is quiet regarding when the statements were made, what statements the investors relied upon, and how they relied upon the statements. *Pugliese v. Phillips, Appel & Walden, Inc.*, 1988 U.S. Dist. LEXIS 18470, at *2-4 (S.D. Fla. May 9, 1988) (in order to bring investment claims, Rule 9(b) requires that "individual plaintiffs should identify particular defendants with whom they dealt directly, and from whom they purchased stock; that individual plaintiffs should designate the occasions on which affirmative statements were allegedly made to them--and by whom; and that individual plaintiffs should designate what affirmative misstatements or half-truths were directed to them--and how").  Plaintiff has failed to create a sufficient nexus between Mr. Quiros's alleged actions and the breaches of duty he claims.

At crucial points, Plaintiff's Complaint aggregates the reliance of plaintiffs and the actions of defendants in ways that run afoul of Rule 9(b).  This is impermissible and requires the dismissal of the Complaint.  *Id.* at *4-5 ("[T]he problem with plaintiffs' complaint is the failure of the *individual* plaintiffs to identify the circumstances under which each of them was defrauded.  [T]he complaint fails to allege which plaintiff received which misstatements. . . . The complaint also fails to state which defendant made which misrepresentations.  The complaint simply alleges that the 'defendants' participated in certain conduct.  These allegations are not specific enough to state a

---

[6] Plaintiff also failed to address applicable contractual language seeming to authorize actions such as those Plaintiff generally alleges against Mr. Quiros.

17

claim for fraud.  The complaint also fails to differentiate between plaintiffs with regard to each

plaintiff's investment objectives. . . . Plaintiffs' failure to allege how each plaintiff was defrauded

fails to fulfill the requirements of Fed. R. Civ. P. 9(b).")

### C.    The RICO Claims Are Not Pled With Sufficient Particularity

RICO claims must also be pled with particularity.  *Ambrosia Coal & Constr. Co. v. Morales*,

482 F.3d 1309, 1316-17 (11th Cir. 2007) ("Civil RICO claims, which are essentially a certain breed

of fraud claims, must be pled with an increased level of specificity."); *Brooks v. Blue Cross & Blue*

*Shield of Fla., Inc.*, 116 F.3d 1364, 1380 (11th Cir. 1997).

A federal civil RICO claim under § 1962(c) has four elements: "(1) conduct (2) of an

enterprise (3) through a pattern (4) of racketeering activity."  *Edwards v. Prime, Inc.*, 602 F.3d

1276, 1291-92 (11th Cir. 2010) (internal quotations omitted).  Section § 1962(d) has similar

elements in a conspiracy claim.  *ADA v. Cigna Corp.*, 605 F.3d 1283, 1293 (11th Cir. Fla. 2010)

("Section 1962(d) of the RICO statutes makes it illegal for anyone to conspire to violate one of the

substantive provisions of RICO, including § 1962(c).").  "A pattern of racketeering activity requires

at least two acts of racketeering activity."  *Adams*, 2012 U.S. Dist. LEXIS 64267, at *19(citing 18

U.S.C. § 1961(5); *Edwards*, 602 F.3d at 1292 ) (internal quotations omitted).

In order comply with the particularity requirement of Rule 9(b), the complaint must allege

the precise statements, documents, and misrepresentations allegedly made; the time, place, and

person responsible for the statement; the content and manner in which the statements misled the

plaintiff.  *Brooks*, 116 F.3d at 1380-81.  In the RICO context, a complaint must "set forth the time,

place, and manner in which any specific predicate act occurred," and should not "lump[ ] together

all of the Defendants in the[ ] allegations of fraud."  *Id*. at 1381.  The Eleventh Circuit "has

endorsed the dismissal of pleadings for failing to meet Rule 9(b)'s standards."  *Id*. at 1310.

Plaintiff's attempt to plead RICO falls well short of this high bar.  In paragraph 138 of the Complaint, Plaintiff attempts to set forth "predicate acts," but merely incorporates a blunderbuss citation to general allegations and then lists supposed predicate acts, largely failing to identify the specific act or acts performed by Mr. Quiros, when they occurred, or how they each caused Plaintiff (or any other purported class member) damage.  (*Id*. at ¶¶ 138(a)-(k).)  To pick just one example, Plaintiff alleges that "Quiros also improperly used additional investor funds to pay down and pay off margin loans (including paying nearly $2.5 million in margin interest) he set up in the name of Jay Peak Limited Partnerships at Raymond James." (*Id*. at ¶¶ 138(h).)  This allegation is vague regarding time, who it impacted, whether it personally financially impacted Plaintiff (and if so, how), why it was wrongful, and how it violated applicable agreements.  Similarly, Plaintiff includes a number of alleged acts, which it impermissibly attributes to "Defendants" rather than a particular defendant.  (*Id*. at ¶¶ 140.)  Plaintiff's pleading does not explain how these alleged "RICO violations" are anything more than garden variety breaches of contract.

Finally, Plaintiff's attempt to tie RICO acts to Plaintiff are hopelessly vague.  Plaintiff claims that "his $500,000 investment was diverted from the Penthouse Suite account and used for other purposes, and specifically for Defendants' personal gain" and that "the investments in Penthouse Phase III were commingled and misused." (*Id*. at ¶¶ 141-142.)  Such allegations cannot stand; there is no way to know from the Complaint what Plaintiff believes Mr. Quiros specifically did in furtherance of the alleged "racketeering activity," when it happened, or how it harmed Plaintiff.  Especially since the Penthouse Suites are up and running, the allegations seem below even the level of plausibility required under Rule 8.  For this reason also, the motion to dismiss should be granted without leave to amend.

19

Respectfully submitted,

GRAYROBINSON, P.A.

  333 S.E. Second Avenue, Suite 3200
  Miami, FL 33131
  Telephone: 305.416.6880
  Facsimile:  305.416.6887
  Attorneys for Defendant


By: /s/ Karen L. Stetson
        Karen L. Stetson
        Florida Bar. No. 742937
        karen.stetson@gray-robinson.com
        Jonathan L. Gaines
        Florida Bar. No. 330361
        jonathan.gaines@gray-robinson.com
and
        David B. Gordon
        (*Pro Hac Vice to be filed*)
        12 East 49th Street, 30th Floor
        New York, NY 10017
        Telephone: 212.509.3900
        Facsimile:  212.509.7239
        dbg@msk.com


        John Durrant
        Jean P. Nogues
        (*Pro Hac Vice to be filed*)
        11377 West Olympic Boulevard
        Los Angeles, CA 90064-1683
        Telephone: 310.312.2000
        Facsimile:  310.312.3100
        jpn@msk.com
        mth@msk.com

20

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed with the Clerk

of the Court and furnished via CM/ECF to all participating recipients, on this 9th day of June,

2016.

By: /s/Karen L. Stetson                   

21