**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.  1:16-cv-21575-FAM**

ALEXANDRE DACCACHE, on
behalf of himself and all others
similarly situated,

       Plaintiffs,

v.

RAYMOND JAMES FINANCIAL, INC., et al.,

       Defendants.

_____/

**MOTION TO DISMISS THE AMENDED COMPLAINT AND
SUPPORTING MEMORANDUM OF LAW OF DEFENDANTS
PEOPLE'S UNITED FINANCIAL, INC. AND PEOPLE'S UNITED BANK, N.A.**

# TABLE OF CONTENTS

PAGE

Table of Authorities ............................................................................................... iii

Preliminary Statement ...........................................................................................1

FACTS ......................................................................................................................3

  I.  THE PARTIES .................................................................................................3

  II.  THE ESCROW AGREEMENTS..................................................................3

  III.  THE AMENDED COMPLAINT ..................................................................4

ARGUMENT ...........................................................................................................5

  I.    THE COURT DOES NOT HAVE PERSONAL
       JURISDICTION OVER PEOPLE'S ..........................................................5

  II.    ALL OF PLAINTIFFS' CLAIMS FAIL BECAUSE THEY ARE
       BASED UPON PUB'S TRANSFER OF FUNDS CONSISTENT
       WITH THE TERMS OF THE ESCROW AGREEMENTS ...........................9

       A. Plaintiffs Do Not Allege Any Improper Transfer
          Of Their Escrowed Funds ................................................................9

       B.  The Allegedly Improper Transfers Are Insufficient To State A Claim ........11

          1.   Plaintiffs Have Not Alleged Any Improper
              Transfer From Phases IV - VIII ..........................................11

          2.   Most of Plaintiffs' Claims Are Time Barred ..........................................12

          3.   The Only Timely Allegation Is
              Insufficient To Confer Subject Matter Jurisdiction ...............................13

  III.    PLAINTIFFS FAIL TO PLAUSIBLY
        PLEAD CLAIMS AGAINST PUFI AND PUB...........................................13

       A. Plaintiffs Fail To Allege That PUFI Did Anything Actionable.....................14

       B. Plaintiffs' Tort Claims Are Barred By the Economic Loss Rule...................14

       C. Plaintiffs Fail To Plausibly Allege Aiding And Abetting..............................15

i

1.   Plaintiffs Fail To Plausibly Allege Actual Knowledge...........................16

2.   Plaintiffs Fail To Plausibly Allege "Substantial Assistance" .................17

3.   Plaintiffs Fail To Plausibly Allege Personal Benefit ............................19

D. Plaintiff Fail To Plausibly Allege A Civil Conspiracy ...................................19

CONCLUSION........................................................................................................20

## TABLE OF AUHORITIES

*Albra v. City of Fort Lauderdale*,
   232 F. App'x 885 (11th Cir. 2007) ...................................................................20

*Ambrosia Coal & Constr. Co. v. Pages Morales*,
   482 F.3d 1309 (11th Cir. 2007) ......................................................................14

*Am. United Life Ins. Co. v. Martinez*,
   480 F.3d 1043 (11th Cir. 2007) ......................................................................15

*Bell Atl. Co. v. Twombly*,
   550 U.S 544 (2007) ..........................................................................................19

*In re Consolidated Welfare Fund ERISA Litigation*,
   856 F. Supp. 837 (S.D.N.Y. 1994) ...................................................................17

*Cordova v. Lehman Bros, Inc.*,
    526 F. Supp. 2d 1305 (S.D. Fl. 2007) .........................................................19, 20

*Dansro v. Scribner*,
   187 A. 803 (Vt. 1936) ......................................................................................15

*Drew Estate Holding Co., LLC v. Fantasia Distrib., Inc.*,
   2012 U.S. Dist. LEXIS 7910 (S.D. Fla. Jan. 24, 2012) ....................................4

*Durham v. Bus. Management Assocs.*,
   847 F.2d 1505 (11th Cir. 1988) ........................................................................20

*Ferencia v. Guiduli*,
   830 A.2d 55 (Vt. 2003) ....................................................................................13

*Freeman v. JP Morgan Chase Bank, N.A.*,
   137 F. Supp. 3d 1284 (M.D. Fla. 2015) .....................................................17, 18

*Fullman v. Griddick*,
   739 F.2d 553 (11th Cir. 1984) ..........................................................................20

*Fulton Cnty. Adm'r v. Sullivan*,
    753 So.2d 549 (Fla. 1999) ................................................................................12

*Hamill v. Pawtucket Mutual Ins. Co.*,
   892 A.2d 226 (Vt. 2005) ...................................................................................15

*Heath v. Palmer*,
   915 A.2d 1290 (Vt. 2006) .................................................................................15

*Herbert v. Pico Ski Area Mgmt. Co.*,
    908 A.2d 1011 (Vt. 2006) ......................................................................................10

*Hill v. HSBC Bank PLC*,
    2016 LEXIS 125921 (S.D.N.Y., Sept. 15, 2016) ..................................................17

*Jet Charter Serv., Inc.  v. Koeck*,
    907 F.2d 1110 (11th Cir.  1990) .............................................................................9

*Kaplan v. Morgan Stanley & Co.*,
    987 A.2d 258 (Vt. 2009) .......................................................................................13

*Lamm v. State St. Bank & Trust*,
    749 F.3d 938 (11th Cir. 2014) ..............................................................................15

*Lamm v. State St. Bank & Trust*,
    889 F. Supp. 2d 1321 (S.D. Fla. 2012) ................................................................16

*Lawrence v. Bank of America*,
    455 F. App'x 904 (11th Cir. 2012) .......................................................................16

*Long Trail House Condo. Ass'n v. Engelberth Constr., Inc.*,
    50 A.3d 752 (Vt. App. 2012) ...............................................................................15

*Lussier v. Bessette*,
    2010 VT 104 (Vt. 2010) .......................................................................................18

*Madara v. Hall*,
    916 F.2d 1510 (11th Cir. 1990) ..............................................................................5

*Montgomery v. Devoid*,
    915 A.2d 270 (Vt. 2006) ............................................................................15, 18, 19

*Nationwide Life Ins. Co. v. George*,
    2012 U.S. Dist. LEXIS 146454 (S.D. Fla. Oct. 11, 2012) ....................................16

*In re Palm Beach Fin. Partners, L.P.*,
    488 B.R. 758 (Bankr. S.D. Fla. 2013) ..................................................................16

*Perlman v. Wells Fargo Bank*,
    559 F. App'x 988 (11th Cir. 2014) .......................................................................16

