**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 16-CV-21575-MORENO/O'SULLIVAN**

ALEXANDER DACCACHE, *et al.*, on behalf of
themselves and all others similarly situated,

                Plaintiffs,

v.

RAYMOND JAMES & ASSOCIATES., INC., *et al.*,

                Defendants.
_____/

**DEFENDANT JOEL BURSTEIN'S REPLY MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

Defendant, Joel Burstein ("Mr. Burstein"), by and through his undersigned counsel, hereby submits his Reply Memorandum in Support of his Motion to Dismiss (the "Motion") (DE 109) the Amended Class Action Complaint (hereinafter referred to as "Am. Compl. at ¶__) (DE 55) of Plaintiffs Alexandre Daccache, Carlos Enrique Hiller Sanchez, Philip Calderwood, Jose Antonio Pietri, Jose R. Casseres-Pinto, Tongyi Wang, James B. Shaw, Johannes Eimberts, and Lorne Morris (collectively, "Plaintiffs"), as set forth herein.[1]

**I.   INTRODUCTION**

Plaintiffs' Consolidated Response in Opposition to Raymond James & Associate, Inc.'s and Joel Burstein's Motions to Dismiss (DE 120) (the "Response") has failed to address the deficiencies Mr. Burstein outlined in his Motion. First, with regard to standing, Plaintiffs are mistakenly arguing that they have standing because their claims are based on fraudulent inducement. According to Plaintiffs, the offering documents failed to disclose that Quiros would misappropriate and misuse the Limited Partnerships' funds and that, had they known, Plaintiffs would not have invested. In essence, Plaintiffs have simply pleaded that the offering materials they received omitted to disclose that Quiros would defraud the Limited Partnerships. Regardless

---

[1] Mr. Burstein hereby incorporates the arguments of his Co-Defendants' Replies to the extent they are not inconsistent with those presented herein.

of how Plaintiffs present these claims, Plaintiffs have failed to present an injury distinct from the Limited Partnerships.

Second, even assuming Plaintiffs had standing, Plaintiffs have failed to address their inadequate factual allegations concerning key elements of Plaintiffs' claims. Rather than discuss those deficiencies, Plaintiffs have merely repeated the same vague and conclusory allegations and insisted that those allegations should be sufficient. Significantly, Plaintiffs have not even addressed a number of Mr. Burstein's arguments, including his arguments that Plaintiffs' allegations of reliance are inadequate and that Plaintiffs have failed to allege any predicate acts of racketeering against Mr. Burstein. For the reasons stated herein, as well as in Mr. Burstein's Motion, the Court must dismiss Plaintiffs' Amended Complaint.

## II.   PLAINTIFFS ARGUMENT ON STANDING IS MISPLACED

In order for Plaintiffs to have standing, they are required to demonstrate a direct injury that is distinct from the injuries that might have been incurred by the Limited Partnerships in which they invested. *Medker v. Feingold*, 307 Fed. Appx. 262, 265 (11th 2008). Plaintiffs are arguing in their Response that they have standing because their claims are for fraudulent inducement based on nondisclosure. (Response at 8 ("Plaintiffs were directly injured due to fraudulent omissions that induced them to purchase their Limited Partnership interests. . .")). *See Medker*, 307 Fed. Appx. at 265. However, Plaintiffs lack standing to bring these claims.[2]

According to Plaintiffs, Plaintiffs' damages relate to the alleged misuse, commingling, the use of Limited Partnership funds as collateral for margin loans, and the payment of margin interest. (Response at 15.) It is particularly difficult to understand how Plaintiffs would have standing to bring claims to recover damages for the payment of margin interest when it was the Limited

---

[2] This Court has stated that, whether the claims are direct or derivative is "to be determined from the body of the complaint rather than from the label employed by the parties, thus preventing shareholders from using the titles of their pleadings to dictate the cause of action rather than the substance of the allegations in their complaint." *Official Comm. of Unsecured Creditors of BankUnited Fin. Corp. v. Fed. Deposit Ins. Co.*, 2011 U.S. Dist. LEXIS 157363, *6 (S.D. Fla. Sept. 28, 2011) (internal citation omitted) (Moreno, J.); *see also ABF Capital Mgmt. v. Askin Cap. Mgmt., L.P.*, 957 F. Supp. 1308, 1329 (S.D.N.Y. 1997) ("In analyzing whether a claim is derivative or direct, a court must look to the nature of the alleged wrong, not to the designations the parties impose upon the claim"). The Court is not required to accept Plaintiffs' label that this is a fraudulent inducement case based on omissions, since the case clearly involves fraudulent misrepresentation as a means to the alleged misappropriation of funds from the Limited Partnerships.

