UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:16-CV-21575-MORENO/O'SULLIVAN

ALEXANDRE DACCACHE, CARLOS
ENRIQUE HILLER SANCHEZ, PHILIP
CALDERWOOD, JOSE ANTONIO PIETRI,
JOSE R. CASSERES-PINTO, TONGYI WANG,
JAMES B. SHAW, JOHANNES EIJMBERTS,
and LORNE MORRIS, on behalf of themselves
and all others similarly situated,

      Plaintiffs,

v.

RAYMOND JAMES & ASSOCIATES, INC.,
PEOPLE'S UNITED FINANCIAL, INC.,
as successor-in-interest to Chittenden Trust Company,
PEOPLE'S UNITED BANK, ARIEL QUIROS,
WILLIAM STENGER, and JOEL BURSTEIN,

      Defendants.

_____/

**PLAINTIFFS' RESPONSE TO DEFENDANT PEOPLE'S UNITED
FINANCIAL, INC. AND PEOPLE'S UNITED BANK'S
MOTION TO DISMISS THE AMENDED COMPLAINT**

Notwithstanding that People's Bank knowingly and actively participated in the fraudulent scheme perpetrated by Quiros and others, it seeks dismissal of the Amended Complaint, arguing lack of personal jurisdiction and failure to state a claim.  People's Bank transferred investors' escrow funds in flagrant violation of the terms of the offering documents and escrow agreements, and in doing so, breached its agreements as well as fiduciary duties it owed to the investors.  By this conduct, People's Bank committed tortious acts in Florida and caused damage to Florida investors.  People's Bank is subject to personal jurisdiction in Florida, and the Amended Complaint

states claims against it for its misconduct as escrow agent for the Limited Partnerships.  People's Bank's Motion to Dismiss should be denied.[1]

## BACKGROUND

This action is brought on behalf of a proposed class of 836 individuals who invested over $400 million in a series of related projects at the Jay Peak and Q Burke ski resorts in Vermont, as part of the EB-5 Immigrant Investor Program.  (Am. Compl. ¶ 1.)  Unbeknownst to investors, however, these projects operated as a fraudulent scheme by Defendant Ariel Quiros, who, together with co-Defendants Raymond James, Joel Burstein, William Stenger, and People's Bank, diverted investor funds to Raymond James accounts controlled by Quiros.  (*Id.*)

Upon committing to a project, investors were required to deposit funds into project-specific escrow accounts maintained by People's Bank.  (*Id.* ¶¶ 1, 2, 99.)  The Escrow Agreements and offering materials provided that People's Bank would release the escrowed investor funds only to the specific limited partnership in which the investor had purchased an interest, not to another limited partnership or to Quiros, and only for development of the particular EB-5 Project applicable to that specific limited partnership, not for use by another limited partnership or by Quiros. (*Id.* ¶¶ 2, 100.) Instead, People's Bank released the funds to accounts controlled by Quiros at Raymond James in violation of the terms of the agreements and offering materials.  (*Id.* ¶ 2.) After these improper transfers by People's Bank to Raymond James, the money was commingled and misappropriated to cover shortfalls on other projects, and to pay for Quiros's personal expenses.  (*Id.* ¶¶ 1, 2.)  Defendants misappropriated more than $200 million in EB-5 Project investor funds, and the Jay Peak assets have no net value.  (*Id.* ¶¶ 1, 69.)  Plaintiffs bring this class action to recover their losses resulting from the Jay Peak and Q Burke Ponzi scheme.  (*Id.* ¶ 8.)

Jay Peak is a ski resort in the Green Mountains of Vermont, which was owned and operated by Mont Saint-Sauveur International, Inc. ("MSSI") from 1978 until mid-2008.  (*Id.* ¶ 50.) Quiros and Stenger began negotiating with MSSI to acquire and further develop the Jay Peak resort in

---

[1] "People's Bank" refers to Defendants, People's United Financial, Inc. as successor-in-interest to Chittenden Trust Company, and People's United Bank.  As set forth in Section IV, *infra*, People's United Financial, Inc. acquired Chittenden Trust Company, which served as the escrow agent for the Jay Peak and Q Burke Limited Partnerships (hereinafter referred to as the "Limited Partnerships" or the "EB-5 Projects").  Chittenden Trust Company then merged into People's United Bank, after which People's United Bank served as the escrow agent for the Limited Partnerships.  The Amended Class Action Complaint will be referred to as the "Amended Complaint" and cited as (Am. Comp.).

2007. (*Id.* ¶ 51.)  During the first half of 2008, Quiros met with Burstein, then the South Florida Complex Administrative Manager at Raymond James, and Frank Amigo, Burstein's supervisor. (*Id.* ¶ 52.)  During this meeting, Quiros, Burstein, and Amigo discussed a financial structure for the Limited Partnerships that would be created to fund the EB-5 Projects.  (*Id.*)

This financial structure was never disclosed in the offering materials provided to the investors.  (*Id.*)  Specifically, the offering materials omitted to disclose that each investor's funds would be transferred from escrow accounts at People's Bank or its predecessors to accounts at Raymond James over which Quiros would have exclusive control.  (*Id.* ¶¶ 52-53.)  The offering materials likewise omitted to disclose that Quiros's control would allow him to manage and use investors' deposits and capital contributions without any regard for the terms in the applicable offering materials or the specific project for which the investment was made.  (*Id.* ¶ 53.)

Burstein, Quiros, and Amigo made plans to finance the purchase of Jay Peak, Inc. from MSSI using a margin loan.  (*Id.* ¶ 54.)  Under this scheme, investor funds would first be used to purchase Treasury bills.  (*Id.*)  Raymond James would lend money to Quiros using Treasury bills, bought with investor money, as collateral for the margin loan.  (*Id.*)  Quiros could then borrow up to 90% of the value of the Treasury bills in the accounts of the Limited Partnerships at Raymond James.  Investors were never told their money would be used as collateral for the loans.  (*Id.*)

Once MSSI and Q Resorts finalized the Jay Peak, Inc. stock transfer agreement on June 13, 2008, Quiros, through his son-in-law, Burstein, opened brokerage accounts at Raymond James for each of the Limited Partnerships.  (*Id.* ¶ 56.)  People's Bank transferred millions of dollars to these Raymond James accounts in violation of the offering documents for Phases I and II, which were used to fund the purchase of Jay Peak, Inc. (*Id.* ¶¶ 57-58, 106.)  Specifically, People's Bank made the following improper transfers with investor funds, contrary to the offering documents:

- On June 16 and 17, 2008, in two separate transactions, People's Bank transferred $11 million from the Phase I Escrow Account at People's Bank to an MSSI Phase I account at Raymond James. These funds were then transferred from the Phase I account at Raymond James to Quiros's Phase I account at Raymond James.

- On June 20, 2008, People's Bank transferred $7 million from the Phase II Escrow Account at People's Bank to the MSSI Phase II account at Raymond James. These funds were then transferred from the Phase II account at Raymond James to Quiros's Raymond James account.

- On September 4, 2008, People's Bank transferred $1 million from the Phase II Escrow Account at People's Bank to the Phase II Investor account at Raymond James.

