UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-cv-21575-FAM

| | |
|---|---|
| ALEXANDRE DACCACHE, CARLOS ENRIQUE HILLER SANCHEZ, PHILIP CALDERWOOD, JOSE ANTONIO PIETRI, JOSE R. CASSERES-PINTO, TONGYI WANG and LORNE MORRIS, on behalf of himself and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> RAYMOND JAMES & ASSOCIATES, INC., PEOPLE'S UNITED FINANCIAL, INC., as successor-in-interest to Chittenden Trust Company, PEOPLE'S UNITED BANK, ARIEL QUIROS, WILLIAM STENGER, and JOEL BURSTEIN, <br><br> Defendants. | |

**ARIEL QUIROS'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS**

Defendant Ariel Quiros ("Mr. Quiros"), by and through his undersigned attorneys, hereby submits his Reply in Support of his Motion to Dismiss (Dkt. 114) the purported Amended Class Action Complaint ("FAC") of Plaintiffs Alexandre Daccache, Carlos Enrique Hiller Sanchez, Philip Calderwood, Jose Antonio Pietri, Jose R. Caseres-Pinto, Tongyi Wang, and Lorne Morris, (collectively, "Plaintiffs") (Dkt. 55).

## **TABLE OF CONTENTS**

**Page**

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | PLAINTIFFS' FACTUAL ALLEGATIONS NEGLECT THE LANGUAGE OF THE OFFERING DOCUMENTS | 1 |
| III. | PLAINTIFFS' CLAIM OF A PONZI SCHEME IS UNSUPPORTED | 2 |
| IV. | PLAINTIFFS' CLAIMS ARE TEXTBOOK DERIVATIVE CLAIMS | 2 |
| V. | PLAINTIFFS CANNOT CIRCUMVENT THE NEED TO ALLEGE LOSS FOR EACH PARTNERSHIP IN WHICH PLAINTIFFS INVESTED | 4 |
| VI. | PLAINTIFFS CANNOT BRING CLAIMS ON BEHALF OF LIMITED PARTNERSHIPS IN WHICH THEY DID NOT INVEST | 5 |
| VII. | PLAINTIFFS' CLAIMS IMPROPERLY ARISE FROM CONTRACT | 5 |
| VIII. | PLAINTIFFS' FRAUD CLAIMS ARE VAGUE AS TO MR. QUIROS | 6 |
| IX. | AIDING AND ABETTING BREACH OF FIDUCIARY DUTY CLAIM FAILS | 8 |
| X. | PLAINTIFFS' CONSPIRACY CLAIMS ARE HOPELESSLY VAGUE | 8 |
| XI. | PLAINTIFFS' DISCUSSION OF RICO FUNDAMENTALLY MISSTATES THE LAW | 8 |
| XII. | THE CONTINUING TORT DOCTRINE DOES NOT APPLY | 10 |
| | CERTIFICATE OF SERVICE | 12 |

## **TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Arnold v. McFall*,
  839 F. Supp. 2d 1281 (S.D. Fla. 2011) ............................................................................. 6, 7

*Bridge v. Phoenix Bond & Indemn. Co.*,
  553 U.S. 639 (2008) ............................................................................................................ 9, 10

*Cableview Comms. Jacksonville, Inc. v. Time Warner Cable*,
  2016 U.S. Dist. LEXIS 3551 (M.D. Fla. Jan. 11, 2016) ...................................................... 6

*Continent Aircraft Trust v. Diamond Aircraft Industries*,
  2013 U.S. Dist. LEXIS 73154 (S.D. Fla. May 23, 2013) ..................................................... 7

*Corcel Corp. v. Ferguson Enters., Inc.*,
  551 F. App'x 571 (11th Cir. 2014) ....................................................................................... 10

*Cowin v. Bresler*,
  741 F.2d 410 (D.C. Cir. 1984) .............................................................................................. 3

*Daedalus Capital LLC v. Vinecombe*,
  2014 U.S. Dist. LEXIS 127993 (M.D. Fla. Aug. 22, 2014) ................................................. 6

*Dapeer v. Neutrogena Corp.*,
  95 F. Supp. 3d 1366 (S.D. Fla. 2015) .................................................................................. 5

*Garcia v. Clarins USA, Inc.*,
  2014 U.S. Dist. LEXIS 182426 (S.D. Fla. Sept. 4, 2014) .................................................... 5

*Garcia v. Kashi Co.*,
  43 F. Supp. 3d 1359 (S.D. Fla. 2014) .................................................................................. 5

*Gen. Tel. Co. of the Southwest v. Falcon*,
  457 U.S. 147 (1982) ............................................................................................................. 5

*Green Leaf Nursery v. E.I. DuPont de Nemours & Co.*,
  341 F.3d 1292 (11th Cir. 2003) ............................................................................................ 9

*Klay v. Humana, Inc.*,
  382 F.3d 1241 (11th Cir. 2004) ............................................................................................ 10

*Lamm v. State Street Bank & Trust*,
  749 F.3d 938 (11th Cir. 2014) .............................................................................................. 6

## TABLE OF AUTHORITIES
*(Continued)*

**Page(s)**

*Lewis v. Seneff*,
   654 F. Supp. 2d 1349 (M.D. Fla. 2009)................................................................................3

*Maiz v. Virani*,
   253 F.3d 641 (11th Cir. 2001) ............................................................................................10

*Medkser v. Feingold*,
   307 F. App'x 262 (11th Cir. 2008) ......................................................................................3

*Randolph v. Smucker Co.*,
   2014 U.S. Dist. LEXIS 33396 (S.D. Fla. Mar. 14, 2014).....................................................5

*Ray v. Spirit Airlines, Inc.*,
   2016 U.S. App. LEXIS 16269 (11th Cir. Sept. 2, 2016) .....................................................9

*Rogers v. Cisco Sys.*,
   268 F. Supp. 2d 1305 (N.D. Fla. 2003) ...............................................................................8