*Razi v. Razavi*,
    2012 U.S. Dist. LEXIS 187072 (M.D. Fla. Dec. 13, 2012) ..................................14

*Sculptchair, Inc. v. Century Arts, Ltd.*,
   94 F.3d 623 (11th Cir. 1996) ................................................5

*Sokolowski v. Erbey*,
   2015 U.S. Dist. LEXIS 180508 (S.D. Fl. 2015) ................................................7

*United Tech. Corp. v. Mazer*,
   556 F.3d 1260 (11th Cir. 2009) ................................................7

*Venetian Salami Co. v. Parthenais*,
   554 So.2d 499 (Fla. 1989) ................................................5

*Walden v. Fiore*,
   134 S.Ct. 1115 (2014) ................................................9

*Wiand v. Wells Fargo Bank, N.A.*,
   938 F. Supp. 2d 1238 (M.D. Fla. 2013) ................................................17

*Wilson v. Henderson*,
   2005 U.S. Dist. LEXIS 35505 (M.D. Fla. July 18, 2005) ................................................6

*Ziemba v. Cascade Intern., Inc.*,
   256 F. 3d 1194 (11th Cir. 2001) ................................................19

**<u>Statutory Authority</u>**

28 U.S.C. § 1332(a) ................................................13

Fed. R. Civ. P. 4(k)(1)(A) ................................................5

Fed. R. Civ. P. 9(b) ................................................7

Fla Stat. § 48.193 ................................................6, 8

Fla. Stat. § 95.031(d) ................................................13

Fla. Stat. § 671.105(1) ................................................10

12 V.S.A. § 511................................................12

Defendants People's United Financial, Inc. ("PUFI") and People's United Bank, N.A. ("PUB," and, together with PUFI, "People's") hereby respectfully request that this Court dismiss with prejudice Plaintiffs' Amended Complaint ("AC") as against People's:  (a) pursuant to Fed. R. Civ. P. 12(b)(2), for lack of personal jurisdiction, (b) pursuant to 12(b)(1) for lack of subject matter jurisdiction; and (c) pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.[1]

## PRELIMINARY STATEMENT

In amending their complaint, plaintiffs have added PUFI and PUB as defendants, but allege little of substance about them, and have not even attempted to allege that they were part of the alleged RICO enterprise that engaged in a supposed Ponzi scheme that is at the core of this case.  Similarly, plaintiffs do not, because they cannot, allege that People's ever even met Quiros, the supposed mastermind behind the alleged conspiracy.  Indeed, there is very little alleged at all in the 92-page Amended Complaint that is specific to People's – and what is specifically alleged establishes that People's did nothing more than fulfill its contractual obligations as plaintiffs' escrow agent under the parties' agreements.

However, the Court need not even address the inadequacy of plaintiffs' pleading, because neither PUFI or PUB is subject to the personal jurisdiction of this Court.  Neither PUFI nor PUB are licensed to or do business in Florida, and all allegations of their conduct occurred, if at all, in Vermont.  Thus, Florida's long-arm statute does not provide a basis for personal jurisdiction, and in any event, any such exercise of personal jurisdiction would violate People's fundamental and constitutional due process rights in light of the absence of any substantive contacts with Florida.

---

[1] Also submitted in support of People's motion are the Affidavits of Kevin Cocchiola, Jr. ("Cocchiola Aff.") and Kevin W. Smith ("Smith Aff.").  People's hereby incorporates and adopts the motions and arguments of the other defendants to dismiss this action pursuant to Rule 12(b)(6), to the extent applicable.  To avoid duplication, People's will not repeat those arguments herein.

While this Court does not have personal jurisdiction over PUFI or PUB, plaintiffs also have failed to plead any plausible claim against them. People's only alleged involvement was acting as escrow agent for the investors' initial deposits in the limited partnerships, as to which plaintiffs admit that all prerequisites for the release of the funds occurred, that the funds "automatically" became the property of the limited partnerships, and that People's released the funds to the general partner. Thus, whether denominated as a breach of contract claim, or plaintiffs' efforts to recast that contract claim into miscellaneous claims for "negligence," "breach of fiduciary duty," "aiding and abetting" fraud and breach of fiduciary duty, and "civil conspiracy," plaintiffs fail to state a cause of action against PUFI and PUB, and all of their claims should be dismissed with prejudice.

In addition, almost all of plaintiffs' claims are barred by the statute of limitations and lack of standing. Most of the alleged transfers of funds occurred more than six years prior to the assertion of claims against People's, and thus claims based upon them are time barred. Plaintiffs also have alleged transfers of funds of partnerships in which they did not invest, as to which plaintiffs have no standing to assert claims based upon such transfers. The only other allegedly improper transfer by People's involved a partnership in which only one plaintiff invested, and that was for $49,000, below the jurisdictional minimum of this Court, and thus that claim too must be dismissed.

Furthermore, plaintiffs' tort claims seeking economic damages are barred by the economic loss rule; their aiding and abetting claims are barred for failure to allege the required elements of "actual knowledge," "substantial assistance," or personal benefit received by People's from the alleged fraud or breach of fiduciary duty; and their conspiracy claim fails to allege any facts regarding People's supposed participation in any such "conspiracy" to engage in fraud and other unspecified misconduct.

2

<u>**FACTS**</u>

**I.     THE PARTIES**

Plaintiffs allege that they are citizens of foreign countries who, beginning in July 2008, each invested approximately $500,000 in five of the eight limited partnerships related to the Jay Peak Vermont developments.  (AC ¶¶ 9-17.)  PUFI is a Delaware corporation with its principal place of business in Connecticut.  (Cocchiola Aff. ¶ 2.)  PUB is a national banking association, with its principal place of business in Connecticut, and which is wholly owned by PUFI.  (*Id.* ¶ 4.)  PUB provides consumer and commercial banking services through branches located in the Northeast.  (*Id.* ¶ 5.) [2]  Neither PUFI nor PUB is registered to do or does business in Florida, neither has any office, branch, mailing address, ATMs, or telephone number in Florida, and neither engages in any advertising in or directed to Florida.  (*Id.* ¶¶ 3, 6.)  Defendant Stenger, the President and CEO of Jay Peak, Inc. and the principal of the corporate general partners of the limited partnerships defined by plaintiffs as "Phase I – VII," is alleged to be "a citizen of the State of Vermont."  (AC ¶¶ 22, 28, 30, 32, 34, 36, 38.)