Partnerships, not Plaintiffs, who paid the margin interest. To the extent the margin interest could represent a measurement of damages, it would be the respective Limited Partnerships who were harmed and to whom any recovery would be due.[3] Similarly, any claims for alleged damages arising from the alleged misuse of the Limited Partnerships' funds, as Plaintiffs have claimed, would accrue to the Receiver on behalf of the Receivership Estate.

Plaintiffs are also seeking damages arising out of Mr. Burstein's allegedly:

> (1) allowing Quiros to use investor funds that Raymond James knew Quiros was not supposed to use to buy Jay Peak, Inc. from MSSI; (2) setting up margin loans that permitted Quiros to commingle and steal investors' funds from the Limited Partnerships' accounts at Raymond James; and (3) giving carte blanche to Quiros to do whatever he wanted with the investor funds in the Limited Partnerships' accounts, including paying himself and paying off both a $23 million margin loan and a $19 million margin loan to Raymond James.

(Response at 25-26.) None of these events induced Plaintiffs to invest. Moreover, Plaintiffs have failed to explain how allegedly giving carte blanche to Quiros to pay off margin loans in February 2012 or March 2014 would have induced Plaintiff Alexandre Daccache to have invested in 2010. (Am Compl. at ¶¶ 9, 84, and 89.)

These claims are owned by the Receiver, if anyone, and Plaintiffs lack standing to bring them. For this reason, the Court must dismiss Plaintiffs' Amended Complaint.

### III. PLAINTIFFS HAVE FAILED TO ADDRESS MR. BURSTEIN'S ARGUMENTS AS TO THE INADEQUACY OF PLAINTIFFS' FACTUAL ALLEGATIONS

Even if the Court were to find that Plaintiffs have standing to bring any of these claims, Plaintiffs' Amended Complaint should be dismissed for failing to state causes of action. As discussed herein, Plaintiffs' Response has either failed to address the issues raised in Mr. Burstein's Motion adequately or have simply supplied the Court with the same, conclusory allegations that Mr. Burstein has noted are insufficient to state the causes of action advanced in

---

[3] The Court should be aware that Michael I. Goldberg, the Receiver for the Limited Partnerships in which Plaintiffs invested, has argued that the Limited Partnerships have incurred "damages, not the least of which was the loss of limited partnership funds (including $2.5 million in margin interest paid to Raymond James and Burstein)." *Goldberg v. Raymond James & Associates, Inc., et al.*, Case No. 16-CV-21831-LENARD, DE 51 (S.D. Fla. Sept. 19, 2016). Thus, the Receiver has identified the same margin interest payments as losses he is seeking to recover in his action against Mr. Burstein.

the Amended Complaint. For the reasons stated both below and in Mr. Burstein's Motion, even if Plaintiffs have standing to bring these claims, the Court must dismiss the Amended Complaint against Mr. Burstein because Plaintiffs' factual allegations are deficient under Fed. R. Civ. P. 8(a), 9(b), and 12(b)(6).

### A. PLAINTIFFS HAVE FAILED TO ADDRESS THEIR LACK OF ALLEGATIONS OF DUTY TO DISCLOSE AND RELIANCE

Plaintiffs have failed to address Mr. Burstein's arguments regarding the insufficiency of the allegations of reliance and duty under Count I, for fraud, and, derivatively, for Count II for aiding and abetting the fraud identified in Count I. (Motion at 11-12.)

First, if Plaintiffs' claims are based on omissions, then Plaintiffs have failed to identify a duty to disclose or who failed to disclose the allegedly material information. (Motion at 11-12 (citing *Chiarella v. U.S.*, 445 U.S. 222, 228 (1980) ("When an allegation of fraud is based upon nondisclosure, there can be no fraud absent a duty to speak"))).