3

- On September 15, 2008, People's Bank transferred $3 million from the Phase II Escrow Account at People's Bank to the Phase II Investor account at Raymond James.

- On September 22, 2008, People's Bank transferred $1.5 million from the Phase II Escrow Account at People's Bank to the Phase II Investor account at Raymond James.

(*Id.* ¶ 107.) These transfers were made by People's Bank in violation of the Phase I and Phase II offering materials, which provided that the General Partners could only hold investor funds in **bank accounts**, and required the transferee bank accounts to be "insured by an agency of the federal government." (*Id.* ¶ 106.) As a brokerage firm, Raymond James is not an FDIC-insured bank. (*Id.*)

Additionally, People's Bank transferred investor funds that it held in escrow for a specific EB-5 Project, to brokerage accounts held at Raymond James that were designated for another phase of an EB-5 Project. For example:

- On July 1, 2008, $1 million was transferred from the Phase I escrow account at People's Bank to the Q Resorts account at Raymond James.

- On July 1, 2008, $600,000 was transferred from the Phase II escrow account at People's Bank to the Q Resorts account at Raymond James.

- On October 3, 2011, $49,000 was transferred from the Phase III escrow account at People's Bank to the Phase I investor account at People's Bank.

- On February 23, 2012, $62,000 was transferred from the Phase I escrow account at People's Bank to the Phase II investor account at People's Bank.

(*Id.* ¶ 107.) These and other improper transfers were made by People's Bank to Raymond James in Florida. (*Id.* ¶¶ 57, 67, 107, 350, 356.) People's Bank knew that these transfers were improper because the Limited Partnership Agreement for each Limited Partnership required that upon release of an investor's capital contributions to a Limited Partnership the investment was to be "immediately and irrevocably" committed to a specific EB-5 Project. (*Id.* ¶ 108.) The significant number of transfers in and out of the People's Bank escrow accounts to effect commingling of partnership funds and transfers to a non-bank alerted People's Bank to illegal conduct in the administration and use of investor funds. (*Id.*)

The standardized offering materials for the EB-5 Projects – including the offering memorandum, subscription documents, business plan, and Limited Partnership Agreement – were designed to conceal Defendants' fraudulent scheme and lull investors into believing that their

investments were protected.  (*Id.* ¶ 91.)  The offering materials given to every investor described the particular project in which they were investing, the purpose for which their investment would be used, and touted the likely success of the project.  (*Id.*)  None of the offering materials disclosed that the monies invested in the Limited Partnerships were being and would be misused and commingled, or used for Quiros's personal benefit.  (*Id.* ¶ 94.)

Plaintiffs bring a claim against People's Bank for aiding and abetting Quiros's fraud based on the following allegations:

- Throughout much of the ten-year business relationship from 2006-2015, Stenger was in frequent contact with People's Bank employees, as Quiros's agent.

- Throughout the relationship, People's Bank knew that each of the Limited Partnerships was participating in the EB-5 Program, and, therefore, at all times they also knew that the investors would be unaware that their capital contributions would be spent on anything other than the EB-5 Project that the Limited Partnership was formed to create.

- Throughout the relationship, People's Bank received certain offering materials from Stenger, including, without limitation, escrow and subscription agreements signed by each investor, which offering materials made clear that People's Bank was acting as escrow agent for each of the Limited Partnerships.

- During 2008, People's Bank knew from offering materials that investors were unaware that their capital contributions were being commingled or disposed of for any reason other than completion of the EB-5 Project for which the Limited Partnership was formed.

- Beginning in 2008, People's Bank learned that the offering materials for each of the Limited Partnerships were deceptive in that these documents did not disclose that the capital contributions were being commingled.

- During 2008, People's Bank learned that the offering materials for each Limited Partnership were deceptive as they failed to disclose that the capital contributions escrowed with People's Bank were being used for purposes unrelated to the completion of the EB-5 Project for which the Limited Partnership was formed.

- During 2008, People's Bank learned that the offering materials for Phases I, II and III were deceptive in that these documents did not disclose that the monies were being released from escrow for transfer to a brokerage firm instead of a federally-insured bank.

- People's Bank lent an air of legitimacy to the fraud in that People's Bank told investors that their investments were being held in escrow and would only be applied towards completion of the EB-5 Project in which they invested.

- People's Bank released monies escrowed for investors in accounts designated for particular Limited Partnerships to accounts at Raymond James designated for the

same or different Limited Partnerships that were controlled by Quiros. People's Bank executed these transfers knowing that investors' subscription agreements did not allow for the transfer of investor funds to brokerage accounts, and knowing that the escrowed funds should not be transferred to funds designated for Limited Partnerships other than the ones selected by individual investors.

- By participating in hundreds of transactions of this type, People's Bank assisted in the misuse and commingling of the capital contributions that Quiros had obtained by fraud against the investors.

- Even though People's Bank was an escrow agent with fiduciary duties to the investors, it never made any attempt to alert any of the investors to the fraud.

(*Id.* ¶¶ 256-257.)

Plaintiffs also assert a claim against People's Bank for aiding and abetting the breach of fiduciary duty by the General Partners of the Limited Partnerships, who owed a direct fiduciary duty to the Limited Partners in light of the contractual commitment in the Limited Partnership Agreements not to "borrow from the Partnership or commingle Partnership funds with the funds of any Person" without the consent of the Limited Partners. (*Id.* ¶¶ 274–80.)

Plaintiffs further allege that People's Bank conspired with the other Defendants in perpetrating its fraudulent scheme. Specifically, People's Bank made an agreement in the first half of 2008 with Raymond James, Burstein, and Quiros to induce Plaintiffs and the Class to invest millions of dollars into the Limited Partnerships and to commit fraud and fiduciary breaches. (*Id.* ¶ 284.) In furtherance of this conspiracy, People's Bank released investors' funds to Raymond James despite knowing that the transfers violated investors' subscription agreements and escrow obligations owed by People's Bank to the investors. (*Id.* ¶ 285.)

Finally, Plaintiffs assert claims against People's Bank for negligence, breach of fiduciary duty, and breach of contract stemming from People's Bank's breaches in connection with releasing escrowed funds to improper accounts and non-bank financial institutions and into accounts that were not under the control of the General Partners, and by failing to notify Plaintiffs and the Class of suspicious activity occurring in connection with the escrowed funds. (*Id.* ¶¶ 295–315.)

The tortious acts committed by People's Bank were committed in Florida. People's Bank wrongfully released investor funds to Raymond James accounts in Florida. (*Id.* ¶¶ 2, 47, 73–74, 81, 83, 104–05, 350, 356.) The actions of People's Bank also caused damage to investors in Florida. (*Id.* ¶ 47.) Plaintiffs Daccache, Sanchez, Calderwood, and Pietri all reside in and were damaged in Florida. (*Id.* ¶¶ 9–12, 140–43, 150, 152–54, 161, 163–64, 171, 173–74, 181.)