*Samana v. Lucena*,
   156 F.Supp.3d 1373, 1373-74 (S.D. Fla. 2016)...................................................................6

*SEC v. Byers*,
   637 F. Supp. 2d 166 (S.D.N.Y. 2009) .................................................................................5

*SEC v. St. Anselm Expl. Co.*,
   936 F. Supp. 2d 1281 (D. Colo. 2013).................................................................................2

*Serefex Corp. v. Hickman Holdings*,
   695 F. Supp. 2d 1331 (M.D. Fla. 2010)...............................................................................7

*Sierra Equity Grp. v. White Oak Equity Partners*,
   650 F.Supp.2d 1213 (S.D. Fla. 2009) ................................................................................10

*Smith v. First Union Nat'l Bank*,
   2002 U.S. Dist. LEXIS 17759 (S.D. Fla. Aug. 23, 2002) ...................................................8

*Toback v. GNC Holdings, Inc.*,
   2013 U.S. Dist. LEXIS 131135 (S.D. Fla. Sept. 13, 2013) .................................................5

*Tulepan v. Roberts*,
   2015 U.S. Dist. LEXIS 5488 (S.D. Fla. Jan. 16, 2015) .......................................................6

# TABLE OF AUTHORITIES
### *(Continued)*

**Page(s)**

*United States v. Beckman*,
 787 F. 3d 466 (8th Cir. 2015) ................................................................................................ 2

*United States v. Kimmel*,
 644 F. App'x 231 (4th Cir. 2016) .......................................................................................... 2

*United States v. Morawski*,
 754 F. 3d 440 (7th Cir. 2016) ................................................................................................ 2

*United States v. Silvestri*,
 409 F.3d 1311 (11th Cir. 2005) ............................................................................................. 2

*W. 79th St. Corp. v. Congregation Kahl Minchas Chinuch*,
 2004 U.S. Dist. LEXIS 19501 (S.D.N.Y. Sept. 29, 2004) .................................................... 9

*XP Global, Inc. v. AVM, L.P.*,
 2016 U.S. Dist. LEXIS 127266 (S.D. Fla. Sept. 19, 2016.) ............................................ 6, 8

*Ziemba v. Cascase Int'l, Inc.*,
 256 F.3d 1194 (11th Cir. 2001) ............................................................................................. 7

### STATE CASES

*Ashkenazy v. KPMG LLP*,
 83 Mass. App. Ct. 649 (Mass App. Ct. 2013) ...................................................................... 4

*Bovee v. Lyndonville Sav. Bank & Trust Co.*,
 174 Vt. 507 (Vt. 2002) .......................................................................................................... 3

*Harrington v. Batchelor*,
 781 So. 2d 1133 (Fla. Dist. Ct. App. 2001) .......................................................................... 4

*Palmas Y Bambu, S.A. v. E.I. Dupont Nemours & Co.*,
 881 So. 2d 565 (Fla. Dist. Ct. App. 2004) ............................................................................ 9

*Strazzulla v. Riverside Banking Co.*,
 175 So. 3d 879 (Fla. Dist. Ct. App. 2015) ............................................................................ 4

*Suntrust Bank v. Chaine Du Lac Ass'n*,
 2013 Fla. Cir. LEXIS 4262 ................................................................................................. 11

*Tiara Condo. Ass'n v. Marsh & McLennan Cos.*,
 110 So. 3d 399 (Fla. 2013) .................................................................................................... 6

# TABLE OF AUTHORITIES
### *(Continued)*

**Page(s)**

*U.S. Fire Ins. Co. v. ADT Sec. Servs., Inc.*,
  134 So. 3d 477 (Fla. Dist. Ct. App. 2013) .................................................................................6

*Walsh v. Cluba*,
  2015 VT 2 (Vt. 2015) .................................................................................................................6

**FEDERAL STATUTES**

18 U.S.C.
  § 1956(c)(7)(A) .........................................................................................................................9
  § 1961(1) ...................................................................................................................................9

**RULES**

Federal Rules of Civil Procedure,
  Rule 9 .....................................................................................................................................7, 9

**OTHER AUTHORITIES**

U.S. Constitution, Article III ...........................................................................................................5

I.     INTRODUCTION

Contrary to their own allegations, Plaintiffs' Response ("Opposition" or "Opp.") argues that their claims do not arise from misappropriation and commingling from eight limited partnerships (which would make them inarguably derivative), but from the "fraudulent omissions" in offering documents that investor money would be *misappropriated and commingled*. This argument is not only circular and contrary to the law, but it is also inconsistent with Plaintiffs' own description of their case in making other arguments: "the central allegations are the funds of the investors in all phases were commingled." (Opp. 11.) Plaintiffs' inability to allege direct claims is fatal to the FAC and requires its dismissal. As set forth below, there are numerous other defects in the FAC that would also require its dismissal.[1]

II.    **PLAINTIFFS' FACTUAL ALLEGATIONS NEGLECT THE LANGUAGE OF THE OFFERING DOCUMENTS**

In footnote 4 of the "Factual Background," Plaintiffs try to address their conspicuous failure to cite to the offering documents for the transactions at issue and their conclusory and unsupported assertion that the offering documents are "uniformly fraudulent." (Opp. 3.) The explanation is more "pivot" than actual explanation. Plaintiffs do not dispute that they have not cited to the offering documents or the particular terms that govern the deals in question. (*Id.*) Rather, they say that Mr. Quiros "fails to point out a single material difference in the offering documents." (*Id.*) This gets things backward, of course, because it is Plaintiffs who have failed to include the most basic allegations made in any securities fraud complaint: *i.e.*, (1) a list of the alleged false statements in the offering documents, and (2) an explanation of their falsity.

Moreover, Plaintiffs remarkably claim that differences in the purposes of the various projects cited in the moving papers are not "material differences." Of course, they are just that. In fact, in broad terms, the key aspects of Plaintiffs' claims should be: (1) how the offering documents allowed Limited Partnership funds to be spent for each offering; and (2) how each Limited Partnership actually spent money. So, the material differences among the eight offerings in fact concern what each partnership was to build and the different amounts that affiliate companies could receive, including companies controlled by Mr. Quiros. The documents are not uniform or "uniformly fraudulent."