**II.     THE ESCROW AGREEMENTS**

PUB, through its Burlington, Vermont office, entered into escrow agreements with various investors in the Vermont limited partnerships at issue in this action.  (AC ¶¶ 9-17.) While the specific language of the escrow agreements changed slightly over time, they each provide that the escrow agreements "shall be governed by and construed in accordance with the laws of the State of Vermont, United States of America."  (*See, e.g.,* Exhibit A hereto, ¶ 9.)

---

[2]     In January 2008, PUFI acquired Chittenden Corporation, a multi-bank holding company, which owned Chittenden Trust Company ("CTC").  (AC ¶ 19.)  CTC became a direct subsidiary of PUB, and in January 2009, CTC and PUB merged.  (AC ¶ 20.)  Thus, contrary to plaintiffs' conclusory allegation, PUFI is not and never was the "successor-in-interest to Chittenden Trust Company."   Rather, PUB is the successor in interest to CTC, and People's refers herein to the correct entity that served as escrow agent, PUB, in discussing the alleged conduct.

Similarly, the escrow agreements provide that their purpose was for PUB to "hold … deposit monies received from Investors, to reserve a place in the Project while conducting due diligence."  (*Id.* ¶ B.)  The escrow agreements make clear that PUB's obligations were strictly limited to those set forth in the agreements, providing that PUB as "Escrow Agent agrees with the Investor to hold the Escrow Funds in an account … and disburse the Escrow Funds as set forth herein," and that the "Escrow Agent, acting in such capacity, shall have no duties or responsibilities except for those expressly set forth herein."  (*Id.* ¶¶ 1, 6(a).)[3]  The agreements further provide that "[a]fter the expiration of the Due Diligence Period, unless refunded pursuant to the notice set forth … above, the Minimum Deposit is strictly non-refundable and will automatically be released by the Escrow Agent to the Limited Partnership."  (*Id.* ¶ 4(a).)

## III.   **THE AMENDED COMPLAINT**

On August 9, 2016, plaintiffs filed the AC, alleging that PUB was somehow responsible for plaintiffs' alleged losses due to its role as escrow agent.  Plaintiffs do not allege that PUB ever improperly distributed escrowed funds prior to the expiration of the due diligence period for any plaintiff, or prior to the execution by the plaintiff of the required subscription agreements and acceptance of those agreements by the limited partnership.  Thus, there is no dispute that the escrowed funds became "strictly non-refundable" to the plaintiffs, and were "automatically" released to the limited partnership.  (*Id.* ¶ 4(b).)  Moreover, plaintiffs allege and admit that PUB did in fact distribute the escrowed funds at the direction of the general partner of the relevant limited partnership to an account owned by that limited partnership.  (AC ¶ 101; *see also Id.* ¶¶ 67, 73, 74, 81, 83.)

---

[3]      Plaintiffs repeatedly reference and make allegations about the escrow agreements (*see, e.g.,* AC ¶¶ 99-103), and thus the Court can and should consider the escrow agreements on this motion to dismiss without converting the motion to one for summary judgment.  *Drew Estate Holding Co., LLC v. Fantasia Distrib., Inc.*, 2012 U.S. Dist. LEXIS 7910, at *10 (S.D. Fla. Jan. 24, 2012).

Nevertheless, plaintiffs purport to allege various causes of action against PUB for: (a) aiding and abetting common law fraud (Count III); (b) aiding and abetting breach of fiduciary duty (Count VI); (c) civil conspiracy (Count VII); (d) negligence (Count IX); (e) breach of fiduciary duty (Count X); and (f) breach of contract (Count XI).[4]

## ARGUMENT

### I.     THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER PEOPLE'S

Pursuant to Fed. R. Civ. P. 4(k)(1)(A), this Court can only exercise personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." In deciding whether personal jurisdiction exists over non-Florida residents such as People's, this Court must conduct a two-part inquiry: (a) whether the defendant is subject to jurisdiction pursuant to the state's long-arm statute; and (b) whether the exercise of personal jurisdiction would be consistent with due process. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996). In doing so, it is well-established that Florida's long-arm statute is to be strictly construed. *Sculptchair*, 94 F.3d at 627 (citation omitted). In addition, plaintiffs bear the burden of establishing a *prima facie* case of personal jurisdiction over a defendant (*Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990)) and where, as here, defendants challenging the jurisdiction file "affidavits in support of [their] position," plaintiffs must prove "by affidavit the bases upon which jurisdiction may be obtained." *Venetian Salami Co. v. Parthenais*, 554 So.2d 499, 502 (Fla. 1989).

Plaintiffs have not specified any provision of the Florida long-arm statute (Fla Stat. § 48.193) that they contend allows this Court to exercise personal jurisdiction over PUFI or PUB.

---

[4]     Plaintiffs also generically allege that PUB "knowingly violated federal banking regulations" (AC ¶ 124), but do not allege facts as to how PUB supposedly violated any such regulations, and they do not even attempt to assert any claim based upon any such violation.

Rather, plaintiffs allege only that People's (a) "participated in tortious acts committed in Florida, or [(b)] caused damage to investors in Florida as alleged herein."  (AC ¶ 47.)  However, neither of these generic allegations provides a basis for the Court's exercise of personal jurisdiction.

Section 48.193(1)(a)(2) only allows for the exercise of personal jurisdiction over a party who has "[c]ommitt[ed] a tortious act within this state."  Of course, plaintiffs do not even attempt to allege that either PUFI or PUB themselves "committed" any tortious act within the state of Florida, and thus that provision does not apply.  Indeed, all of the alleged conduct of People's occurred (if at all) at PUB's Burlington, Vermont branch, acting on instructions of Stenger, a Vermont resident, regarding Vermont limited partnerships.  (AC ¶ 20; Smith Aff. ¶¶ 3-7.)  There is simply nothing alleged as to any conduct by People's in Florida.

To the extent that plaintiffs are attempting to justify the exercise of personal jurisdiction over PUFI and PUB because of their frivolous "conspiracy" allegations, plaintiffs admit that neither PUFI nor PUB were part of the alleged RICO conspiracy (AC ¶¶ 316-386), and admit that neither of them were involved in the alleged "agreement" to engage in fraud in alleging the supposed parties who made such an agreement (*id.* ¶ 52 ("financial structure devised by Raymond James and Burstein"); *id.* ¶ 54 ("Burstein, Quiros and Amigo made plans"); *id.* ¶ 56 ("Quiros, Burstein, and Raymond James were able to put their plan into action").  While deep in their complaint (AC ¶ 284) plaintiffs for the first time generically allege that "[a]n agreement was made in the first half of 2008 by Quiros with each of Raymond James, Burstein and People's Bank," that conclusory allegation is directly contrary to their prior allegations (*id.* ¶¶ 52-56), and thus need not be accepted as true on this motion.  *Wilson v. Henderson*, 2005 U.S. Dist. LEXIS 35505, at *4 (M.D. Fla. July 18, 2005) (courts "need not accept factual claims that are internally inconsistent").