Second, Mr. Burstein has argued that Plaintiffs' claims are actually based on misrepresentation, rather than omission, and that Plaintiffs are required to plead and prove that they relied on misrepresentations when investing. (Motion at 11-12.) Plaintiffs have argued that the offering materials were fraudulent because they failed to disclose that the General Partners would authorize Quiros to manage the Limited Partnerships' funds; funds would be commingled; funds would be used as collateral for loans, including margin loans; and funds would be misused and misappropriated. However, Plaintiffs have argued that these acts were "contrary to the terms of the offering materials that Plaintiffs relied on in investing in the Limited Partnerships. . . ." (Response at 11, 14; Am. Compl. at ¶ 252.) Because these claims arise out of allegedly false representations in the offering materials, these are misrepresentations, not omissions. *Joseph v. Wiles*, 223 F.3d 1155, 1163 (10th Cir. 2000). As a result, Plaintiffs are required to plead that they relied on specific misrepresentations.

In *Joseph*, the plaintiff alleged that a defendant "engaged in a pattern of deception which involved manipulating financial data, disseminating false information about the company, concealing the truth about the company's true financial outlook, and hiding the existence of the fraudulent scheme itself." *Id.* Similar to the Plaintiffs in this case, the plaintiff in *Joseph* alleged that the defendant had "omitted to disclose that its financial statements had been falsified . . . [and] concealed the existence of the unlawful scheme and the acts of manipulation committed pursuant

thereto." *Id.* (emphasis omitted). In that case, the Tenth Circuit stated that "[s]tatements such as these, while struggling valiantly to bring the alleged conduct within the definition of 'omission,' indicate that what Mr. Joseph really protests are the affirmative misrepresentations allegedly made by defendants." *Id.* As was the case in *Joseph*, where claims were dismissed for failing to plead reliance, Plaintiffs in this case are required to plead reliance.

Under either circumstance, Plaintiffs have failed to state causes of action under Counts I and II. The Court must dismissed these claims.

### B. PLAINTIFFS HAVE CONFUSED INJURY-IN-FACT WITH LOSS, OR PROXIMATE, CAUSATION FOR THEIR COMMON-LAW AND FLORIDA RACKETEERING INFLUENCED CORRUPT ORGANIZATION CLAIMS

Similarly, Plaintiffs' argument on loss, or proximate, causation is deficient, in part, because Plaintiffs have confused injury-in-fact with loss causation. Injury-in-fact provides a court with an indication that the plaintiff has actually incurred a loss—not that the injury itself might be traceable to some conduct on the part of the defendant. On the other hand, loss causation is that causal connection between the injury and the actions that are the subject of the complaint. *See Levine v. AtriCure, Inc.*, 594 F. Supp. 2d 471 (S.D.N.Y. 2009) (distinguishing injury in fact from loss causation); *In re Century Aluminum Co. Secs. Litig.*, 2001 U.S. Dist. LEXIS 21406, *24 (N.D. Cal. Mar. 3, 2011).

Here, Plaintiffs have alleged that "Jay Peak assets have no net value, and that there are no funds available for investors in any phase" and that the SEC's expert testified that the resort's assets are currently worth $41.6 million and encumbered with debt of $60 million. (Response at 15.) These facts, on their own, might indicate that the Jay Peak Limited Partnerships have incurred an injury-in-fact, but fail to provide any indication as to what Mr. Burstein did to cause those losses. Moreover, Plaintiffs have failed to identify whether these losses, or some portion of them, might have been derived from delays in construction, for example, or simply some other factor such as the depreciation in value over time or the decline in the perceived value of a year-round resort in rural Vermont.

Plaintiffs have also alleged that "all or a portion of the funds each [Plaintiff] invested were misused, commingled, and used as collateral for margin loans and that margin interest was charged for the margin loans. (Response at 15 (internal citations omitted.)) Here, Plaintiffs have confused cause and effect. For example, commingling funds might provide a means to some other nefarious activities, such as misappropriation of funds, but the commingling itself does not cause losses.