6

## ARGUMENT

I.   **People's Bank is Properly Subject to Personal Jurisdiction in Florida**

"A plaintiff seeking to establish personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). When a defendant such as People's Bank challenges personal jurisdiction "by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Id.* (quoting *Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir. 1990)).  "The burden, however, does not shift back to the plaintiff when the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Id.*

Here, the affidavits submitted by People's Bank [DE 112, 113] do not rebut or deny the relevant jurisdictional allegations.  Instead, People's Bank refers to every possible contact with the Jay Peak investors **other than its critical contacts with Florida**.  The affidavits speak to the fact that People's Bank is not registered to do business in Florida and has no offices in Florida [DE 112 ¶¶ 3, 6], that the escrow agreements were prepared by employees in Vermont and that all notices relating to the agreements were received in Vermont [DE 113 ¶¶ 4–5], and that decisions concerning the agreements and all transfers of funds were made from and in Vermont or Connecticut [*id.* ¶ 6].  But the affidavits say nothing about the fiduciary relationships People's Bank entered into with Florida investors or the transfers of funds by People's Bank **into Florida** (through Raymond James) in furtherance of Quiros's scheme. Such affidavits do not address the allegations of Plaintiffs' Complaint and are insufficient to shift the burden back to Plaintiffs to produce evidence supporting jurisdiction.[2]

The allegations of the Complaint establish a prima facie case of jurisdiction over People's Bank.  *See Posner v. Essex Ins. Co.,* 178 F.3d 1209, 1216 (11th Cir. 1999) (plaintiff "alleged facts, unrebutted by Salem, that established a prima facie case of jurisdiction over Salem"); *see also Mosseri*, 736 F.3d at 1351. Plaintiffs' unrebutted allegations must thus be accepted as true.  *See eLandia Int'l, Inc. v. Ah Koy*, 690 F. Supp. 2d 1317, 1327 (S.D. Fla. 2010) (Moreno, J.) (analyzing personal jurisdiction and reasoning that "on a motion to dismiss the court must find any

---

[2] Moreover, to the extent the affidavits speak to **general** personal jurisdiction under the Florida long-arm statute (*e.g.*, having offices or doing business in Florida), they are irrelevant. As set forth below, Plaintiffs argue in support of **specific** personal jurisdiction, not general.

uncontroverted facts alleged in the plaintiff's complaint to be true."); *Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d 1213, 1222 (S.D. Fla. 2009).  Moreover, the Eleventh Circuit follows the doctrine of pendent personal jurisdiction, which provides that "[i]f the forum's long-arm statute provides jurisdiction over one claim, the district court has personal jurisdiction over the entire case so long as the claims arose from the same jurisdiction generating event." *eLandia Int'l*, 690 F. Supp. 2d at 1341; *see also Exhibit Icons, LLC v. XP Co., LLC,* 609 F. Supp. 2d 1282, 1288 (S.D. Fla. 2009). Thus, if the long-arm statute provides jurisdiction over any cause of action or any specific investor's claim based on the unrebutted allegations of the Complaint, the Court has jurisdiction over People's Bank for the entire case.

To determine whether this Court has personal jurisdiction over People's Bank, the Court must undertake a two-part analysis: (1) whether personal jurisdiction exists under Florida's long-arm statute, and (2) if so, whether that exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.  *See Barnett v. Carnival Corp.*, No. 06-22521-CIV, 2007 WL 1526658, at *1 (S.D. Fla. May 23, 2007) (O'Sullivan, J.) (citing *Sculptchair v. Century Arts, Ltd.,* 94 F.3d 623, 626 (11th Cir. 1996)).  Both prongs of the jurisdictional analysis are met here as to all claims against People's Bank.

### A.    Personal Jurisdiction Exists Over People's Bank Under Florida's Long-Arm Statute

Florida's long-arm statute provides for both general and specific personal jurisdiction.  *See* Fla. Stat. § 48.193(1)-(2).  Here, Plaintiffs allege that specific personal jurisdiction is proper over People's Bank pursuant to the "tortious acts within Florida" provision in § 48.193(1)(a)(2).

"[S]pecific personal jurisdiction authorizes jurisdiction over causes of action arising from or related to the defendant's actions within Florida and concerns a nonresident defendant's contacts with Florida only as those contacts related to the plaintiff's cause of action." *See Mosseri*, 736 F.3d at 1352–53.  "Just a single act by a non-resident defendant directed to a forum state can be enough to confer specific personal jurisdiction if the act gave rise to the cause of action at issue." *Sierra Equity Grp.,* 650 F. Supp. 2d at 1225.  Moreover, "[i]t is . . . well recognized that intentional torts are classic examples of such acts that give rise to jurisdiction over a non-resident defendant who has no other contacts with the forum state." *eLandia Int'l*, 690 F. Supp. 2d at 1338.

Section 48.193(1)(a)(2) provides that a nonresident defendant is subject to personal jurisdiction in Florida "for any cause of action arising from ... [c]omitting a tortious act within [Florida]." Fla. Stat. § 48.193(1)(a)(2).  "A nonresident defendant commits 'a tortious act within

[Florida]' when he commits an act *outside* the state that causes *injury within Florida*." *Mosseri*, 736 F.3d at 1353–54 (citing *Posner,* 178 F.3d at 1216–17 (collecting Florida cases and adopting Florida courts' broad interpretation of the long-arm statute that permits personal jurisdiction over nonresident "defendants committing tortious acts outside the state that cause injury in Florida")). "The tort-feasor's physical presence in Florida is not required to obtain personal jurisdiction." *Sierra Equity Grp.*, 650 F. Supp. 2d at 1222–25 (citing *Horizon Aggressive Growth, L.P. v. Rothstein–Kass, P.A.,* 421 F.3d 1162, 1168 (11th Cir. 2005)); *see also eLandia Int'l*, 690 F. Supp. 2d at 1329.

Here, Plaintiffs assert five tort claims against People's Bank: aiding and abetting fraud, aiding and abetting breach of fiduciary duty, conspiracy to commit fraud and breach of fiduciary duty, negligence, and breach of fiduciary duty.  In support of these claims, Plaintiffs allege that:

- People's Bank released monies escrowed for investors (including Florida investors) in accounts designated for particular Limited Partnerships to accounts at Raymond James in Florida designated for the same or different Limited Partnerships that were controlled by Quiros (a Florida resident).

- People's Bank executed these transfers knowing that investors' subscription agreements did not allow for the transfer of investor funds to brokerage accounts controlled by Quiros, and knowing that the escrowed funds should not be transferred to funds designated for Limited Partnerships other than the ones selected by individual investors.

- By participating in hundreds of transactions of this type, People's Bank assisted in the misuse and commingling of the capital contributions that Quiros had obtained by fraud against the investors.

- Even though People's Bank was an escrow agent with fiduciary duties to investors (including Florida investors), it never made any attempt to alert any of the investors to the fraud committed by Quiros.

- People's Bank released investors' funds to Raymond James in Florida despite knowing that said transfers violated investors' subscription agreements and escrow obligations owed by People's Bank to the investors, including Florida investors.

(Am. Compl. ¶¶ 256–57, 285.)