---

[1] In their Introduction, Plaintiffs suggest that because the SEC has sought and received a restraining order against Mr. Quiros, this Court should disregard the profound defects in the FAC. In fact, the pending actions by the SEC, Vermont Attorney General, and Receiver raise a different issue. Those lawsuits concern the exact same factual allegations as this lawsuit. Indeed, large parts of these various complaints appear to have been copied from one another. This uncanny symmetry actually underscores that this is a superfluous attorney-driven action that is actually inimical to investor interests. The other actions can achieve the same goals at lower cost to investors. Moreover, this lawsuit has infirmities and procedural requirements that the other matters do not. The FAC should be dismissed; it is not only the correct legal decision, it is the right thing to do for investors.

1

### III. PLAINTIFFS' CLAIM OF A PONZI SCHEME IS UNSUPPORTED

The FAC relies on labels rather than facts. For instance, Plaintiffs have failed to allege the basic elements of a "Ponzi scheme," despite making that label a central element of their claims. Plaintiffs ignore the on-point authority in the moving papers setting forth the correct standard for a Ponzi scheme. *United States v. Silvestri,* 409 F.3d 1311, 1317 n. 6 (11th Cir. 2005) (a "phony investment plan in which monies paid by later investors are used to pay artificially high returns to the initial investors, with the goal of attracting more investors."); *SEC v. St. Anselm Expl. Co.*, 936 F. Supp. 2d 1281, 1294 (D. Colo. 2013) (setting forth elements of Ponzi scheme). Plaintiffs do not point to any allegations that the Limited Partnerships at issue conducted "little or no legitimate business" as required by the case law. *Compare* Opp. at 7 with *St. Anselm Expl. Co.*, 936 F. Supp. 2d at 1294. Plaintiffs' claim of a "Ponzi scheme" in this case is reckless and overreaching. Such unfounded accusations are emblematic of Plaintiffs' hope that rhetoric can substitute for the pleading of facts.[2]

### IV. PLAINTIFFS' CLAIMS ARE TEXTBOOK DERIVATIVE CLAIMS

The FAC consists wholly of improper derivative claims that should be dismissed in their entirety. The only alleged injury is the injury to the Limited Partnerships; there is no separate and distinct injury to shareholders. As set forth in the moving papers, any investor claim of mismanagement, self-dealing, or theft of company assets would be the same claim and seek the same relief as that of other investors in the Limited Partnership, and therefore could only be brought derivatively. *Medkser v. Feingold*, 307 F. App'x 262, 265 (11th Cir. 2008) ("Claims of self-dealing and mismanagement . . . may only be brought as derivative claims. . . . The loss of value to these Plaintiffs' investments . . . is indistinguishable from the loss to all other investors who were similarly harmed when funds were transferred from the corporate account to personal accounts of the defendants."); *see also Lewis v. Seneff*, 654 F. Supp. 2d 1349, 1363-64 (M.D. Fla. 2009) (requiring a derivative action when "[t]he alleged harm asserted by the limited partners was suffered by all the . . . partners. Again, under

---

[2] None of the authority presented by Plaintiffs remotely rehabilitates their false claims of a Ponzi scheme. *United States v. Kimmel*, 644 F. App'x 231, 232 (4th Cir. 2016) and *United States v. Morawski*, 754 F. 3d 440, 441-42 (7th Cir. 2016) both involve appeals from criminal sentencing decisions. Neither case discussed the elements of a Ponzi scheme or held that legitimate businesses can *become* Ponzi schemes. Even if that were the law, Plaintiffs have not alleged such a transformation. Rather, they have alleged all Phases were part of a Ponzi scheme. This claim is wrong, because all Phases inarguably had "legitimate business operations." *See St. Anselm Expl. Co.*, *supra*. Similarly, Plaintiffs have not alleged a "partial" Ponzi scheme, but even if they had, the case law does not support a "partial" Ponzi scheme as an actionable legal concept. *See e.g.*, *United States v. Beckman*, 787 F. 3d 466, 502 n. 3 (8th Cir. 2015) (the phrase "partial Ponzi scheme" mentioned in a statement of facts with a footnote to an SEC accountant's definition). We have been unable to find any case within or outside the 11th Circuit, accepting the concept of a partial Ponzi scheme.

2

the separate and distinct injury test, the shareholder must suffer an injury that is separate and distinct from the other shareholders."); *Bovee v. Lyndonville Sav. Bank & Trust Co.*, 174 Vt. 507, 509 (Vt. 2002) (same, under Vermont law, noting that "[a]ctions charging 'mismanagement which depress[es] the value of stock allege a wrong to the corporation; *i.e.*, the stockholders collectively, to be enforced by a derivative action."); *Cowin v. Bresler*, 741 F.2d 410, 416 (D.C. Cir. 1984).

Pages 2-5 of RJ's Reply provides an able discussion of the *Medkser* decision, which is incorporated herein by reference. As RJ points out, *Medkser* held that claims of mismanagement, self-dealing, diversion of assets, and commingling can only be brought derivatively. *Medkser*, 307 F. App'x at 265. The harm is to the partnership entities rather than directly to the individual investors.