More importantly, even though the alleged conspiracy was to commit fraud (*id.* ¶ 284), and thus subject to the specificity requirement of Fed. R. Civ. P. 9(b), plaintiffs' conspiracy claim is devoid of any factual details concerning any such conspiracy to which People's supposedly was a party.  Among many deficiencies, plaintiffs have not identified any individual from People's who supposedly made any agreement with Quiros – or who to this day has even met him.  Similarly, Plaintiffs have not alleged when this fictitious "agreement" occurred, only vaguely alleging it supposedly occurred in "the first half of 2008."  Further, plaintiffs also do not allege what People's supposedly agreed to do, again alleging only some vague "agreement" to supposedly "commit the fraud and fiduciary breaches described above." (*Id.* ¶ 284.)  In fact, given that the only alleged conduct of which plaintiffs' complain is PUB's release of investor funds consistent with the terms of the escrow agreements (*infra* at 9), there simply is no basis for plaintiffs' claim that PUFI or PUB participated in a conspiracy such that it would be subject to the jurisdiction of this Court.  *United Tech. Corp. v. Mazer*, 556 F.3d 1260, 1282 (11th Cir. 2009) ("there is no allegation directly connecting [defendant] to this initial agreement" and thus personal jurisdiction under a "conspiracy" theory fails).

In addition, plaintiffs have not identified any supposed "tortious act" that any defendant committed in Florida.  Rather, plaintiffs only allege that certain defendants are residents of Florida (AC ¶¶ 18, 21, 23), which is wholly insufficient for the exercise of personal jurisdiction over alleged co-conspirators.  *See, e.g., Sokolowski v. Erbey*, 2015 U.S. Dist. LEXIS 180508, at *16 (S.D. Fl. 2015) (no personal jurisdiction where plaintiffs have "not identified an act committed in Florida by any of the Defendants in furtherance of the principal scheme").

Similarly, plaintiffs' conclusory allegation that People's supposedly "caused injury within the state" (AC ¶ 47) also is completely insufficient under Florida's long-arm statute.  Rather, Florida's long-arm statute only allows for the exercise of jurisdiction over a party

"causing injury" within the state if (a) "[t]he defendant was engaged in solicitation or service activities within this state;" or (b) "[p]roducts, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use."  (Fla. Stat. § 48.193(6)(a)-(b).)  Plaintiffs do not, because they cannot, allege that either PUFI or PUB engaged in any such activities in Florida.

Even assuming *arguendo* that Florida's long-arm statute allowed for the exercise of personal jurisdiction over PUFI and PUB (which it does not), due process precludes the exercise of personal jurisdiction here.  There is no allegation, nor could there be, that either PUFI or PUB regularly reached into Florida to purposefully avail themselves of the privileges of actively pursuing or soliciting business in that state.  Rather, like their many other conclusory allegations, plaintiffs simply allege that PUFI and PUB supposedly have "sufficient minimum contacts with Florida arising from the specific conduct committed in or directed to Florida alleged herein." (AC ¶ 47.)  However, plaintiffs fail to identify any such "conduct" in Florida, or how any such conduct was supposedly "directed" to Florida.

The undisputed facts are that neither PUFI nor PUB are licensed to do business in Florida, they do not do business in Florida, and they do not maintain any office, address or telephone number in Florida.  (Cocchiola Aff. ¶¶ 3, 6.)  Moreover, with respect to this action, any conduct of either PUFI or PUB occurred at PUB's Burlington, Vermont offices, by PUB's Vermont employees, pursuant to escrow agreements that are governed by Vermont law, relating to Vermont limited partnerships, which were formed to, and did, develop properties in Vermont. (Smith Aff. ¶¶ 3-7.)  There simply is no allegation of anything either PUFI or PUB supposedly did in Florida, and thus it cannot be said that either PUFI or PUB did anything to "purposely avail" themselves of the privilege of actively pursuing business in Florida.

Nor can plaintiffs rely upon their allegation that four of the nine plaintiffs reside in Florida, as their residency is wholly irrelevant and cannot justify the exercise of jurisdiction over People's pursuant to the due process requirements of the United States Constitution.  As the Supreme Court made clear in *Walden v. Fiore*, 134 S. Ct. 1115 (2014)*,* the appropriate due process "analysis looks to the defendant's contacts *with the forum State itself,* not the defendant's contacts with persons who reside there'" and *not* "contacts between the plaintiff (or third parties) and the forum State, no matter how substantial." *Walden*, 134 S.Ct. at 1122 (emphasis in original). *See also id.* ("it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State"); *Jet Charter Serv., Inc. v. Koeck*, 907 F.2d 1110, 1113 (11th Cir. 1990) (same).

## II.   ALL OF PLAINTIFFS' CLAIMS FAIL BECAUSE THEY ARE BASED UPON PUB'S TRANSFER OF FUNDS CONSISTENT WITH THE TERMS OF THE ESCROW AGREEMENTS

All of plaintiffs' claims against People's are fundamentally based on their allegations concerning PUB's transfers of plaintiffs' escrowed funds.  However, for all of plaintiffs' efforts to characterize PUB's alleged conduct – plaintiffs do not allege a single transfer of their escrowed funds that was inconsistent with the terms of the escrow agreements – not one.

### A.   Plaintiffs Do Not Allege Any Improper Transfer Of Their Escrowed Funds

The escrow agreements make clear that their purpose was for PUB to "hold … deposit monies received from Investors, to reserve a place in the Project while conducting due diligence."  (Exhibit A hereto, ¶ B.)  The escrow agreements make clear that PUB's obligations were strictly limited to those set forth in the agreements, providing that PUB as "Escrow Agent agrees with the Investor to hold the Escrow Funds in an account … and disburse the Escrow Funds as set forth herein," and that "Escrow Agent, acting in such capacity, **shall have no duties or responsibilities except for those expressly set forth herein**." (*Id.* ¶¶ 1, 6(a) (emphasis

9

added).)  The agreements further provide that "[a]fter the expiration of the Due Diligence Period, unless refunded pursuant to the notice set forth … above, the Minimum Deposit is **strictly non-refundable and will automatically be released** by the Escrow Agent to the Limited Partnership."  (*Id.* ¶ 4(a) (emphasis added).)