5

Similarly, even if the use of margin were prohibited and Mr. Burstein knew of that prohibition, the use of margin would not cause losses by itself. For example, it is not the use of margin, but the misuse of the proceeds from a margin loan that would cause damages. Even allegations that margin interest was charged would fail to describe how the extension of a margin loan would have caused any other losses.[4]

Concerning Plaintiffs' claims for violations of the Florida Racketeering Influenced Corrupt Organization ("Florida RICO") statute, Plaintiffs have argued that "it is well established that proximate causation may be established through a common sense inference that investors' actions cannot be explained by anything other than reliance on defendant's conduct." (Response at 28.) As discussed herein, there are myriad of reasons to explain why Plaintiffs made an investment that would provide them the opportunity to obtain permanent residence in the United States. Regardless of that, Plaintiffs' Response has not pointed to any allegations connecting any conduct by Mr. Burstein with the losses incurred by Plaintiffs as a result of their being induced to invest. Instead, Plaintiffs have simply inserted in each count a conclusory statement that they have lost money as a result of their investment. (Response at 15 (citing Am. Compl. at ¶¶ 286, 369.)) These statements are clearly conclusory and fail to provide sufficient facts to plead loss causation in accordance with Fed. R. Civ. P. 9(b) or 8(a). As such, Plaintiffs have failed to state causes of action under Counts I, II, V, VII, XII, and XIII, and the Court must dismiss these claims against Mr. Burstein under Fed. R. Civ. P. 12(b)(6).

### C. PLAINTIFFS HAVE FAILED TO DEMONSTRATE ALLEGATIONS OF MR. BURSTEIN'S ACTUAL KNOWLEDGE

With regard to aiding and abetting, Plaintiffs are required to plead and prove that Mr. Burstein had a general awareness of his role as part of an overall activity that was improper **and** that he knowingly and substantially assisted in the violation. Mr. Burstein's Motion has demonstrated conclusively that Plaintiffs' allegations of actual knowledge are deficient. It should be noted that Plaintiffs' Response has attempted to conflate these distinct elements to argue that general awareness should suffice to plead actual knowledge. For example, Plaintiffs have argued

---

[4] Plaintiffs' Amended Complaint does not disclose the interest the limited partnerships earned on the treasuries that were the underlying securities for the margin loans. Thus, even assuming that Plaintiffs have properly stated a claim based on the use of margin loans, any claim of damages for the margin interest would have to be offset against the interest received by the limited partnerships.

that they have pleaded actual knowledge, relying on *Wight v. Bankamerica Corp.*, 219 F.3d 79 (2d Cir. 2000), because of Mr. Burstein's allegedly "close familial relationship" with Quiros, suspicions by Raymond James' Anti-Money Laundering Department, Raymond James' continued commingling of funds after being put on notice of the fraud, and the substantial profit received as a result of their participation. (Response at 19.)

Plaintiffs' reliance on *Wight* and these facts are misguided. While Plaintiffs have emphasized the fact that the *Wight* court noted the existence of relationships between the primary wrongdoers and the persons alleged to have aided and abetted them, the *Wight* court did not rely on those relationships at all in finding sufficient facts to satisfy the requirements of Fed. R. Civ. P. 9(b):

> First, there were the personal relationships. . . . ***More than that, however, there is Canora's deposition testimony that: (1) he knew the Conduit Companies were mere 'shell' companies; (2) he suspected that there was no business purpose to the cycling of money between BCCI and the Conduit Companies; (3) he and Ahmad acknowledged the 'sad possibility' that BCCI might be using SPIB to launder money; and (4) BCCI paid richer fees than SPIB received from other clients***.

*Wight*, 219 F.3d at 92 (emphasis added). Thus, putting aside the fact that Mr. Burstein was Quiros' *former* son-in-law (Am. Compl. at ¶ 23 (emphasis added.)), and was divorced from Quiros' daughter for most of the time period relative to this case, there are no allegations that Mr. Burstein actually knew that the limited partnerships were "shell" companies or that he had any suspicion that there was no business purpose for the transfers Quiros instructed to be made.[5] At best, Plaintiffs have alleged that Mr. Burstein had discussions with Raymond James' Anti-Money Laundering Department concerning the transfers Quiros instructed to be made and that Mr. Burstein owed a duty to know his customer. (Am. Compl. at ¶¶ 120, 125.) However, as Mr. Burstein argued in his Motion, Plaintiffs have failed to allege how he had actual knowledge that

---

[5] Plaintiffs have argued that "Raymond James' employees observed the high volume of transactions . . . and were bound by applicable regulations to exercise reasonable diligence and 'know (and retain) the essential facts concerning every customer and . . . the authority of each person acting on behalf of such customer." (Response at 18 (citing Am. Compl. ¶ 120, 125, 128, 133). There are no allegations that Mr. Burstein was one of those employees who was so obligated or that he failed to obtain information necessary to know his customer in accordance with FINRA Rules. Moreover, the allegations in Paragraphs 128 and 133 do not mention Mr. Burstein as they concern requirements that would pertain to banks, rather than brokerage firms or their associated persons. (*See* Motion at 9 n.4.)