As a threshold matter, determining whether the requirements of the long-arm statute have been met under these facts requires a determination of whether the evidence demonstrates that People's Bank committed the alleged torts at issue — merits determinations that are "the very

contested issues to be resolved in trying the cause of action." *Sierra Equity Grp.,* 650 F. Supp. 2d at 1232.

> In situations "[w]here the jurisdictional issues are intertwined with the substantive merits, 'the jurisdictional issues should be referred to the merits, for it is impossible to decide one without the other.'" *Eaton v. Dorchester Dev., Inc.,* 692 F.2d 727, 733 (11th Cir. 1982) quoting *Chatham Condo. Assocs. v. Century Village, Inc.,* 597 F.2d 1002, 1011 (5th Cir.1979). Reaching the merits requires developing a full factual record relating to jurisdictional issues. *See id.* at 729 ("federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits").

*Id.* (footnotes omitted) (citing *Nissim Corp. v. ClearPlay, Inc.,* 351 F. Supp. 2d 1343 (S.D. Fla. 2004)).  Because the jurisdictional issues here are intertwined with the substantive merits, the Court may reserve ruling on the jurisdictional issues until the decision on the merits.  But even at the pleading stage, the Complaint has alleged sufficient tortious acts committed by People's Bank in Florida as a basis for Florida long-arm jurisdiction under § 48.193(1)(b), Fla. Stat.

Recent authority from this Court further supports an exercise of personal jurisdiction over People's Bank under the long-arm statute.  In *eLandia Int'l,*  this Court analyzed claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and conspiracy under the "committing a tortious act" provision of the long-arm statute,[3] and broadly construed the statute as permitting personal jurisdiction over those who commit a tortious act outside the state that results in harm inside the state.  *See* 690 F. Supp. 2d at 1328–29.  The Court accordingly reasoned that if a director breached a fiduciary duty to a Florida entity, then that individual is subject to jurisdiction under the long-arm statute because "the fiduciary duties he owed were owed to a Florida corporation" so "Florida jurisdiction clearly attaches."  *Id.* at 1329–30.

The same application of the long-arm statute applies here. People's Bank did not have an ordinary banking relationship with Plaintiffs and the Class.  Instead, People's Bank acted as a fiduciary by serving as an escrow agent, and owed a fiduciary duty to Florida investors.  *See Tambourine Comercio Internacional SA v. Solowsky,* 312 F. App'x 263, 281 (11th Cir. 2009) (an escrow agent acts as a fiduciary); *see also Oginsky v. Paragon Props. of Costa Rica LLC*, 784 F. Supp. 2d 1353, 1375 (S.D. Fla. 2011) (same).  When People's Bank breached that duty, it caused damage in Florida to Florida investors. (Am. Compl. ¶¶ 9–12, 47, 140–43, 150, 152–54, 161, 163–

---

[3]  Although *eLandia, Int'l* analyzed an older version of the long-arm statute, subsection 48.193(1)(b), which is now 48.193(1)(a)(2), the substance of the subsection is unchanged.

64, 171, 173–74, 181.)  People's Bank is accordingly subject to personal jurisdiction under the Florida long- arm statute. *See eLandia Int'l*, 690 F. Supp. 2d at 1331 ("If an individual commits an act that aids and abets a breach of fiduciary duty outside of Florida that causes harm to a company located in Florida, the individual is subject to personal jurisdiction under the Florida long-arm statute.").

With respect to the conspiracy claim, "Florida courts apply the co-conspirator rules used in criminal conspiracies to civil conspiracies.  If an individual successfully alleges that any member of a conspiracy committed tortious acts in Florida in furtherance of the conspiracy, then all of the conspirators are subject to personal jurisdiction in Florida."  *eLandia Int'l.*, 690 F. Supp. 2d at 1330 (citing *Horizon Aggressive Growth, L.P. v. Rothstein–Kass, P.A.,* 421 F.3d 1162, 1169 (11th Cir. 2005)).  Here, Plaintiffs allege that Defendants Raymond James, Burstein, and Quiros all committed tortious acts in Florida in furtherance of the conspiracy.  (Am. Compl. ¶¶ 2, 4, 52–66, 72–79, 81–90, 114–22, 319, 327, 341–42, 364.)  Thus, all of the conspirators, including People's Bank, are subject to personal jurisdiction in Florida.[4]

### B.        The Exercise of Jurisdiction Over People's Bank Does Not Violate Due Process

In specific personal jurisdiction cases the Court applies the three-part due process test, which examines (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."  *See Mosseri*, 736 F.3d at 1355.  Plaintiffs bear the burden of establishing the first two prongs, and if they do so, People's Bank "must make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice."  *Id.*

As to the first prong, "arising out of" or "relatedness," the relevant inquiry focuses on "the direct causal relationship between the defendant, the forum, and the litigation."  *Mosseri*, 736 F.3d at 1355–56.  Here, Plaintiffs' claims arise out of People's Bank's contacts with Florida.  People's

---

[4] People's Bank relies on *Sokolowski v. Erbey*, 2015 U.S. Dist. LEXIS 180508 (S.D. Fla. Dec. 8, 2015) for the proposition that jurisdiction is improper with respect to the conspiracy claim because Plaintiffs have not identified any act committed in Florida by any of the defendants in furtherance of the scheme.  This argument ignores the ample allegations of the Amended Complaint that People's Bank's tortious conduct was directed to Florida investors and caused damage in Florida.

Bank's ties to Florida involve fiduciary duties owed to Florida investors and transfers of funds by People's Bank into Florida in furtherance of Quiros's fraud.  There is a direct causal relationship between People's Bank, Florida, and Plaintiffs' claims.  This first requirement is easily satisfied.

As to the second prong, purposeful availment, the Court assesses the nonresident defendant's contacts with the forum state and asks whether those contacts (1) are related to the plaintiff's cause of action, (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum, and (3) are such that the defendant should reasonably anticipate being haled into court in the forum. *See S.E.C. v. Carrillo*, 115 F.3d 1540, 1542 (11th Cir. 1997). In performing this analysis, the Court identifies all contacts between People's Bank and Florida, and asks whether, individually or collectively, those contacts satisfy these criteria.

Based on the allegations of the Amended Complaint, People's Bank purposefully availed itself of the Florida forum in such a way that it could reasonably foresee being haled into a Florida court by breaching duties owed to Florida investors and transferring escrowed funds into Florida in furtherance of Quiros's fraudulent scheme. These collective contacts establish that People's Bank purposefully availed itself of the privileges of doing business in Florida.  *See Mosseri*, 736 F.3d at 1357; *see also eLandia Int'l*, 690 F. Supp. 2d at 1338–39 (concluding that defendants should have reasonably anticipated being haled into court in Florida based on, among other things, the fact that they knowingly conspired "to violate fiduciary duties owed" in Florida, and their alleged tortious activity caused injury in Florida).

The exercise of personal jurisdiction over People's Bank in Florida also satisfies the third prong, in that it comports with traditional notions of fair play and substantial justice.  In this analysis the Court considers (1) "the burden on the defendant," (2) "the forum's interest in adjudicating the dispute," (3) "the plaintiff's interest in obtaining convenient and effective relief," and (4) "the judicial system's interest in resolving the dispute."  *See Mosseri*, 736 F.3d at 1358.