Plaintiffs respond to *Medkser* in three ways. (Opp. 8-10.) First, while appearing to concede that they lack standing to bring claims for such mismanagement, commingling, etc. (thus indisputably barring most of the claims made in the FAC), Plaintiffs argue that they can nonetheless bring claims for "fraudulent inducement" directly. (Opp. 8.) Plaintiffs say that their fraudulent inducement "claims rest on allegations that the General Partners commingled and misused Plaintiffs' funds, activities that were not disclosed in the offering materials." (Opp. 9.) The argument is circular. If failing to disclose a plan to misappropriate money in offering documents or disclosures could transform a misappropriation claim into a fraudulent inducement claim, that would render the prohibition in *Medkser* of direct actions for misappropriation a nullity. After all, no offering document would ever disclose a plan to misappropriate money. So, according to Plaintiffs, any claim for misappropriation would also be a claim for fraudulent inducement by omission. There is no authority for this attempt to end-run *Medkser*. Plaintiffs ignore a repeated argument in the Motion to Dismiss that Plaintiffs' claims center on contractually barred movements of money *after* offerings, not fraud *before* the offerings.[3] The factual allegations in the FAC all concern misappropriation, not misrepresentations or omissions. (FAC ¶ 1 ("commingling" and "misappropriation" of partnership assets); ¶ 2 (commingling and diversion of partnership assets); ¶ 3 (misappropriation of assets); ¶ 4 (misuse of assets); ¶ 5 (improper "transfers" of assets); ¶ 53 ("misuse" of partnership assets); ¶¶ 64-66 (improper transfers of assets among partnerships); ¶¶ 72-90 (improper use of margin loans against partnership assets); ¶¶ 109-113 (commingling of assets regarding Q Burke); ¶¶ 150, 161, 171, 181, 188, 197, 205, 213, 222 (partnership funds misused and commingled.

Moreover, Plaintiffs have not shown that there is a "separate and distinct harm" flowing from their direct claims that differs from the claims brought by, say, the Receiver. *Strazzulla v. Riverside*

---

[3] In addition, as set forth below, Plaintiffs have not alleged fraud with particularity. Mr. Quiros had no involvement in the creation of any offering document (the SEC has made no such factual allegation), and therefore Mr. Quiros had no duty to speak and cannot be held liable for failing to speak.

3

*Banking Co.*, 175 So. 3d 879, 884-85 (Fla. Dist. Ct. App. 2015) (allowing direct claims by certain shareholders when those shareholders (and not other shareholders) were defrauded and suffered separate and distinct harm – *i.e.*, a special injury – and other shareholders did not); *cf. Ashkenazy v. KPMG LLP*, 83 Mass. App. Ct. 649, 654 (Mass App. Ct. 2013) (allowing an inducement claim when there was "some injury [that] involved a particular subset of the limited partners, *i.e.*, only those limited partners that were so induced, and did not involve a harm to the partnership that would affect all of its limited partners in proportion to each one's ownership interest").

Second, Plaintiffs claim that their "aiding and abetting breach of fiduciary duty claim rests on duties owed directly to the Plaintiffs pursuant to the Limited Partnership Agreements." (Opp. 9.) This argument merely confirms that direct claims cannot be brought against Mr. Quiros. The investors are limited partner investors, who each had a contractual relationship with the Limited Partnership in which they invested. Plaintiffs have not and cannot allege that Mr. Quiros is a party to any Limited Partnership Agreement. *Cf. Harrington v. Batchelor*, 781 So. 2d 1133, 1135 (Fla. Dist. Ct. App. 2001) (allowing derivative claims directly between a shareholder and a contractual counterparty *and* where a shareholder suffers a separate and distinct harm not shared with other shareholders). There is no claim of breach of contract against Mr. Quiros – something that Plaintiffs themselves helpfully concede just two pages later in their Opposition: "Quiros is not a party to any contract with any plaintiff." (Opp. 12.)

Third, Plaintiffs argue that there is a "Ponzi scheme" exception to rules governing derivative cases. RJ responds to this argument at pages 7-8 of its Reply, which Mr. Quiros incorporates herein by reference. In addition, Plaintiffs have not alleged a Ponzi scheme for the reasons set forth above.

Under either Vermont or Florida law, the result is the same: any breach of duty would be to the Limited Partnership itself, not the individual limited partners. All of Plaintiffs' claims fail because they are derivative claims; the Receiver can pursue these claims to the extent he is able to do so.

## V. PLAINTIFFS CANNOT CIRCUMVENT THE NEED TO ALLEGE LOSS FOR EACH PARTNERSHIP IN WHICH PLAINTIFFS INVESTED

Plaintiffs admit that the Phase I-V investments are completed and operating. (Opp. 10.) This admission supports an inference that there is no injury to investors in those Phases because Plaintiffs have not included any contrary factual allegations supporting a plausible inference of injury. Instead, Plaintiffs claim that the Phases have "no net value." (*Id*.) This claim makes no sense; each of the Phase I-V investment partnerships has assets (*i.e.*, the exact assets promised in the offering documents, as confirmed in the initial complaint in this case). The claim that Phases I-V have no net value is inconsistent with Plaintiffs' own allegations. Plaintiffs then point to financial information concerning the Jay Peak partnerships as a whole. (*Id*.) That, of course, is entirely beside the point; the only alleged

shortfalls are for Phases VI and VII. As such, Plaintiffs simply have not pled plausible allegations that investors in Phases I-V have been harmed.

## VI. PLAINTIFFS CANNOT BRING CLAIMS ON BEHALF OF LIMITED PARTNERSHIPS IN WHICH THEY DID NOT INVEST

In the moving papers, Mr. Quiros set forth authority that "[a] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 156 (1982) (quotations omitted). A class action plaintiff may only purport to bring claims on behalf of his own purchases or investments. *Toback v. GNC Holdings, Inc.*, 2013 U.S. Dist. LEXIS 131135, at *14-15 (S.D. Fla. Sept. 13, 2013) ("at least one named plaintiff must establish Article III standing for each class subclaim"); *Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1392-94 (S.D. Fla. 2014) (same); *Garcia v. Clarins USA, Inc.*, 2014 U.S. Dist. LEXIS 182426, at *8-10 (S.D. Fla. Sept. 4, 2014) (same); *Dapeer v. Neutrogena Corp.*, 95 F. Supp. 3d 1366, 1372-73 (S.D. Fla. 2015) (same). Plaintiffs attempt to "distinguish" these cases by claiming that the distinct partnerships should be viewed as one because "the central allegations are the funds of the investors in all phases were commingled." (Opp. 11.) This admission devastates Plaintiffs' claim that the claims in the FAC are not derivative but direct claims for fraudulent inducement. Putting that aside, the claim that commingling excuses a lack of standing is legally unsupported.[4] The FAC involves eight distinct investment vehicles issued over a long period of time, to be performed in disparate locations, with distinct purposes and terms. (*See id.* at ¶¶ 26-45.) Plaintiffs cannot sue for investments they did not make. Since no Plaintiff invested in Phases I, IV, or V, the Court should dismiss all claims related to these Phases.