Plaintiffs' allegations establish that PUB fully complied with these requirements and, in fact, PUB was required to initiate the transfers about which plaintiffs now complain.  Indeed, plaintiffs do not allege that PUB ever improperly released any escrow monies to the limited partnerships:  (a) after any plaintiff requested the return of their initial deposits upon completion of their due diligence; (b) before any plaintiff executed and submitted the required subscription documents; or (c) before the general partner of the limited partnership accepted the plaintiff's subscription documents.  Thus, plaintiffs admit that all of the escrowed funds were "strictly non-refundable" to plaintiffs, became the property of the limited partnerships, and that funds "automatically" were released to the limited partnerships.  *See Herbert v. Pico Ski Area Mgmt. Co.*, 908 A.2d 1011 (Vt. 2006) (title to escrow funds passes to party with right to payment upon satisfaction of all escrow conditions).[5]

Moreover, plaintiffs admit that PUB "released the investor funds held in escrow to a Raymond James brokerage account, initially in the name of the EB-5 Project [*i.e.,* the limited partnership] that the investor had chosen."  (*See, e.g.,* AC ¶ 104.)  Plaintiffs' desperate effort to state some claim against PUB by alleging that transfers to limited partnership accounts at Raymond James were somehow improper because it supposedly was not a bank (AC ¶ 106), not only are untrue (http://www.raymondjamesbank.com/), they are irrelevant.  Plaintiffs admit that

---

[5]     The escrow agreements are governed by Vermont law which, given that Vermont has a "reasonable relation" to the claims (*see supra* at 3, 6; Smith ¶¶ 3-7), the parties' agreement as to the governing law will apply. Fla. Stat. § 671.105(1) ("[W]hen a transaction bears a reasonable relation to this state and also to another state or nation, the parties may agree that the law of either of this state or of such other state or nation will govern their rights and duties").

these accounts to which PUB transferred funds were limited partnership accounts in the name of the specific EB-5 project, and that the general partner directed the transfers. (AC ¶ 104.) The funds "automatically" became the property of the limited partnership, and there is absolutely nothing in the escrow agreements – which expressly provides that it sets forth the only obligations of PUB as escrow agent – that precluded PUB as escrow agent from transferring funds to Raymond James, and plaintiffs have not identified any such provision. In fact, there is nothing in the escrow agreements that would even have allowed PUB as escrow agent to refuse requests of the general partner to transfer monies to the Raymond James accounts when those funds "automatically" became the property of the limited partnerships. Similarly, there is nothing in the escrow agreements that imposed upon PUB an obligation to investigate the ultimate recipient of funds prior to releasing the limited partnerships' funds – and plaintiffs have not identified any such contractual provision. Thus, all of plaintiffs' claims against People's must be dismissed because they are based upon PUB's compliance with its contractual obligations.

### B.  The Allegedly Improper Transfers Are Insufficient To State A Claim

But even if there was anything improper about the challenged transfers (and there was not), plaintiffs' allegations of subsequent transfers of the limited partnerships' funds (AC ¶ 107) are wholly insufficient to state a claim against People's.[6]

#### 1.  Plaintiffs Have Not Alleged Any Improper Transfer From Phases IV - VIII

None of the allegedly improper transfers of money by PUB relate to Phases IV – VIII. (AC ¶ 107.) Given that plaintiffs Eijmberts, Morris, Sanchez, Pietri, Casseres-Pinto and Wang

---

[6]  Plaintiffs' conclusory allegation that there was a "significant number of transfers in and out of the People's Bank escrow accounts to effect commingling of partnership funds and transfers to a non-bank" (AC ¶ 108), is unsupported, and plaintiffs allege only 9 transactions. (AC ¶ 107.)

invested only in those Phases (*id.* ¶¶ 10-17), those plaintiffs do not have standing to assert any claim against People's, and all of their claims must be dismissed with prejudice.

 2  Most of Plaintiffs' Claims Are Time Barred

 Vermont law[7] provides that absent a specific statute setting a different time period, all civil actions must be filed "within six years after the cause of action accrues." (12 V.S.A. § 511.) Here, plaintiffs named PUFI and PUB as defendants on August 9, 2016, and thus any claims that accrued prior to August 10, 2010 are time barred. With respect to Phase II, the latest transfer of its funds about which plaintiffs complain was on September 2, 2008 (AC ¶ 107), nearly eight years ago and well beyond the expiration of the six-year statute. Accordingly, given that plaintiffs admit that Calderwood and Shaw only invested in Phase II, all of their claims against PUFI and PUB are time barred and must be dismissed with prejudice.

 Plaintiffs' conclusory allegations that "Defendants concealed Quiros's wrongdoing, and Stenger's assistance therein," and thus plaintiffs supposedly "could not have reasonably discovered the facts constituting Defendants' violations until April 14, 2016" (AC ¶¶ 224-226), are wholly insufficient to properly plead a tolling of the statutes of limitations. A plaintiff relying on equitable tolling must plead that the particular defendant "actively misled or prevented the plaintiff in some extraordinary way from discovering the facts essential to the

---

[7] Florida courts consider the statute of limitations to be substantive rather than procedural, including as to any claim of tolling. *See e.g., Fulton Cnty. Adm'r v. Sullivan*, 753 So.2d 549, 553 (Fla. 1999) ("statutes of limitations are to be treated as substantive law). In addition to the fact that the escrow agreements expressly provide for the application of Vermont law, Florida's "most significant relationship" test for choice of law (even assuming there is any conflict) also requires the application of Vermont law. The alleged conduct occurred in Vermont (*e.g.,* AC ¶¶ 7, 20, 50, 88, 106), involving transfers of money at the direction of Vermont resident Stenger (*id.* ¶ 22), relating to Vermont limited partnerships (*id.* ¶¶ 24-43), which had their principal places of business in Vermont (*id.*), and were in the business of developing properties located in Vermont (*id.*). Moreover, the State of Vermont has filed suit against other defendants (but not People's) relating to the same transactions at issue in this case (http://www.dfr.vermont.gov/jay-peak-eb-5-lawsuit). None of the plaintiffs are citizens of Florida, and only four of the nine are alleged to have resided there. (AC ¶¶ 9-17.) Clearly, these facts confirm that Vermont has the most significant relationship with plaintiffs' claims against People's.

filing of a timely lawsuit." *Kaplan v. Morgan Stanley & Co.*, 987 A.2d 258, ¶ 11 (Vt. 2009). Moreover, any such allegations of fraudulent concealment made to toll applicable statutes of limitation must be pled with particularity, as with any fraud claim. *Ferencia v. Guiduli*, 830 A.2d 55, ¶ 14 (Vt. 2003); *see also* Fla. Stat. § 95.031(d) ("Any claim of concealment under this section shall be made with specificity and must be based upon substantial factual and legal support"). Here, plaintiffs have completely failed to allege **any** specific facts or details relating to People's, much less the "who, what, where and when" required to support any such tolling defense.