7

these transactions, which were directed by Quiros who had been validly granted authority to do so, were part of a fraud or how he might have breached his duty to know his customer under FINRA Rules. (Motion at 9.) Significantly, Plaintiffs have failed to rebut Mr. Burstein's argument that Plaintiffs' argument is anything but circular: Mr. Burstein "knew" the "scheme was fraudulent" because there were "red flags" that "alerted him to the fraudulent scheme." (*Id.*) Further, despite alleging that Raymond James and Mr. Burstein earned "a substantial profit," there are no allegations that the limited partnerships paid more fees than what Raymond James typically received from other clients. (Response at 19.)

Similarly, Plaintiffs have alleged that Mr. Burstein "helped Quiros hide the fact that monies were missing . . ." by buying treasuries on margin. (Am. Compl. at ¶78.) But Plaintiffs have not alleged how Mr. Burstein had actual knowledge that buying treasuries on margin would have helped Quiros hide the allegedly missing monies. (Motion at 8.) When discussing this issue in the Response, Plaintiffs have accused Mr. Burstein of simply having "[i]gnored critical allegations of the Amended Complaint, including . . ." that Mr. Burstein "helped Quiros conceal the fraud" by buying treasuries on margin. (Response at 16.) Again, this begs the question—Plaintiffs have still failed to meet their burden of pleading facts which would demonstrate Mr. Burstein's actual knowledge.

Plaintiffs are attempting to assert that "[c]ircumstantial evidence supporting general awareness of fraud" is sufficient to plead aiding and abetting fraud, for example, apparently without pleading actual knowledge. (Response at 16 (citing *Smith v. First Union Nat'l Bank*, 2002 U.S. Dist. LEXIS 17759 (S.D. Fla. Aug. 23, 2002))). Mr. Burstein does not deny that circumstantial evidence is still valid evidence. However, Plaintiffs have not pleaded circumstantial evidence that would support a finding of actual knowledge. They have made conclusory statements that Mr. Burstein must have had actual knowledge based on his allegedly failing to detect red flags. These allegations fail to plead actual knowledge, whether through direct or circumstantial evidence. *Perlman v. Wells Fargo Bank, N.A.*, 559 Fed. Appx. 988, 993 (11th Cir. 2014). Because Plaintiffs have failed to supply anything other than conclusory statements about Mr. Burstein's knowledge, Plaintiffs' Amended Complaint must be dismissed.

### D. Plaintiffs' Allegations of Substantial Assistance are Insufficient

For much of the same reason, Plaintiffs' argument in support of the sufficiency of the allegations of substantial assistance also fail. The activities that Plaintiffs claim demonstrate

8

"substantial assistance" are nothing more than the types of activities in which a financial advisor would typically be engaged. As argued in the Motion, allegations that a financial advisor executed transactions on behalf of a client, without more, are insufficient to prove substantial assistance. (Response at 10-11) (citing *O'Halloran v. First Union Nat'l Bank of Fla.*, 350 F.3d 1197, 1205 (11th Cir. 2003).))

Plaintiffs' Response has failed to address this argument adequately. Instead, Plaintiffs have stated that Mr. Burstein "disregarded red flags, information about the Limited Partnerships that the defendants were obligated by law to know, and express notice that Quiros was violating the terms of the Limited Partnership Agreements." (Response at 21.) These arguments are unavailing. First, as indicated in Mr. Burstein's Motion, allegations of ignoring red flags are insufficient to plead substantial assistance. (*Id.* at 11.) Second, Plaintiffs have failed to identify what information about the Limited Partnerships that Mr. Burstein allegedly was obligated by law to know, as it has not been pleaded in the Amended Complaint and is not identified in Plaintiffs' Response. Finally, Plaintiffs' claims for aiding and abetting are premised on Mr. Burstein's purported receipt of an unidentified portion of the offering materials, which are too vague to plead fraud with particularity under Fed. R. Civ. P. 9(b).