People's Bank has not offered any evidence of its finances or any other limitations to show that it would be burdened by having to litigate the case in Florida.  In light of People's Bank's tortious conduct targeting and causing damage to Florida investors, Florida has a strong interest in hearing the case and protecting Florida victims of a fraud.  *See Mosseri*, 736 F.3d at 1358; *see also Sierra Equity Grp.*, 650 F. Supp. 2d at 1227 ("Florida has a strong interest in adjudicating a dispute that involves a Florida corporation and a tort directed into Florida."); *eLandia Int'l*, 690 F. Supp.

2d at 1339 ("Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct by nonresidents causing injury in Florida.").  Moreover, Plaintiffs, some of whom are Florida residents who were damaged in Florida, have an undeniable interest in litigating the case in their chosen forum.  (Am. Compl. ¶¶ 9–12, 47, 140–43, 150, 152–54, 161, 163–64, 171, 173–74, 181); *see also Mosseri*, 736 F.3d at 1358. Accordingly, People's Bank is subject to personal jurisdiction in Florida.

## II.    <u>People's Bank Breached the Escrow Agreements by Improper Transfers of Funds</u>

People's Bank argues that it did not breach any provision of the Escrow Agreements, and attaches a representative agreement as Exhibit A to its Motion to Dismiss.  The Escrow Agreements provide in paragraph 4(b) that after the investor deposits into escrow the initial deposit and the balance of the investment and administrative fees, and the Escrow Agent receives a copy of the executed Subscription Documents, then the Escrow Agent "shall immediately release all Escrow Funds received by the Investor **to the Limited Partnership**…."  (Emphasis added.) People's Bank breached this agreement in that it released investor funds "to accounts not controlled by the Limited Partnership for which the funds were placed in escrow." (Am. Compl. ¶ 313.)  For instance:

- On July 1, 2008, $1 million was transferred from the **Phase I** escrow account at People's Bank to the **Q Resorts** account at Raymond James.

- On July 1, 2008, $600,000 was transferred from the **Phase II** escrow account at People's Bank to the **Q Resorts** account at Raymond James.

- On October 3, 2011, $49,000 was transferred from the **Phase III** escrow account at People's Bank to the **Phase I** investor account at People's Bank.

- On February 23, 2012, $62,000 was transferred from the **Phase I** escrow account at People's Bank to the **Phase II** investor account at People's Bank.

(*Id.* ¶ 107, emphasis added.)  Further, People's Bank transferred escrow funds in violation of the Phase I and Phase II offering materials, which provided that the General Partners could only hold investor funds in ***bank accounts***, and required the transferee bank accounts to be "insured by an agency of the federal government."  (*Id.* ¶ 106.)  As a brokerage firm, Raymond James is not an FDIC-insured bank.  (*Id.*)[5]  The transfer of funds to a brokerage firm facilitated the commingling

---

[5] People's Bank's argument on page 9 of its Motion to Dismiss that Raymond James is a bank is inaccurate.  Raymond James Bank is a separate corporation from the Defendant, Raymond James & Associates, Inc., which is a brokerage firm and is not FDIC-insured. http://www.raymondjames.com/capitalmarkets/raymond_james_bank.htm.

of investor funds and the improper margining of investor funds by Quiros.  (*Id.* ¶¶ 53-55.)  People's Bank is liable for its breach of the Escrow Agreements.

People's Bank argues that because Plaintiffs have alleged improper transfers relating only to Phases I through III, the Plaintiffs who invested in Phases IV through VIII lack standing.  However, Plaintiffs allege that Quiros used investor funds from later phases to pay off margin loans that were collateralized by funds from Phases I through III.  For instance, Plaintiffs allege that Quiros used millions of investor funds from Phases I through V to pay down Margin Loan III, which was a consolidation of margin loans collateralized by Phases I and II.  (*Id.* ¶¶ 78-82.)  Thereafter, Quiros took out Margin Loan IV, pledging investor funds from Phases V and VI as collateral for the loans.  Quiros took funds from the Phase VII account at Raymond James and sent them to People's Bank, which transmitted the funds to a Quiros-affiliated account at Raymond James to pay off Margin Loan IV.  The pay-down and pay-off of this margin loan were major contributors to the shortfall in Phase VII.  (*Id.* ¶¶ 85-89.)  Thus, People's Bank's improper transfers of investor funds from earlier phases caused damages to investors in later phases as well.

### III.   Plaintiffs' Claims Are Not Time-Barred

People's Bank's argument that under Vermont law, most of Plaintiffs' claims are time-barred, is also misplaced.  While Plaintiffs' claim for breach of the Escrow Agreement may be governed by Vermont law based on the terms of the agreement, the choice of law analysis for the tort claims would apply Florida's "most significant relationship test." (Motion to Dismiss, at 12 n. 7.)  As courts have noted, it is premature at the motion to dismiss stage to apply such an analysis.  *See Mukamal v. Cosmos, Inc.*, No. 09-36379, 2013 Bankr. LEXIS 5664 (Bankr. S.D. Fla. July 30, 2013) (because Florida's "significant relationship" test is a fact-intensive inquiry, it is generally inappropriate for a court to make a choice of law determination at the motion to dismiss stage); *Court-Appointed Receiver of Lancer Mgmt. Group LLC v. Lauer*, No. 05-60584, 2010 WL 1372442 (S.D. Fla. March 31, 2010) (declining to engage in choice of law analysis at motion to dismiss stage to find plaintiff's claims time-barred by Florida's statute of limitations).

Regardless, a choice of law analysis is unnecessary because Plaintiffs' claims are not time-barred under either Florida or Vermont law.  Thus, no "true conflict" exists because the laws of both states would not produce a different result.  *See Cooper v. Meridian Yachts, Ltd.,* 575 F.3d 1151, 1171 (11th Cir. 2009).

People's Bank asserts that under Vermont law, the claims of investors in Phase II are time-barred because the latest transfer of funds about which Plaintiffs complain occurred on September 2, 2008. (Am. Compl. ¶107.)  This analysis is flawed because in that same paragraph, Plaintiffs allege a wrongful transfer as late as February 2012, from the Phase I escrow account at People's Bank to the Phase II investor account at People's Bank. (*Id.*)  Plaintiffs further allege wrongful transfers by People's Bank relating to the pay-down and pay-off of Margin Loan IV as late as March 5, 2014. (*Id.* ¶89.)  Due to the commingling of funds and use of later phase funds to pay margin loans collateralized by funds of earlier phases, these wrongful transfers harmed all investors. Thus, applying Vermont's six-year statute of limitations, *see* 12 V.S.A. §551, Plaintiffs timely filed their initial Complaint on May 3, 2016.