## VII. PLAINTIFFS' CLAIMS IMPROPERLY ARISE FROM CONTRACT

Plaintiffs apparently misunderstand the law in both Vermont and Florida, which both bar tort claims and tort damages for breaches of contractual obligations. In the first place, the law in Vermont, which governs the Limited Partnerships, allows application of the traditional economic loss rule. *See Walsh v. Cluba*, 2015 VT 2, 27 (Vt. 2015). Though the applicable terminology is different, the law is effectively the same in Florida. Plaintiffs argue that Mr. Quiros's argument is an "economic loss rule" argument under Florida law and that *Tiara Condo. Ass'n v. Marsh & McLennan Cos.*, 110 So. 3d 399, 408 (Fla. 2013) forever barred that rule outside of products cases. The moving papers set forth a litany of Florida authority refuting this argument. (Mot. 10-11, n. 11.) As Plaintiffs have neglected to

---

[4] *Randolph v. Smucker Co.*, 2014 U.S. Dist. LEXIS 33396 (S.D. Fla. Mar. 14, 2014) is a consumer class action concerning Crisco oils. In that particular case, unlike each of the many cases cited by Mr. Quiros, the court deferred the standing issue to class certification. *SEC v. Byers*, 637 F. Supp. 2d 166 (S.D.N.Y. 2009) is inapposite, concerning a receiver's plan for distribution, not class standing. Neither case concerned relaxing class action standing requirements when they involved commingling of assets.

distinguish any of this authority, we incorporate it herein by reference. In short, the law in Florida is that "fundamental contractual principles continue to bar a tort claim where the offending party has committed no breach of duty independent of a breach of its contractual obligations." *XP Global, Inc. v. AVM, L.P.*, 2016 U.S. Dist. LEXIS 127266, at *12-13 (S.D. Fla. Sept. 19, 2016).[5]

It does not matter, as Plaintiffs suggest, that Mr. Quiros is not a party to any contract with Plaintiffs. Rather, the touchstone of the law in both Vermont and Florida is that where obligations arise from a contract, tort claims are inappropriate. *See, e.g.*, *Walsh*, 2015 VT at 27 ("The economic-loss rule maintains a distinction between contract and tort law by prohibit[ing] recovery in tort for purely economic losses. . . . *The determining factor . . . is not whether privity exists but rather whether there is a duty separate and apart from a contractual duty*.") (internal citations and quotations omitted). A contrary rule would allow claims against corporate officers or third parties for tort in all cases of breach of contract by a business entity. Plaintiffs have not identified one duty apart from those in the partnership agreements that gives rise to their claims.[6]

## VIII. PLAINTIFFS' FRAUD CLAIMS ARE VAGUE AS TO MR. QUIROS

The predicate element of a fraud claim is a misrepresentation. *Arnold v. McFall*, 839 F. Supp. 2d 1281, 1289 (S.D. Fla. 2011). This element must be pled with particularity. *Id.* (finding plaintiff did not meet Rule 9 pleading requirement for common law fraud when he failed to identify precise statements on which common law fraud cause of action was based); *Serefex Corp. v. Hickman Holdings*, 695 F. Supp. 2d 1331, 1342 (M.D. Fla. 2010) (finding that plaintiff's "lumping together defendants in a fraud claim [was] insufficient," and failed to comply with Rule 9(b) when it alleged that "all the defendants

---

[5] Plaintiffs claim that Mr. Quiros's argument is "outdated" and clearly barred by current law in Florida. (Opp. 11-12.) This claim in contradicted by a litany of post-*Tiara* cases in the moving papers. *Lamm v. State Street Bank & Trust*, 749 F.3d 938, 947 (11th Cir. Fla. 2014) (*quoting U.S. Fire Ins. Co. v. ADT Sec. Servs., Inc.*, 134 So. 3d 477, 480 (Fla. Dist. Ct. App. 2013)); *XP Global, Inc. v. AVM, L.P.*, 2016 U.S. Dist. LEXIS 127266, at *12-13 (S.D. Fla. Sept. 19, 2016); *Tulepan v. Roberts*, 2015 U.S. Dist. LEXIS 5488, *14 (S.D. Fla. Jan. 16, 2015); *Daedalus Capital LLC v. Vinecombe*, 2014 U.S. Dist. LEXIS 127993, *19 (M.D. Fla. Aug. 22, 2014). Moreover, Plaintiffs' authority does not support this claim. *Samana v. Lucena*, 156 F.Supp.3d 1373, 1373-74 (S.D. Fla. 2016) (case acknowledges that economic loss rule is unclear and does not deal with doctrine that bars tort claims arising from contractual obligations); *Cableview Comms. Jacksonville, Inc. v. Time Warner Cable*, 2016 U.S. Dist. LEXIS 3551, at *42-43 (M.D. Fla. Jan. 11, 2016) (case merely acknowledges that *Tiara* limited the use of the economic loss doctrine).

[6] The "fraudulent inducement" claim fails because Plaintiffs' allegations concern *ex post* misappropriation, and not *ex ante* fraudulent inducement, as set forth above. In addition, Plaintiffs have not alleged facts supporting Mr. Quiros's involvement in any fraud. The other claims brought by Plaintiffs (*e.g.*, aiding and abetting breach of fiduciary duty and RICO) are just labels slapped on breach of contract claims. A breach of fiduciary duty or RICO claim must involve a duty and damages beyond those set forth in the Limited Partnership Agreements. Plaintiffs have not done this.

were involved in drafting, producing, reviewing, and/or disseminating the false misleading statements").