       3.    <u>The Only Timely Allegation Is Insufficient To Confer Subject Matter Jurisdiction</u>

The only alleged transfer within the limitations period is an alleged transfer of $49,000 on October 3, 2011 from Phase III, as to which only plaintiff Daccache is an alleged investor. (AC ¶¶ 9, 107.)[8] Of course, even assuming *arguendo* that PUB had somehow "improperly" transferred those funds (which as established above, it did not), any such *de minimis* damage claim against People's is wholly insufficient to meet the Court's amount in controversy requirement to exercise diversity jurisdiction. 28 U.S.C. § 1332(a) (court may hear diversity suits only where "the matter in controversy exceeds the sum or value of $75,000").

**III.    PLAINTIFFS FAIL TO PLAUSIBLY<br>        <u>PLEAD CLAIMS AGAINST PUFI AND PUB</u>**

While there is no personal jurisdiction over People's, and the claims are barred by the statute of limitations and a lack of standing, the Court should dismiss plaintiffs' claims for the additional reason that plaintiffs fail to plausibly plead any cognizable cause of action.

---

[8]    Plaintiffs also complain of a transfer of Phase I funds on February 23, 2012, but none of the plaintiffs invested in that phase (AC ¶¶ 9-17), and thus they do not have standing to assert any claim based upon that alleged transfer.

### A.    Plaintiffs Fail To Allege That PUFI Did Anything Actionable

Plaintiffs make no substantive allegation against PUFI.  Rather, plaintiffs simply name PUFI and falsely identify it as the "successor in interest" to CTC – even though that allegation is directly rebutted by plaintiffs' other allegations, and there is no dispute that PUB is the successor in interest to CTC.  In fact, given that no plaintiff executed an escrow agreement until July 2008, at which time CTC was a wholly-owned, direct subsidiary of PUB, which subsequently was merged into PUB, PUFI's acquisition of CTC's parent corporation, Chittenden Corporation, seven months earlier is irrelevant.  (*Supra* at 3, n.2.)

Plaintiffs' efforts to state claims against PUFI by simply lumping it in with its subsidiary PUB via "group pleading" is wholly inadequate.  *See, e.g., Razi v. Razavi*, 2012 U.S. Dist. LEXIS 187072, at *15 (M.D. Fla. Dec. 13, 2012) ("The Eleventh Circuit has held that a complaint does not meet Rule 9(b)'s particularity standard where it is 'devoid of specific allegations with respect to each defendant' and instead, merely 'lump[s] together all of the defendants in their allegations of fraud'") (quoting *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007).  Accordingly, all of plaintiffs' claims against PUFI should be dismissed for failure to state a claim.

### B.    Plaintiffs' Tort Claims Are Barred By The Economic Loss Rule

Plaintiffs' tort claims against People's are simply a reclassification of their contract claim, and constitute an impermissible attempt to recover alleged economic losses in tort.  For example, plaintiffs' negligence claim is based on their allegation that:  (a) plaintiffs "entered into an Escrow Agreement with People's;" (b) as a result, People's "had a duty to exercise reasonable skill and ordinary diligence in disbursing the investor funds entrusted to it;" (c) People's breached that alleged duty "[b]y releasing escrow funds to improper accounts," (d) thereby causing "damages."  (AC ¶¶ 192-94.)  However, under Vermont's economic loss rule, these

14

purely financial losses, without any accompanying personal injury or property damage, are not compensable in tort.  *Hamill v. Pawtucket Mutual Ins. Co*., 892 A.2d 226, ¶ 9 (Vt. 2005) ("such damages are most accurately categorized as purely economic losses generally recoverable under contract law, but not tort law"); *see also Heath v. Palmer*, 915 A.2d 1290, ¶ 15 (Vt. 2006) (same); *Long Trail House Condo. Ass'n v. Engelberth Constr., Inc.*, 50 A.3d 752, ¶ 10 (Vt. App. 2012) ("The economic loss rule 'prohibits recovery in tort for purely economic losses") (internal quotation omitted).  Accordingly, all of plaintiffs' tort claims against People's should be dismissed.

### C.    Plaintiffs Fail To Plausibly Allege Aiding And Abetting

Plaintiffs also purport to assert claims against People's for "aiding and abetting" others in their supposed fraud (Quiros and Stenger) (Count III) and breach of fiduciary duty (the "General Partners") (Count VI).[9]  In order to properly state a claim for aiding and abetting a tort, a plaintiff must specifically allege, (1) the underlying tort, "(2) knowledge of this violation on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in this primary violation."  *Montgomery v. Devoid*, 915 A.2d 270, ¶ 20 (Vt. 2006) (internal quotation omitted).[10] Vermont also requires allegations (and, ultimately, proof) that an alleged aider and abettor personally benefitted from the other's tort.  *See Id.* at ¶ 22 ("[W]e have held that all who aid in the commission of a tort by another, *if done for their benefit*" may be held liable) (emphasis in original) (quoting *Dansro v. Scribner*, 187 A. 803 (Vt. 1936).)  Moreover, because plaintiffs' claim is for aiding and abetting fraud, Rule 9(b)'s particularity requirement applies to these.  *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1064-65 (11th Cir. 2007).

---

[9]      Plaintiffs have not named as a defendant any of the "General Partners" who supposedly committed the breaches of fiduciary duty.  (AC ¶¶ 28, 30, 32, 34, 36, 38.)

[10]     It is unclear whether Florida even recognizes a cause of action for aiding and abetting fraud.  *Lamm v. State St. Bank & Trust*, 749 F.3d 938, 950, n.9 (11th Cir. 2014).

1.  <u>Plaintiffs Fail To Plausibly Allege Actual Knowledge</u>

Plaintiffs have not met their burden of pleading that People's had "actual knowledge" of the misconduct of others, simply by alleging that Stenger and People's had a business relationship, and the repetitive, conclusory allegations that People's supposedly knew that the investors were not aware of the supposed fraud of other defendants.  (AC ¶¶ 256.)  Neither of these allegations allege knowledge by Peoples, or support any inference that People's itself had actual knowledge of any fraud (much less meet the detailed pleading burden imposed by Rule 9(b)).  Similarly, plaintiffs do not offer **any** factual support for any allegation that People's had "actual knowledge" that the General Partners were breaching fiduciary duties."  (AC ¶ 277.)