Because Plaintiffs' allegations of substantial assistance are insufficient, the Court must dismiss Counts II and V for aiding and abetting against Mr. Burstein.

### E. PLAINTIFFS HAVE SUPPLIED NO ARGUMENT REGARDING THE EXISTENCE OF A CONSPIRATORIAL AGREEMENT INVOLVING MR. BURSTEIN

In his Motion, Mr. Burstein argued that Plaintiffs' claims for conspiracy and for conspiracy to violate Florida RICO were deficient, among other things, because Plaintiffs failed to allege specific facts of an actual agreement to perform an unlawful act or to perform a lawful act for an unlawful purpose. (Motion at 13.) Plaintiffs simply alleged such an agreement based on the activities Mr. Burstein performed which were the typical activities of any financial advisor. (*Id.*)

Plaintiffs' Response has done nothing to demonstrate the existence of any allegations of a conspiratorial agreement between Mr. Burstein and his alleged co-conspirators. (Response at 22-24.) Plaintiffs have repeated the same conclusory allegations that constitute their claim for conspiracy and stated that circumstantial evidence may be used to prove a conspiracy. (*Id.* at 24.) However, Plaintiffs have not alleged the existence of an agreement based on allegations of circumstantial evidence. Plaintiffs have made the conclusory statement that "[a]n agreement was

9

made in the first half of 2008 by Quiros with each of Raymond James, Burstein, and People's Bank to induce Plaintiffs and the Class into investing millions of dollars . . . ." (Response at ¶ 284)  This allegation fails to meet the pleading standards under Fed. R. Civ. P. 9(b) for pleading fraud, and the Court must dismiss the conspiracy claims in Counts VII and XIII.

> F. **PLAINTIFFS' ARGUMENTS REGARDING THE ALLEGATIONS OF VIOLATIONS OF THE FLORIDA RACKETEERING INFLUENCED CORRUPT ORGANIZATIONS ACT ARE MISPLACED**

Mr. Burstein's Motion argued that Plaintiffs' Florida Racketeering Influenced Corrupt Organization ("Florida RICO") claims were deficient because they were founded on conclusory allegations, failed to allege predicate acts of a pattern of racketeering activity, and failed to allege Mr. Burstein's operation or control of the RICO enterprise.  With regard to the claim for conspiracy to violate the Florida RICO statute, Mr. Burstein also argued that Plaintiffs failed to allege the existence of a conspiratorial agreement, as discussed above.  In their Response, Plaintiffs have failed to meet their burden of rebutting Mr. Burstein's arguments and demonstrating the adequacy of their allegations.

> 1. **PLAINTIFFS HAVE FAILED TO SHOW THAT THEIR ALLEGATIONS OF KNOWLEDGE AND INTENT ARE ANYTHING BUT CONCLUSORY**

Plaintiffs have argued that they properly alleged Mr. Burstein's intent to engage in a racketeering enterprise because he was "specifically warned by MSSI that investor funds 'may not be used in any manner, including as collateral or a guarantee, to fund the purchase of the Jay Peak Resort.'" (Response at 25 (quoting Am. Compl. at ¶ 61.))  However, Plaintiffs' claims against Mr. Burstein are not premised on his knowledge of this email from MSSI, but on his receipt of "sufficient portions of the offering materials for all of the Limited Partnerships," which allegedly prohibited the use of the funds deposited into the Limited Partnership accounts at Raymond James as collateral.  Mr. Burstein has argued that the Amended Complaint is deficient because this allegation of his receipt of "sufficient portions of the offering materials" lacks the specificity required under Fed. R. Civ. P. 9(b) to plead a fraud-based claim and is, in any event, conclusory.  Plaintiffs' Response has supplied no argument that this phrase is sufficiently specific to meet the pleading standard under Fed. R. Civ. P. 9(b).