Moreover, the Vermont Supreme Court has held that the "discovery rule" applies to toll the running of the statute of limitations under cases governed by 12 V.S.A. §511. *See Univ. of Vermont v. W.R. Grace*, 565 A.2d 1354, 1357 (Vt. 1989).  Under the discovery rule, a cause of action accrues for purposes of a §511 claim when the plaintiff "discovers, or, in the exercise of reasonable diligence, should have discovered both the fact of his injury and the cause thereof." *Id.* (Citation omitted). *See also Kaplan v. Morgan Stanley & Co.*, 987 A.2d 258, 262 (Vt. 2009). Plaintiffs allege that they "did not and could not have discovered the facts constituting Defendants' violations until the SEC and Vermont Department of Financial Regulations complaints were made available to the public on April 14, 2016." (Am. Compl. ¶ 224.)  Thus, under Vermont law, Plaintiffs' claims accrued, at the earliest, on April 14, 2016, and are all timely.  To the extent there is a dispute on this issue, the Vermont Supreme Court has "repeatedly and consistently emphasized that the question of when an injury reasonably should have been discovered 'is one of fact to be determined by the jury.'" *Clare v. Abate*, 80 A.3d 578, 581 (Vt. 2013) (citing cases).

Plaintiffs' claims are also timely under Florida's statute of limitations.  Florida recognizes an exception to the statute of limitations defense for continuing torts. *See Seaboard Air Line R.R. v. Holt*, 92 So. 2d 169 (1956).  Whether the continuing tort doctrine applies is a question of fact to be determined by the jury. *See Halkey-Roberts Corp. v. Mackal*, 641 So. 2d 445, 447 (Fla. 2d DCA 1994); *Laney v. Am. Equity Inv. Life Ins. Co.*, 243 F. Supp. 2d 1347, 1357 (M.D. Fla. 2003). Under the continuing tort doctrine, "the limitations period runs to the date the tortious conduct ceases." *Spadaro v. City of Miramar*, 855 F. Supp. 2d 1317, 1330 (S.D. Fla. 2012); *Millender v. State DOT*, 774 So. 2d 767, 769 (Fla. 1st DCA 2000).  Where Plaintiffs allege wrongful transfers

by People's Bank as late as March 5, 2014 (Am. Compl. ¶ 89), Plaintiffs' claims brought on May

3, 2016, are timely, even applying a four-year statute of limitations under Florida law.[6]

## IV.    PLAINTIFFS STATE CLAIMS AGAINST PEOPLE'S UNITED FINANCIAL

Plaintiffs allege in the Amended Complaint that People's United Financial acquired the

Chittenden Corporation, the bank holding company for the Chittenden Trust Company, on January

2, 2008.  At that time, the Chittenden Trust Company acted as escrow agent for the investor funds

for the EB-5 Projects.  Thus, People's United Financial is liable as successor-in-interest for the

actions of the Chittenden Trust Company from the date of the acquisition through the date of the

consolidation of the Chittenden Trust Company into People's United Bank. (Am. Compl.¶ 19.)

People's United Bank is a federally chartered savings bank and a subsidiary of People's

United Financial. Sometime between January 1, 2009 and July 2010, the Chittenden Trust

Company was consolidated into People's United Bank.  After the merger, People's United Bank

acted as escrow agent for the EB-5 Projects.  (*Id.* ¶ 20.)  Although People's Bank attempts to

factually dispute these allegations (Motion to Dismiss, at 14), such a factual dispute may not be

resolved on a motion to dismiss.[7]  *See Rohde v. Bank of Am., N.A.,* 591 F. App'x 932, 933 (11th

Cir. 2015). Further, there is no improper "lumping," where Plaintiffs provide specific dates for

their allegations of improper transfers of escrow funds.

## V.    THE ECONOMIC LOSS RULE DOES NOT BAR PLAINTIFFS' CLAIMS

People's Bank next argues that Vermont's economic loss rule bars Plaintiffs' tort claims.

However, under both Vermont and Florida law, Plaintiffs' claims are not barred by the economic

loss rule because they arise from a duty of care independent of any contractual obligation.

---

[6] Although Vermont has not formally adopted the continuing tort doctrine, the Vermont Supreme Court has acknowledged that a variation of the doctrine may exist for discrimination cases, *see Lee v. Univ. of Vt.*, 800 A.2d 444, 445-46 (Vt. 2002), and has not foreclosed the possibility that it would recognize the doctrine in the appropriate case. *See State v. Atl. Richfield Co.*, No. 2015-201, 2016 WL 3031662, at *6 n.6 (Vt. May 27, 2016) (because the application of the continuing tort doctrine under Vermont law was not subject to the appeal, court leaves the issue "for another day"); *Gettis v. Green Mountain Econ. Dev. Corp.*, 892 A.2d 162, 169 (Vt. 2005) ("We need not determine whether we would adopt the continuing tort doctrine to determine statute-of-limitations accrual outside of discrimination cases because it would not help plaintiffs in this case").

[7] Plaintiffs' allegations regarding the relationship of these entities are based on publicly-available information obtained from excerpts of People's United Financial's 10-Q filed May 11, 2009, found at: www.wikinvest.com.stock/People's_United_Financial_(PBCT)/Acquisition.

Vermont law recognizes an exception to the economic loss rule that purely economic losses may be recoverable where the parties have a special relationship that creates a duty of care independent of the parties' contract obligations.  *See Walsh v. Cluba*, 117 A.3d 798, 809 (Vt. 2015) (special relationship, most often a professional relationship such as doctor-patient or attorney-client, is such that it "automatically trigger[s] an independent duty of care that supports a tort action even when the parties have entered into a contractual relationship"); *Long Trail House Condo. Ass'n v. Engelberth Const,, Inc.*, 59 A.3d 752, 756-57 (Vt. 2012) (exception to economic loss rule where parties have "a special relationship, which creates a duty of care independent of contract obligations").  As an escrow agent, People's Bank owed Plaintiffs a fiduciary duty, which includes a duty to disclose known fraud. *See Powell v. H.F.F. P'ship*, 793 F. Supp. 91, 93 (D. Vt. 1992) (rejecting bank's argument that its duties as escrow agent are limited by express terms of the escrow agreement; regardless of express terms of agreement, escrow agent's duty to its principal includes the obligation to disclose information about a known fraud being committed on the principal).   The cases cited by People's Bank are inapposite, as they do not involve a special relationship that imposes an independent duty on the defendant.  *See, e.g., Long Trail House*, 59 A.3d at 758 (no special relationship between condominium association and general contractor); *Hamill v. Pawtucket Mut. Ins. Co.*, 892 A.2d 226, 231 (Vt. 2005) (no special relationship between independent adjuster and homeowner).