Plaintiffs' Opposition confirms that they have not alleged Mr. Quiros's participation in the creation of offering documents. (Opp. 13-14.) They vaguely say, for instance, that "Quiros and Stenger produced and adopted standardized offering materials." (Opp. 13.) Absent from the FAC is any allegation of what Mr. Quiros did and when to "produce" and "adopt" such offering materials. It is notable that the SEC has not made any such allegation against Mr. Quiros and that there does not actually appear to be any factual basis for one – it appears that Plaintiffs have simply fabricated this "fact." The vagueness of the allegations and the improper aggregation of claims regarding various entities and individuals requires dismissal.[7]

In addition, Plaintiffs now claim in the Opposition that their claims are omissions claims, not misrepresentation claims. This new characterization is unavailing because Plaintiffs have not set forth a factual basis for a duty to disclose by Mr. Quiros. *Ziemba v. Cascase Int'l, Inc.*, 256 F.3d 1194, 1206 (11th Cir. 2001) ("A defendant's omission to state a material fact is proscribed only when the defendant has a duty to disclose.") Not only have Plaintiffs failed to set forth factual allegations (rather than conclusions) concerning Mr. Quiros's role in the offerings, but they also have failed even to allege that Mr. Quiros had any management role or title in most of the Limited Partnerships.[8]

Moreover, as set forth above, the allegations in the FAC center on claims of misappropriation

---

[7] Plaintiffs rely on a non-securities case, *Continent Aircraft Trust v. Diamond Aircraft Industries*, 2013 U.S. Dist. LEXIS 73154 (S.D. Fla. May 23, 2013), to support the sufficiency of their fraud allegations. But, to the extent that case is even applicable, it actually illustrates the defects in Plaintiffs' pleading. *Continent Aircraft* involved allegations that an aircraft manufacturer's distributor (*i.e.*, agent) personally sent an email attaching an engine warranty document to plaintiffs when it knew or should have known that the engine manufacturer actually could not honor the warranty. *Id.* at *6-7, *15-16. There are no similar allegations in this case. Plaintiffs have not and cannot point to any communication by Mr. Quiros showing any participation in the creation or transmission of any Limited Partnership document. Nor is there any actual allegation that Mr. Quiros knew documents were false at the time, as opposed to breached after issuance through improper movements of money. There are also no factual allegations for most of the offerings showing the existence of an agency relationship as to Mr. Quiros. In *Continent Aircraft*, the plaintiff specifically alleged that the defendant trained all of the distributor's staff on its procedures, distributed memoranda and other documents on aircraft technical problems to the distributor, and that the defendant encouraged customers to work with the distributor, from which it could be found that an agency relationship existed; even then, the court called the allegations "thin." *Id.* at *10-12. Plaintiffs' allegations are thoroughly lacking by comparison.

[8] Plaintiffs have not alleged reliance on misrepresentations as the but-for cause of each of their investor losses. While *Rogers v. Cisco Sys.*, 268 F. Supp. 2d 1305, 1314 (N.D. Fla. 2003) is indeed a "holder" case, that simplistic distinction does nothing to help Plaintiffs. (Opp. 16.) The issue here is that investors have to allege that they would not have made their investments (or would have sold them), if they had known the truth. Here, of course, most investors have sought (and received) Green Cards and presumably saw that as the most important aspect of their investments.

after the investments were made, not on actual failures to disclose. Omissions claims concern failures to disclose *existing facts*; an "omission" to state an intention not to perform in the future is not the legitimate basis for a claim. *See e.g., XP Global, Inc. v. AVM, L.P.*, 2016 U.S. Dist. LEXIS 127266 at *21-22 (S.D. Fla. Sept. 19, 2016) ("To the extent that Plaintiff alleges fraud in the inducement based upon Defendant's allegedly false representations that it would keep Plaintiff's information confidential, this is a promise of future performance, not a statement of past or present existing fact. Plaintiff argues that it has alleged that Defendant had no intention of keeping Plaintiff's information confidential, and therefore this promise may amount to a fraudulent misrepresentation. Plaintiff's bald assertion, without more, is not sufficient to state, much less with particularity, Defendant's intent not to keep a promise.").[9]

## IX.   AIDING AND ABETTING BREACH OF FIDUCIARY DUTY CLAIM FAILS

Plaintiffs have still provided not one allegation supporting Mr. Quiros's knowing assistance in breaching any fiduciary duty. In opposing the Motion, Plaintiffs point the Court to their Opposition to RJ's Motion, which focusses on RJ's role and does not include a factual basis for Mr. Quiros's knowledge. Plaintiffs say it is "specious" to point out Mr. Quiros's lack of education and sophistication, but – in fact – that gets to the heart of the matter: *sometimes people do things without knowing they are wrong*. Without factual allegations from which it could be inferred Mr. Quiros had a "general awareness that his role was part of an overall activity that is improper," Plaintiffs' claims fail. *Smith v. First Union Nat'l Bank*, 2002 U.S. Dist. LEXIS 17759, at *7 (S.D. Fla. Aug. 23, 2002).

## X.   PLAINTIFFS' CONSPIRACY CLAIMS ARE HOPELESSLY VAGUE

Plaintiffs' conspiracy claims fail for the same reasons set forth on page 13 of RJ's Reply. While it is, of course, true that conspiracies can be established through "circumstantial evidence," it does not follow that conclusory, seemingly fabricated allegations of an conspiratorial agreement – *a highly improbable agreement at that* – are sufficient.