Thus, as in numerous other cases against banks, plaintiffs here have failed to properly allege "actual knowledge" to support an aiding and abetting claim, and those claims should be dismissed.  *Lamm v. State St. Bank & Trust*, 889 F. Supp. 2d 1321, 1332 (S.D. Fla. 2012) ("Conclusory statements that a defendant 'actually knew' [are] insufficient to support an aiding and abetting claim where the facts in the complaint only suggest that the defendant 'should have known' that something was amiss") (citation omitted); *In re Palm Beach Fin. Partners, L.P.*, 488 B.R. 758, 773 (Bankr. S.D. Fla. 2013) ("actual knowledge" is not adequately pled by identifying documents that would have indicated the underlying tort, as that "merely suggest[s] that [defendant] should have known of [the] fraud had they been paying closer attention"); *Lawrence v. Bank of America*, 455 F. App'x 904, 907 (11th Cir. 2012) (allegation that bank authorized financial transactions that were "atypical" does not adequately allege "actual knowledge" of fraudulent activities); *Perlman v. Wells Fargo Bank,* 559 F. App'x 988, 993-94 (11th Cir. 2014) ("Allegations of a financial institution's negligence in not knowing of the misconduct of the primary wrongdoer are insufficient" to allege "actual knowledge") (citations omitted); *Nationwide Life Ins. Co. v. George*, 2012 U.S. Dist. LEXIS 146454, *16 (S.D. Fla. Oct. 11,

2012) ("Conclusory statements that a defendant actually knew is insufficient to support an aiding and abetting claim where the facts in the complaint only suggest that the defendant should have known something was amiss") (internal quotations omitted); *Freeman v. JP Morgan Chase Bank, N.A.,* 137 F. Supp. 3d 1284, 1296-97 (M.D. Fla. 2015) ("mere allegations of atypical transactions … such as the Bank's customer providing misleading information when opening his accounts and a wire-transfer of a large sum of money to a location determined to be 'high risk' … does not raise an inference of actual knowledge under Florida law"); *Wiand v. Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238 (M.D. Fla. 2013) ("Commingling of funds, even where the bank knows that the customer holds the funds in a  fiduciary or trust capacity, is not necessarily prohibited and is insufficient to allege knowledge of an underlying fraud") (citations omitted).

       2.    <u>Plaintiffs Fail To Plausibly Allege "Substantial Assistance"</u>

Plaintiffs also fail to plausibly allege "substantial assistance" by People's to support any aiding and abetting claim.  Rather, plaintiffs resort to hyperbole to try to allege with respect to the fraud claim only that People's supposedly "lent an air of legitimacy" to the fraud, released monies as per the terms of the escrow agreement, and did not alert investors to Quiros' alleged fraud.  (AC ¶ 257.)  With respect to the alleged breach of fiduciary duty claim, plaintiffs conclusorily allege – without a single supporting fact – that People's supposedly "substantially assisted" the alleged breaches of fiduciary duties.  (*Id.* ¶ 277.)  The complete absence of any, let alone plausible, factual allegations warrants the dismissal of plaintiffs' claims.

In any event, a party does not "aid and abet" a fraud or breach of fiduciary duty about which they are unaware simply by having any involvement in a transaction, under the theory that it lent "an air of legitimacy" to someone else's fraud.  *See Hill v. HSBC Bank PLC*, 2016 LEXIS 125921 (S.D.N.Y., Sept. 15, 2016) (dismissing claims notwithstanding allegation that bank lent an "appearance of legitimacy" that furthered the fraud); *In re Consolidated Welfare Fund ERISA*

*Litigation*, 856 F. Supp. 837 (S.D.N.Y. 1994) (same).  Similarly, complying with contractual

obligations cannot support an aiding and abetting claim, nor can an allegation of "failure to alert"

someone where People's did not have such knowledge itself of the supposed fraud.  *Freeman,*

137 F. Supp. 3d at 1298-99 (substantial assistance not met by allowing wrongdoer to "create

accounts, transfer funds among accounts, and make withdrawals from accounts").

More importantly, under Vermont law, "[c]losely intertwined with the concept of

'substantial assistance' is the principle of proximate cause," and aider and abettor liability will

not lie against a defendant who did not "provide a necessary causal link for their assistance to

qualify as substantial."  *Montgomery,* 2006 VT at ¶ 21; *see also Lussier v. Bessette*, 2010 VT

104, ¶ 11 (Vt. 2010) (the "law of proximate cause calls for a causal connection between the act

for which the defendant is claimed to be responsible and which is alleged to be negligent and the

resulting flow of injurious consequences").

Here, there is no allegation, nor could there be, that the alleged fraud and breach of

fiduciary duty by Quiros, Stenger or anyone else would not have occurred "but for" People's

alleged conduct.  Fundamental to plaintiffs' claims are their allegations that Quiros "improperly"

obtained control over the funds of plaintiffs and/or the limited partnerships.  (*See, e.g.,* AC ¶¶ 1,

2.)  However, plaintiffs admit that it was Stenger, as the principal of the general partners, who

"ceded control of the funds" to Quiros.  (AC ¶ 59.)  Thus, if PUB had not transferred the

escrowed funds to a Raymond James account, but rather had transferred those funds to a

different account, *e.g.,* a different bank account in the name of the limited partnership, Stenger

could have simply "ceded control of the funds" from that account.  Accordingly, at most,

plaintiffs allege that PUB's supposed conduct took "one step" out of the process of Stenger

allowing Quiros to control the funds, not that People's conduct was a "but for" cause of the

alleged fraud and breach of fiduciary duty.

18

### 3.   Plaintiffs Fail To Plausibly Allege Personal Benefit

Despite the length of plaintiffs' complaint and attempted expansion of the case in the amended pleading, it is noticeably devoid of any allegation as to what People's supposedly obtained from "aiding and abetting" others in their supposed commission of torts.  PUB received a fixed fee as escrow agent, and there is no allegation (nor could there be consistent with Rule 11), that People's received additional monies or benefit for transferring the funds in the manner in which PUB did.  As a result, for this reason as well, plaintiffs aiding and abetting cause of action against People's must be dismissed.  *Montgomery*, 2006 VT 127, ¶ 22; *accord Cordova*, 526 F. Supp. 2d, 1305, 1315 (S.D. Fl. 2007) (dismissing claims where, among other things, "Plaintiffs do not clearly allege 'what Defendants obtained as a *consequence* of the fraud'" (quoting *Ziemba v. Cascade Intern., Inc.*, 256 F. 3d 1194, 1202 (11th Cir. 2001) (emphasis in original)).