### 2. PLAINTIFFS HAVE FAILED TO ADDRESS THE LACK OF ALLEGATIONS OF MR. BURSTEIN'S SPECIFIC RICO PREDICATE ACTS AND HIS ALLEGED OPERATION OR CONTROL OF AN ENTERPRISE

Plaintiffs' Amended Complaint conspicuously failed to identify any specific predicate acts on the part of Mr. Burstein. (Motion at 14-15 (citing Am. Compl. ¶¶ 343-370.)) Plaintiffs have apparently asserted wire and mail fraud as the predicate RICO acts, but simply failed to allege a single fraudulent statement or omission, or illegal act, attributable to Mr. Burstein. (*Id.* at 15.) Even though Plaintiffs' Response contains a section entitled "Raymond James and Burstein Engaged in a Pattern of Racketeering that Directly Injured Plaintiffs and the Class," Plaintiffs have failed to identify any alleged predicate acts on the part of Mr. Burstein. Instead, in that section, Plaintiffs have merely stated that "it is well established that proximate causation may be established through a common sense inference that investors' actions cannot be explained by anything other than reliance on a defendant's conduct." (Response at 28.) However, Plaintiffs have failed to demonstrate how there could be a common sense inference that they relied on Mr. Burstein's purported conduct when he was completely unknown to Plaintiffs and when there are no allegations that he had any contact with them. Regardless, Plaintiffs' argument has still failed to identify any predicate RICO acts by Mr. Burstein.

Similarly, Plaintiffs have failed to make any allegation that Mr. Burstein operated or controlled the alleged RICO enterprise, because the allegations in the Amended Complaint, when stripped of hyperbole, have attributed conduct to Mr. Burstein that would be hardly distinct from the normal commercial transactions that financial professionals provide every day in the ordinary course of their business. (*Id.* at 15-17.))

Conceding their failure to plead facts demonstrating Mr. Burstein's operation or control over the purported RICO enterprise, Plaintiffs have included a footnote that says that "it is unsettled whether the operation-or-management test . . . applies under Florida RICO," relying on *dicta* located in a footnote in *Horace-Manasse v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS 51354, *18 n.6 (S.D. Fla. Apr. 12, 2012) (Hurley, J.). Significantly, the court in *Horace-Manasse* relied on a Florida Bar Journal article, rather than decisional law. *Id.* (citing Etan Mark & Monica F. Rossbach, *Qué RICO? Discarding the Fallacy that Florida RICO and Federal RICO are Identical*, 86 Fla. B.J. 10 (Jan. 2012)). Plaintiffs have failed to disclose to the Court that this Florida Bar Journal article specifically noted that another court in this District, in a reported decision, has stated that "Florida's RICO statute uses the same language to indicate the level of

involvement necessary for RICO liability.  ***There appears to be no reason to believe that the operation and management test of Reves would not apply to Florida's RICO statute***."  86 Fla. B.J. 10 n.44 (citing *Bailey v. Trenam Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, P.A.*, 938 F. Supp. 825, 828 (S.D. Fla. 1996) (emphasis added).  Critically, in that case, the court granted defendants' motion for summary judgment against a plaintiff claiming a violation of Florida RICO.  While the article's authors wrote that "the inapplicability of the operation and management test to Florida RICO [might] certainly [be] worth raising," *id.*, Plaintiffs have not.

Plaintiffs also argue that "even assuming that the test applies here, Plaintiffs have pled facts more than sufficiently to satisfy it . . . ."  (Response at 29.)  However, the allegations of operation or management consist of having "met with Quiros and g[iving] him access to Raymond James' services and the means to implement his fraudulent scheme"; "assisted in the diversion and misuse of . . . funds"; "provided margin loans"; and "facilitated an intricate web of transfers."  (Response at 29 (citing Am. Compl. ¶¶ 327, 341-42.))  These allegations of meeting, assisting, facilitating, or even providing margin loans or other services that would be expected for any other brokerage customer, do not support a finding that Mr. Burstein operated or controlled a racketeering enterprise.  Clearly, Plaintiffs have failed to allege Mr. Burstein's operation or control.

### 3. THE COURT MUST DISMISS THE FLORIDA RICO CLAIMS AGAINST MR. BURSTEIN

Based on the foregoing, Plaintiffs' claims for violation of the Florida RICO statute against Mr. Burstein are deficient and must be dismissed.

### IV. CONCLUSION

For the reasons stated herein and in his Motion, Defendant Joel Burstein respectfully requests that the Court dismiss Plaintiffs' Amended Complaint and enter such further relief as is fair and just.