The economic loss rule similarly does not bar Plaintiffs' claims under Florida law.  In *Tiara Condo. Ass'n v. Marsh & McLennan Cos.*, 110 So. 3d 399, 400 (Fla. 2013), the Florida Supreme Court unequivocally held that the economic loss rule is limited to products liability cases.   Thus, the economic loss rule has no application to this case under Florida law.   Further, the tort claims against People's Bank arise from duties arising outside the Escrow Agreement, in that like Vermont, Florida courts recognize that an escrow agent owes an independent, fiduciary duty as a matter of law.  *See Oginsky,* 784 F. Supp. 2d at 1375-76 (escrow agents have a duty to exercise reasonable skill and ordinary diligence, and a duty to disclose all material facts); *Mahdevieh v. Suntrust Mortgage, Inc.*, No. 13-62801, 2014 WL 1365425 (S.D. Fla. April 7, 2014) (escrow holder owes fiduciary duty to the parties to the escrow transaction).   As Plaintiff's tort claims against People's Bank are based on this independent duty, which exists outside the terms of the Escrow Agreements, the claims are not barred by the economic loss rule.  *See Tiara Condo. Ass'n, Inc. v. Marsh, USA, Inc.*, 991 F. Supp. 2d 1271, 1279 (S.D. Fla. 2014) (on remand after certified

question answered by Florida Supreme Court, district court found negligence and breach of fiduciary duty claims are not contractually grounded "and therefore fall outside the reach of the 'independent tort rule'").

## VI.   PLAINTIFFS ADEQUATELY ALLEGE AIDING AND ABETTING CLAIMS

Plaintiffs have alleged claims against People's Bank for aiding and abetting fraud and aiding and abetting breach of fiduciary duty under both Vermont and Florida law, which are substantially similar.  Under the laws of both states, a claim for aiding and abetting requires proof of  (1) the existence of a primary violation; (2) knowledge of this violation on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in the achievement of the primary violation.  *See Montgomery v. Devoid*, 915 A.2d 270, 278 (Vt. 2006); *ZP No. 54 Ltd. P'ship v. Fidelity and Deposit Co. of Maryland*, 917 So. 2d 368, 372 (Fla. 5th DCA 2005).

People's Bank argues that Plaintiffs do not allege the elements of actual knowledge or substantial assistance.  However, "the Eleventh Circuit has determined that 'a person may be held as an aider and abettor … if the accused party has a general awareness that his role was part of an overall activity that is improper, and if the accused aider-abettor knowingly and substantially assisted the violation.'" *Smith v. First Union Nat'l Bank*, No. 00-cv-4485, 2002 WL 31056104, at *2 (S.D. Fla. Aug. 23, 2002) (quoting *Woods v. Barnett Bank of Ft. Lauderdale*, 765 F.2d 1004, 1009 (11th Cir. 1985)).  Here, both elements are adequately pled.

First, Plaintiffs have pled that People's Bank had actual knowledge of the fraud by Quiros and the breaches of fiduciary duty by the General Partner of the Limited Partnerships. When analyzing the "general awareness" requirement, courts have "noted that the surrounding circumstances and expectations of the parties [a]re critical, because knowledge of the existence of a violation must usually be inferred." *Id.*  Circumstantial evidence supporting general awareness of fraud may include facts available to a financial institution's employees. *Id.* at *4.

Plaintiffs allege that People's Bank improperly transferred funds from accounts in the name of a specific phase of the EB-5 Projects, to accounts at Raymond James belonging to another phase, as well as accounts in the name of Q Burke. (Am. Compl. ¶ 107.)  They further allege that People's Bank **knew** that these transfers were improper because the Limited Partnership Agreements for each phase required that once the requirements were met for release of the escrowed investor funds, those funds were to be "immediately and irrevocably" committed to that specific phase of the EB-5 Project. (*Id.* ¶ 108.)  The significant number of transfers in and out of the People's Bank escrow

accounts to effect commingling of partnership funds, and transfers of funds to a non-bank, alerted People's Bank to illegal conduct in the administration and use of investor funds.  (*Id.*)[8]

Because People's Bank, as escrow agent, had a fiduciary obligation and thus a duty to disclose known facts to the parties to the escrow transaction, liability may attach without a "conscious intent" to aid the primary wrongdoer.  *Smith*, 2002 WL 3105614, at *3.  In *Smith*, the defendant bank had no fiduciary duty to the plaintiffs, and thus no duty to disclose.  However, even under those circumstances, the court found that "atypical" banking activity which would have been known to a bank employee was sufficient to create a disputed fact on the issue of the bank's knowledge, using the higher standard of "conscious intent."  *Id.  See also Chaney v. Dreyfus Service Corp.*, 595 F.3d 219, 236 (5th Cir. 2010) (jury could conclude that broker-dealer's fiduciary duty to its customer required more than turning a blind eye to extraordinary financial transactions); *Neilson v. Union Bank of Cal.*, 290 F. Supp. 2d 1101 (C.D. Cal. 2003) (allegations of bank's use of atypical banking procedures raised inference that they knew of the Ponzi scheme and supported general allegations of knowledge for aiding and abetting).

Further, Plaintiffs allege that People's Bank substantially assisted in the fraud and breaches of fiduciary duty.  "Substantial assistance occurs when a defendant affirmatively assists, helps conceal, or fails to act when required to do so, thereby enabling the [underlying tort] to occur." *Gevaerts v. TD Bank, N.A.,* 56 F. Supp. 3d 1335, 1342 (S.D. Fla. 2014).  People's Bank's arguments that Plaintiffs allege only that it "lent an air of legitimacy to the fraud" or that there is no "causal link" between its conduct and Plaintiffs' losses (Motion to Dismiss, at 17-18) ignores that the Amended Complaint is replete with allegations of specific wrongful transfers by People's Bank of investor funds, including transfers from escrow accounts at People's Bank to accounts at Raymond James belonging to another phase, transfers to accounts of Quiros-controlled entities including Q Burke and Jay Construction Management, Inc., and transfers to a non-bank in violation of the Limited Partnership Agreements, all of which substantially assisted the fraud and breaches

---

[8] The cases cited by People's Bank on pages 16-17 of  their Motion to Dismiss all involved mere allegations that the defendant bank ***should have known*** of the underlying fraud or fiduciary breach based ***solely*** on atypical banking transactions and other "red flags" of fraud.  *See, e.g., Lamm v. State Street Bank & Trust*, 749 F.3d 938 (11th Cir. 2014); *Perlman v. Wells Fargo Bank, N.A.*, 559 F. App'x 988 (11th Cir. 2014).  Here, Plaintiffs allege facts supporting that People's Bank actually knew that investor funds were being improperly commingled and misused.

of fiduciary duty.  (Am. Compl. ¶¶57, 67, 89, 106-108.)[9]   Plaintiffs state a claim against People's Bank for aiding and abetting fraud and breach of fiduciary duty.

## VII.   PLAINTIFFS ADEQUATELY ALLEGE A CIVIL CONSPIRACY CLAIM

Finally, Plaintiffs allege a claim for civil conspiracy against People's Bank.  Plaintiffs allege an agreement made in the first half of 2008 by Quiros and each of Raymond James, Burstein, and People's Bank to induce Plaintiffs and the Class to invest millions of dollars into the Limited Partnerships and to commit the fraud and breach of fiduciary duties described in the Amended Complaint and enumerated above.  (*Id.* ¶ 284.)   Plaintiffs further allege substantial overt acts in furtherance of the conspiracy, and specifically allege the acts of People's Bank in releasing investors' funds to Raymond James despite knowing that the transfers violated the subscription documents and escrow obligations owed by People's Bank to the investors.  (*Id.* ¶ 285.)