## XI.   PLAINTIFFS' DISCUSSION OF RICO FUNDAMENTALLY MISSTATES THE LAW

As an initial matter, Plaintiffs appear to concede that Rule 9 applies to their fraud-based claims, but argue that money laundering claims need not be pled with particularity. (Opp. 17, n. 9.) This is incorrect. As set forth in the moving papers, money laundering alone cannot be a predicate act because the money must be the proceeds of "specified unlawful activity," meaning an offense listed in Section

---

[9] More than advancing an unprecedented legal theory, Plaintiffs ignore exculpatory language in the documents that broadly allowed movements of money and waived investor rights. In bringing their claims, Plaintiffs have declined to cite to any provision of the highly permissive documents, which allowed movements of money and called for very large payments to affiliate companies for construction and development services. The assertion that these movements were not "good faith" is conclusory and unsupported.

8

1961(1) (*i.e.*, a crime that constitutes racketeering activity) *other than money laundering*. *See* 18 U.S.C. §§ 1956(c)(7)(A), 1961(1); *W. 79th St. Corp. v. Congregation Kahl Minchas Chinuch*, 2004 U.S. Dist. LEXIS 19501, at *29-30 (S.D.N.Y. Sept. 29, 2004). In this case, Plaintiffs base their claims on alleged "misappropriation" of investor money, apparently leading us back to "mail and wire fraud" as the specified unlawful activity under Section 1961(1), which must be pled with particularity. Accordingly, in this case, Rule 9 applies to money laundering as well as the other RICO claims.

In trying to salvage their claims, Plaintiffs again recite their allegations in the FAC (margin loans, alleged diversion of funds, etc.) and invite the Court to simply apply "common sense." (Opp. 18-19.) But, pleading RICO is a highly technical matter. Plaintiffs misrepresent RICO as having merely two elements (Opp. 17) and then, having vastly oversimplified the pleading standard, claim they have "more than sufficiently alleged" RICO. (Opp. 19.) As discussed in the moving papers, allegations of fraud under RICO face a heavy burden; the law requires allegations that each defendant: (1) intentionally participated, (2) in a scheme to defraud, (3) the plaintiff of money or property, (4) by means of material misrepresentations, (5) using the mails or wires, (6) that the plaintiff relied on a misrepresentation made in furtherance of the fraudulent scheme, (7) that such misrepresentation would have been relied upon by a reasonable person, (8) that such plaintiff suffered injury as a result of such reliance, and (9) that the plaintiff incurred a specifiable amount of damages. *Palmas Y Bambu, S.A. v. E.I. Dupont Nemours & Co.*, 881 So. 2d 565, 571 (Fla. Dist. Ct. App. 2004) (*citing Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1360-61 (11th Cir. 2002)); *see also Green Leaf Nursery v. E.I. DuPont de Nemours & Co.*, 341 F.3d 1292, 1307 (11th Cir. 2003) (a plaintiff must show that defendant "had a conscious, knowing intent to defraud and that a reasonably prudent person would have been deceived by its misrepresentations.").[10]

Instead of pointing to allegations that would support the existence of such predicate acts, Plaintiffs repeat conclusory allegations.[11] These allegations do not include the basic aspects of a RICO

---

[10] In response to this, Plaintiffs try to argue that *Palmas Y Bambu* was overruled by the Supreme Court in *Bridge v. Phoenix Bond & Indemn. Co.*, 553 U.S. 639 (2008). Even if this federal decision overruled an interpretation of Florida's RICO statute, it only concerns one of the nine elements set forth above. *Bridge* simply held that a plaintiff need not have personally relied on the fraud, but that *someone else* must have relied on the fraud. *See, e.g*, *Ray v. Spirit Airlines, Inc.*, 2016 U.S. App. LEXIS 16269, at *17 (11th Cir. Sept. 2, 2016). It is unclear why Plaintiffs thinks *Bridge* helps them, or how it overrules *Palmas* or other cases regarding other elements of Florida's RICO statute. In any event, the basis of Mr. Quiros's motion regarding RICO is that Plaintiffs have not alleged predicate acts sufficiently – the merits of that argument are unaffected by *Bridge*.

[11] Plaintiffs make much of Mr. Quiros's purchase of the Jay Peak Resort and an apartment in New York. (Opp. 18.) But these allegations are unavailing because Plaintiffs have not sufficiently alleged that the

9

claim that the FAC lacks, set forth in the list of bullet points on page 18 of the moving papers, such as Mr. Quiros's role in creating the offering documents at issue, what statements in the offering documents are false, or how conduct-based allegations (wire transfers, margin loans) induced anyone's reliance.[12]

### XII. THE CONTINUING TORT DOCTRINE DOES NOT APPLY

Plaintiffs concede that aiding and abetting breach of fiduciary duty and conspiracy each have a four-year statutes of limitation and that neither cause of action is subject to tolling. They nonetheless present a conclusory argument that the continuing tort doctrine applies and claim that the doctrine always poses a question of fact for the jury. The doctrine simply does not apply to this case because Plaintiffs' claims would each accrue once – at the time an investor made his or her investment based on fraud. In trying to avoid an argument that their claims are derivative, for instance, Plaintiffs have argued that Mr. Quiros fraudulently induced investments in particular securities offerings through omissions, and *not* through a practice of misappropriation of assets over time. Putting aside the other infirmities in Plaintiffs' omissions claims, the claims would accrue at the time of the offerings when Plaintiffs purchased the securities for more than their fair value (*i.e.*, the value of the securities in the absence of wrongdoing). See *Suntrust Bank v. Chaine Du Lac Ass'n*, 2013 Fla. Cir. LEXIS 4262, *3-4 ("A continuing tort is established by continual tortious acts, not by continual harmful effects from an original, completed act. When a defendant's damage-causing act is completed, the existence of continuing damages to a plaintiff, even progressively worsening damages, does not present successive causes of action accruing because of a continuing tort."). Accordingly, these claims are barred by the statute of limitations to the extent such claims first accrued more than four years prior to the filing of the Complaint.

---

funds used in this manner were procured through RICO violations. After all, the offering documents allowed payments in excess of $60 million to affiliates controlled by Mr. Quiros (See Raymond James ("RJ") Reply Brief ("RJ Reply"), Dkt. 130 at 11); as such it should not be unexpected that he would spend some of it.