### D.   **Plaintiffs Fail To Plausibly Allege A Civil Conspiracy**

As shown above (*supra* at 6-7), plaintiffs' generic and conclusory allegations that People's engaged in some "conspiracy" is directly contradicted by their other allegations in the Amended Complaint (*e.g.,* AC ¶¶ 52-56), and thus are not entitled to any assumption of validity.

Moreover, plaintiffs' conspiracy claim is devoid of any allegation as to who from People's supposedly reached an agreement with Quiros as alleged – or even that anyone from People's had ever even met Quiros as of the first half of 2008 (or at any time thereafter). Plaintiffs also have not alleged a date, time, place or any details of any supposed meeting between Quiros and People's in the first half of 2008, or the terms of any such "agreement." Accordingly, plaintiffs' conspiracy claim against People's should be dismissed.[11]  *Bell Atl. Co. v.*

---

[11]      Similarly, while plaintiffs again allege in conclusory fashion only that each of the defendants "retained the benefits of said wrongful acts" (AC ¶ 282), their Amended Complaint is devoid of any supporting or specific allegation that People's ever obtained **any** benefit from the alleged wrongful acts.

19

*Twombly*, 550 U.S 544, 565, n. 10 (2007) (defendant "would have little idea where to begin" in responding to conspiracy claim where pleadings "mentioned no specific time, place, or person involved in the alleged conspiracies"); *Fullman v. Griddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy"); *Cordova,* 526 F. Supp. 2d at 1312 ("The particularity rule serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior'"); *Ziemba,* 256 F.3d at 1202 ("Rule 9(b) is satisfied if the complaint sets forth (1 ) precisely what statements were made … and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same") (citing *Durham v. Bus. Management Assocs.,* 847 F.2d 1505, 1511 (11th Cir. 1988)); *Albra v. City of Fort Lauderdale*, 232 F. App'x 885, 890-91 (11th Cir. 2007) ("To allege a conspiracy, a plaintiff must make 'particularized allegations' that are more than vague or conclusory").

## <u>CONCLUSION</u>

Neither PUFI nor PUB is subject to the personal jurisdiction of this Court, the claims are time barred, the plaintiffs do not have standing, and plaintiffs have failed to sufficiently allege facts sufficient to plausibly state any claim against PUFI or PUB.  Accordingly, PUFI and PUB respectfully that the Court dismiss all claims against them (Counts III, VI, VII, IX, X and XI) with prejudice.

Dated: September 30, 2016                Respectfully submitted,


                                          KASOWITZ, BENSON, TORRES
                                              & FRIEDMAN LLP
1441 Brickell Avenue, Suite 1420
Miami, Florida 33131
Phone:  (305) 377-1666
Fax:    (305) 377-1664
Attorneys for Defendants People's United
Financial, Inc., and People's United Bank,
N.A.


By:/s/  Jonathan E. Minsker
        Jonathan E. Minsker
        Florida Bar No. 38120
        jminsker@kasowitz.com

21

## <u>CERTIFICATE OF SERVICE</u>

     I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed with the Clerk of the Court and furnished via CM/ECF to all participating recipients or in the manner stated in the service list attached, on this 30th day of September, 2016.

                    By: <u>/s/  Jonathan E. Minsker</u>
                       Jonathan E. Minsker

## SERVICE LIST

| | |
|---|---|
| Harley S. Tropin<br>hst@kttlaw.com<br>Thomas A. Tucker Ronzetti<br>tr@kttlaw.com<br>Tal J. Lifshitz<br>tjl@kttlaw.com<br>Dyanne Elyce Feinberg<br>def@kttlaw.com<br>Maia Aron<br>ma@kttlaw.com<br>Rachel Sullivan<br>rs@kttlaw.com<br>**KOZYAK TROPIN & THROCKMORTON, P.A.**<br>2525 Ponce de Leon Blvd., 9th floor<br>Miami, FL 33134<br><br>*Counsel for Plaintiffs*<br>**VIA ECF** | Paul Aiello<br>paiello@bennettaiello.com<br>Michael P. Bennett<br>mbennett@bennettaiello.com<br>Jeremy R. Kreines<br>jkreines@bennettaiello.com<br><br>**BENNETT AIELLO**<br>The Ingraham Building, Eighth Floor 25<br>Southeast Second Avenue Miami,<br>Florida 33131<br><br>*Co-Counsel for Plaintiffs*<br><br>**VIA ECF** |
| Daniel C. Girard<br>dcg@girardgibbs.com<br>Adam E. Polk<br>aep@girardgibbs.com<br>**GIRARD GIBBS LLP**<br>601 California Street, 14th Floor<br>San Francisco, California 94108<br><br>*Co-Counsel for Plaintiffs*<br><br>**VIA ECF** | Kathleen M. Donovan-Maher)<br>kdonovanmaher@bermandevalerio.com<br>Steven Buttacavoli<br>sbuttacavoli@bermanvalerio.com Nathaniel<br>L. Orenstein<br>norenstein@bermanvalerio.com<br>**BERMAN DEVALERIO**<br>One Liberty Square<br>Boston, Massachusetts 02109<br><br>*Co-Counsel for Plaintiffs*<br><br>**VIA ECF** |
| Stanley H. Wakshlag<br>swakshlag@knpa.com<br>Deborah S. Corbishley<br>dcorbishley@knpa.com<br>Ryan Zagare<br>rzagare@knpa.com<br>Janelle M. Ans<br>jans@knpa.com<br>**KENNY NACHWALTER, P.A.**<br>Four Seasons Tower, Suite 1100<br>1441 Brickell Avenue<br>Miami, FL 33131 | James D. Sallah<br>jds@sallahlaw.com<br>Jeffrey L. Cox<br>jlc@sallahlaw.com<br>Joshua A. Katz<br>jak@sallahlaw.com<br>**SALLAH ASTARITA & COX, LLC**<br>One Boca Place<br>2255 Glades Road<br>Suite 300 E<br>Boca Raton, FL 33431<br><br>*Counsel for Defendant Joel Burstein* |

| | |
|---|---|
| *Counsel for Defendants, Raymond James Financial, Inc. d/b/a Raymond James and Raymond James & Associates, Inc.*<br><br>**VIA ECF** | **VIA ECF** |