Dated:  October 24, 2016

Respectfully submitted,

**SALLAH ASTARITA & COX, LLC**
*Counsel for Defendant Joel Burstein*
One Boca Place
2255 Glades Rd., Ste. 300E
Boca Raton, FL 33431
Tel.: (561) 989-9080
Fax: (561) 989-9020

/s/Joshua A. Katz
**James D. Sallah, Esq.**
Fla. Bar No. 0092584
Email: jds@sallahlaw.com
**Joshua A. Katz, Esq.**
Fla. Bar No. 0848301
Email: jak@sallahlaw.com
Jeffrey L. Cox, Esq.
Fla. Bar No. 173479
Email: jlc@sallahlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2016 I caused the foregoing to be filed electronically with the Clerk of the Court using CM/ECF.  I also certify that the foregoing is being served this day on all counsel of record via transmission of Notices of Electronic filing generated by CM/ECF or in the manner stated in the attached Service List.

/s/Joshua A. Katz

## SERVICE LIST
### Case No. 16-cv-21575-MORENO/O'SULLIVAN
*Daccache v. Raymond James Financial, Inc.*, et al.

**Via CM/ECF**
KOZYAK TROPIN & THROCKMORTON
*Counsel for Plaintiffs*
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, FL 33134-6036
Harley S. Tropin
Email: hst@kttlaw.com
Thomas A. Tucker Ronzetti
Email: tr@kttlaw.com
Tal J. Lifshitz
Email: tjl@kttlaw.com
Dyanne Elyce Feinberg
Email: def@kttlaw.com
Maia Aron
Email: ma@kttlaw.com
Rachel Sullivan
Email: rs@kttlaw.com

And

GIRARD GIBBS LLP
601 California Street, 14th Floor San Francisco, California 94108
Daniel C. Girard
Email: dcg@girardgibbs.com
Adam E. Polk
Email: aep@girardgibbs.com

And

BENNETT AIELLO
The Ingraham Building, Eighth Floor 25 Southeast Second Avenue
Miami, Florida 33131
Paul Aiello
Email: paiello@bennettaiello.com
Michael P. Bennett
Email: mbennett@bennettaiello.com
Jeremy R. Kreines
Email: jkreines@bennettaiello.com

And

**Via CM/ECF**
León Cosgrove, LLC
*Counsel for Defendant Ariel Quiros*
Scott B. Cosgrove
James R. Bryan
255 Alhambra Circle, Suite 800 Coral Gables, Florida 33133
Email: scosgrove@leoncosgrove.com
Email: jbryan@leoncosgrove.com
Email: anoonan@leoncosgrove.com

And

David B. Gordon
Travis Meserve
12 East 49th Street, 30th Floor New York, NY 10017
Email: dbg@msk.com
Email: txm@msk.com

And

John Durrant
11377 West Olympic Boulevard Los Angeles, CA 90064-1683
Email: jsd@msk.com

BERMAN DEVALERIO
One Liberty Square
Boston, Massachusetts 02109
Kathleen M. Donovan-Maher*)*
Email:kdonovanmaher@bermandevalerio.com Steven Buttacavoli
Email: sbuttacavoli@bermandevalerio.com
Nathaniel L. Orenstein
Email: norenstein@bermandevalerio.com

**Via CM/ECF**
KENNY NACHWALTER, P.A.
*Counsel for Defendant Raymond James & Associates, Inc.*
Four Seasons Tower
1441 Brickell Ave., Ste. 1100
Miami, FL 33131
Stanley H. Wakshlag
Email: swakshlag@knpa.com
Deborah S. Corbishley
Email: dcorbishley@knpa.com
Ryan Zagare
Email: rzagare@knpa.com
Janelle M. Ans
Email: jans@knpa.com

**Via CM/ECF**
KASOWITZ BENSON TORRES & FRIEDMAN LLP
*Counsel for Defendants People's United Financial, Inc., and People's United Bank, N.A.*
1441 Brickell Avenue
Suite 1420
Miami, FL 33131
Jonathan E. Minsker
Email: jminsker@kasowitz.com
Maria H. Ruiz
Email: mruiz@kasowitz.com

**Via U.S. Mail**
William Stenger
*Pro Se*
1276 Bluff Road
Newport, VT 05855-9544