As courts have noted, the very nature of a conspiracy permits such a claim to be pleaded and proven by circumstantial evidence.  *See United States v. Arias-Izquierdo*, 449 F.3d 1168, 1182 (11th Cir. 2006).  For this reason, courts have denied motions to dismiss conspiracy claims even where the complaint only circumstantially shows an agreement.  *See Koch v. Royal Wine Merchants, Ltd.,* 907 F. Supp. 2d 1332, 1346-47 (S.D. Fla. 2012) ("In the instant case, Plaintiff has alleged a number of facts that circumstantially indicate an agreement between Royal and Rodenstock.").  The allegations of conspiracy against People's Bank are more than circumstantial.

## CONCLUSION

People's Bank was a substantial and active participant in a massive fraud that caused millions of dollars in damages to Plaintiffs and the Class.  The Motion to Dismiss should be denied.

---

[9] People's Bank relies on *Montgomery* in attempting to engraft onto a claim of aiding and abetting under Vermont law, the requirement that Plaintiffs allege that the aider and abettor received a "personal benefit" from the commission of the underlying tort.  (Motion to Dismiss, at 15, 19.) However, the court in *Montgomery* explicitly set forth the three elements of an aiding and abetting claim, and did ***not*** include the requirement of a "personal benefit" as an additional element of the claim. 915 A.2d at 278.  Clearly, in *Montgomery*, a case involving a claim for conversion, the plaintiff's inability to demonstrate that defendant received a personal benefit is mentioned because courts have found that liability for assisting in a conversion is "especially applicable where the defendant received a benefit from the conversion."  *Id.*  (Citation omitted).

Respectfully submitted,

Paul Aiello, Esq.
Florida Bar No. 0909033
paiello@bennettaiello.com
Michael P. Bennett, Esq.
Florida Bar No. 0775304
mbennett@bennettaiello.com
Jeremy R. Kreines, Esq.
Florida Bar No. 101119
jkreines@bennettaiello.com
**BENNETT AIELLO**
The Ingraham Building, Eighth Floor
25 Southeast Second Avenue
Miami, Florida 33131
Telephone:     (305) 358-9011
Facsimile:      (305) 358-9012

*Counsel for Plaintiffs*

/s/Thomas A. Tucker Ronzetti
Thomas A. Tucker Ronzetti, Esq.
Florida Bar No. 965723
tr@kttlaw.com
Harley S. Tropin, Esq.
Florida Bar No. 241253
hst@kttlaw.com
Dyanne E. Feinberg
Florida Bar No. 371548
def@kttlaw.com
Rachel Sullivan, Esq.
Florida Bar No. 815640
rs@kttlaw.com
Maia Aron, Esq.
Florida Bar No. 17188
ma@kttlaw.com
Tal J. Lifshitz, Esq.
Florida Bar No. 99519
tjl@kttlaw.com
**KOZYAK TROPIN &
THROCKMORTON LLP**
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, FL 33134
Telephone:  (305) 372-1800
Facsimile:   (305) 372-3508

*Counsel for Plaintiffs*

Daniel C. Girard, Esq.
dcg@girardgibbs.com
Adam E. Polk, Esq.
aep@girardgibbs.com
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, California 94108
Telephone: 415.981.4800

*Counsel for Plaintiffs*

Kathleen M. Donovan-Maher, Esq.
kdonovanmaher@bermandevalerio.com
Steven Buttacavoli, Esq.
sbuttacavoli@bermandevalerio.com
Mark A. Delaney, Esq.
mdelaney@bermandevalerio.com
Nathaniel L. Orenstein, Esq.
norenstein@bermandevalerio.com
**BERMAN DEVALERIO**
One Liberty Square
Boston, Massachusetts 02109
Telephone:  (617) 542-8300
Facsimile:  (617) 542-1194

*Counsel for Plaintiffs*

21

### <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on

October 25, 2016, on all counsel of record via the manner stated in the service list below.

By: <u>/s/<i>Thomas A. Tucker Ronzetti</i></u>

**SERVICE LIST**

| Via CM/ECF | Via CM/ECF |
|---|---|
| **Counsel for Raymond James & Associates, Inc.**<br>Stanley H. Wakshlag, Esq.<br>Swakshlag@knpa.com<br>Deborah Sampieri Corbishley, Esq.<br>Dcorbishley@kennynachwalter.com<br>Janelle M. Ans, Esq.<br>Jherrera@knpa.com<br>Ryan C. Zagare, Esq.<br>Rzagare@knpa.com<br>Kenny Nachwalter, P.A.<br>Four Seasons Tower, Suite 1100<br>1441 Brickell Avenue<br>Miami, FL 33131 | **Counsel for Joel Burstein**<br>James D. Sallah, Esq.<br>jds@sallahlaw.com<br>Jeffrey L. Cox, Esq.<br>jlc@sallahlaw.com<br>Joshua A. Katz, Esq.<br>Jak@sallahlaw.com<br>Sallah Astarita & Cox, LLC<br>One Boca Place<br>2255 Glades Road<br>Suite 300 E<br>Boca Raton, FL 33431 |
| **Via CM/ECF**<br><br>**Counsel for Ariel Quiros**<br>David B. Gordon, Esq.<br>dbg@msk.com<br>Travis Meserve, Esq.<br>txm@msk.com<br>12 East 49th Street, 30th Floor<br>New York, NY 10017<br>Mitchell Silberberg & Knupp LLP<br><br>John S. Durrant, Esq.<br>jsd@msk.com<br>11377 West Olympic Boulevard<br>Los Angeles, CA 90064-1683<br>Mitchell Silberberg & Knupp LLP<br><br>Scott B. Cosgrove<br>scosgrove@leoncosgrove.com<br>James R. Bryan<br>jbryan@leoncosgrove.com<br>León Cosgrove, LLC<br>255 Alhambra Circle, Suite 800<br>Coral Gables, Florida 33133 | **Via U.S. Mail**<br><br>**William Stenger,** *pro se*<br>William Stenger<br>1276 Bluff Road<br>Newport, Vermont 05855-9544<br><br>**Via CM/ECF**<br><br>**Counsel for People's United Financial, Inc. and People's United Bank, N.A**<br><br>Jonathan E. Minsker, Esq.<br>jminsker@kasowitz.com<br>Maria H. Ruiz, Esq.<br>MRuiz@kasowitz.com<br>James J. Stricker, Esq.<br>Jstricker@kasowitz.com<br>Kasowitz, Benson, Torres & Friedman LLP<br>Four Seasons Tower<br>1441 Brickell Avenue, Suite 1420<br>Miami, Florida 33131 |

| | |
|---|---|
| **Via CM/ECF**<br><br>Jeffrey C. Schneider, Esq.<br>jcs@lklsg.com<br>**Levine Kellogg Lehman Schneider + Grossman LLP**<br>201 South Biscayne Boulevard<br>22nd Floor, Miami Center<br>Miami, Florida  33131<br><br>*Attorney for the Receiver, Michael Goldberg* | |