[12] Plaintiffs list several irrelevant cases in support of their argument. Each case deals not with the pleading of predicate acts, but proximate causation. Such cases do not help Plaintiffs' pleading failures. *See, e.g., Maiz v. Virani*, 253 F.3d 641, 674 (11th Cir. 2001) (concerning causation issues on a motion for JNOV in which defendants *did not* contest the proof of predicate acts, which had been thoroughly established); *Corcel Corp. v. Ferguson Enters., Inc.*, 551 F. App'x 571, 576 (11th Cir. 2014) (addressing sufficiency of pleading of proximate causation, not pleading of predicate acts). Plaintiffs' other cases fare no better. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1259 (11th Cir. 2004) involved misrepresentations, unlike Plaintiffs' purported omissions allegations in this case. And while *Sierra Equity Grp. v. White Oak Equity Partners*, 650 F.Supp.2d 1213 (S.D. Fla. 2009) involved omissions, the Plaintiffs' claims fail in this case because they have not alleged a duty to disclose by Mr. Quiros and because, in this case, the omissions claims are thinly disguised derivative claims.

Respectfully submitted,

Dated: October 27, 2016

By: */s/ Scott B. Cosgrove*
Scott B. Cosgrove, Esq.
scosgrove@leoncosgrove.com
James R. Bryan, Esq.
jbryan@leoncosgrove.com

León Cosgrove, LLC
255 Alhambra Circle, Suite 800
Coral Gables, Florida 33133
Telephone: (305) 740-1975
Facsimile: (305) 437-8158


David Gordon (admitted pro hac vice)
dbg@msk.com
12 East 49th Street
30th Floor
New York, NY 10017
Telephone: (212) 509-3900
Facsimile: (212) 509-7239

John Durrant (admitted pro hac vice)
jsd@msk.com
11377 W. Olympic Blvd.
Los Angeles, CA 90064
Telephone: (310) 312-3187
Facsimile: (310) 312-3100

*Counsel for Defendant Ariel Quiros*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of October, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in the manner stated in the service list attached.

By: */s/ Scott B. Cosgrove*

SERVICE LIST
US District Court, Southern District of Florida
Case No. 16-CV-21575-FAM
Alexandre Daccache, et al. v. Raymond James & Associates, Inc.., et al.

Harley S. Tropin
hst@kttlaw.com
Thomas A. Tucker Ronzetti
tr@kttlaw.com
Tal J. Lifshitz
tjl@kttlaw.com
Dyanne Elyce Feinberg
def@kttlaw.com
Maia Aron
ma@kttlaw.com
Rachel Sullivan
rs@kttlaw.com
KOZYAK TROPIN & THROCKMORTON, P.A.
2525 Ponce de Leon Blvd., 9th floor
Miami, FL 33134
Counsel for Plaintiffs
VIA CM/ECF

Daniel C. Girard (pro hac vice)
dcg@girardgibbs.com
amv@girardgibbs.com
Adam E. Polk (pro hac vice)
aep@girardgibbs.com
GIRARD GIBBS LLP
601 California Street, 14th Floor
San Francisco, California 94108
Co-Counsel for Plaintiffs
VIA CM/ECF

Kathleen M. Donovan-Maher (pro hac vice)
kdonovanmaher@bermandevalerio.com
Nathaniel L. Orenstein (pro hac vice)
norenstein@bermandevalerio.com
Steven J. Buttacavoli (pro hac vice)
sbuttacavoli@bermandevalerio.com
BERMAN DEVALERIO
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300
Facsimile: (617) 542-1194
Co-Counsel for Plaintiffs
VIA CM/ECF

Paul Aiello
paiello@bennettaiello.com
Michael P. Bennett
mbennett@bennettaiello.com
Jeremy R. Kreines
jkreines@bennettaiello.com
BENNETT AIELLO
The Ingraham Building, Eighth Floor
25 Southeast Second Avenue
Miami, Florida 33131
Co-Counsel for Plaintiffs
VIA CM/ECF

James D. Sallah
jds@sallahlaw.com
Jeffrey L. Cox
jlc@sallahlaw.com
Joshua A. Katz
jak@sallahlaw.com
SALLAH ASTARITA & COX, LLC
One Boca Place
2255 Glades Road, Suite 300 E
Boca Raton, FL 33431
Counsel for Defendant Joel Burstein
VIA CM/ECF

Jason K. Kellogg
jk@lklsg.com
Marcelo Diaz-Cortes
md@lklsg.com
Jeffrey C. Schneider
jcs@lkllaw.com
LEVINE KELLOG LEHMAN SCHNEIDER & GROSSMAN LLP
201 South Biscayne Blvd.
22nd Floor
Miami, FL 33131
Counsel for the Receiver, Michael I. Goldberg
VIA CM/ECF

13

8283878.5

| | |
|---|---|
| William Stenger<br>1276 Bluff Road<br>Newport, VT 05855<br>billstenger123@gmail.com<br><br>Stanley H. Wakshlag<br>swakshlag@knpa.com<br>Deborah S. Corbishley<br>dcorbishley@knpa.com<br>Ryan Zagare<br>rzagare@knpa.com<br>Janelle M. Ans<br>jans@knpa.com<br>Kenny Nachwalter, P.A.<br>Four Seasons Tower, Suite 1100<br>1441 Brickell Avenue<br>Miami, FL 33131<br>Telephone: (305) 373-1000<br>Facsimile: (305) 372-1861<br>Counsel for Defendants, Raymond James Financial, Inc. d/b/a Raymond James and Raymond James & Associates, Inc.<br>VIA CM/ECF | Jonathan E. Minsker<br>jminsker@kasowitz.com<br>Maria H. Ruiz<br>mruiz@kasowitz.com<br>KASOWITZ BENSON TORRES & FRIEDMAN LLP<br>1441 Brickell Avenue, Suite 1420<br>Miami, FL 33131<br>Counsel for Defendants People's United Financial, Inc. and People's United Bank, N.A.<br>VIA CM/ECF |

14